1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MEYER, an individual; DANA GASCAY; an individual,<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO; RADY CHILDREN'S HOSPITAL; ELIZABETH REESE, an individual; KAYLA VALENZUELA, an individual; DR. SHALON NIENOW, an individual; TIFFANY PAUGH, an individual; and DOES 1 through 50 INCLUSIVE,<br><br>　　　　　　　　　　　　Defendants. | Case No.:  21-cv-00341-GPC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**[ECF Nos. 31, 32, 34, 35, 36, 56]** |

　　　Before this Court are Motions to Dismiss Plaintiffs' First Amended Complaint (ECF No. 27, "FAC") filed by Defendant Dr. Shalon Nienow (ECF No. 31), Defendants Rady Children's Hospital ("Rady") and Elizabeth Reese (ECF No. 32), Defendants Kayla Valenzuela and Tiffany Paugh (ECF No. 35), and Defendant San Diego County (ECF No. 36). The parties have fully briefed the issue. The Court finds this matter suitable for disposition without oral argument. Based on the FAC, the moving papers, and applicable law, the Court DENIES IN PART and GRANTS IN PART Defendants' Motions to

1

Dismiss. The Court GRANTS Plaintiffs leave to file a Second Amended Complaint in accordance with this Order.

## I.   BACKGROUND AND ALLEGATIONS IN THE FAC

Plaintiffs are the parents of a non-party minor child, M.M., who has suffered a long and complicated medical history of repeated injury, chronic pain, and other symptoms related to a diagnosis of Ehlers-Danlo Syndrome, hypermobile type ("hEDS"). FAC at 9. Due to the complexity of her condition and uncertainty or disagreement among her treating physicians as to the condition's causes, M.M. was treated at various hospitals in 2017-2019, including Rady's outpatient pain program, Kaiser Permanente San Diego, Kaiser Permanente Los Angeles, and Mt. Sinai in New York. *Id.* at 10-13. In mid-December 2018, Plaintiffs were notified that San Diego County received a referral alleging abuse and neglect of M.M. *Id.* ¶ 42. At that time, Defendant Kayla Valenzuela, a Protective Services Worker ("PSW") with the County, interviewed Plaintiffs individually as well as with M.M. *Id.*

Plaintiffs allege that in the days leading up to January 29, 2019, "HHSA workers including but not limited to, Ms. Valenzuela, Ms. Paugh and Ms. Reese, met and consulted with Dr. Nienow and together with her came up with the idea that M.M. would be placed in a video surveillance capable room at Rady, at the direction of Dr. Nienow . . . " *Id.* ¶ 44. This surveillance was prompted by a request from "KPSD and/or the County" that "Rady and/or Dr. Nienow and/or Ms. Reese" review M.M.'s medical record and conduct an investigation for Munchausen Syndrome by Proxy, also known as Fictitious Disorder Imposed on Another. *Id.* ¶ 46. Plaintiffs were not informed that they were being recorded, and Defendants did not obtain a warrant or judicial authorization for the recording. *Id.* ¶ 54-55.

M.M. was transferred from Mt. Sinai and admitted to Rady on or around January 29, 2019, based on decisions made by Kaiser and Dr. Bolognese, M.M.'s treating

physician at Mt. Sinai. *Id.* ¶ 45. At that time, Plaintiffs were "intensely questioned" about M.M.'s medical history. *Id.* ¶ 47. Plaintiffs allege that "Rady, by order of Dr. Nienow, and with the County, Ms. Valenzuela, Ms. Reese, and Ms. Paugh's knowledge and approval, placed two video camera recording devices in M.M.'s private hospital room and set the Devices to record for 24 hours per day . . . for approximately 37 consecutive days starting on or around January 29, 2019." *Id.* ¶ 53. Plaintiffs allege that "Dr. Nienow, with the approval of Ms. Valenzuela, Ms. Paugh, and each of their supervisors, intentionally delayed medical intervention of M.M.'s behalf in order to continue the use of the Devices hoping, without factual foundation, to find [Plaintiffs] responsible for M.M.'s medical condition." *Id.* ¶ 61. Plaintiffs also allege that Dr. Nienow, Ms. Reese, Ms. Valenzuela, Ms. Paugh, Rady, and/or the County failed to acknowledge, investigate, or understand the complexities of hEDS. *Id.* ¶ 62. "In fact, Dr. Nienow never even spoke with, nor met with, Ms. Gascay, Mr. Meyer, or M.M." *Id.*

On February 15, 2019, Plaintiffs were notified that the first referral was closed with no findings of abuse. *Id.* ¶ 42. However, on February 28, 2019, Plaintiffs were informed that they were the subject of another child abuse complaint alleging that "they did not support M.M.'s psychiatric or dietary needs" and were interviewed individually by Defendant Valenzuela. *Id.* ¶ 49. In February 2019, after reviewing M.M.'s medical history, Dr. Nienow reported to the "County, Ms. Valenzuela and her supervisor, and/or Rady" that M.M.'s condition "was so dire M.M. may die." *Id.* ¶ 59. On March 7, 2019, "the County, HHSA, and its agents" removed Plaintiff Meyer from the hospital, [1] "stating there were judicial orders to temporarily remove M.M. from [Plaintiffs'] custody." *Id.* ¶ 50. On March 8, 2019, Plaintiffs were summoned to a juvenile dependency hearing in the juvenile court of San Diego County. *Id.* ¶ 51. During the pendency of the juvenile

---

[1] Plaintiff Gascay was not present at M.M.'s bedside at the time. *Id.*

court proceedings, M.M. remained a patient at Rady and continued to suffer from symptoms relating to hEDs. *Id.* ¶ 64. Plaintiffs remained removed from M.M. while awaiting the trial. *Id.* Throughout 2019, "Rady and its agents" "performed various tests and medical procedures on M.M. without [Plaintiffs'] knowledge and/or consent" and without allowing Plaintiffs to be near M.M. *Id.* This included an "invasive swallow test" in or around April 2019, prompted by M.M.'s difficulties swallowing and eating by mouth. *Id.* ¶ 63. Plaintiffs were not made aware of this test until after it had occurred. *Id.*

The trial in juvenile court concluded on February 5, 2020, with a ruling in favor of Plaintiffs. *Id.* ¶ 65. On May 1, 2020, Plaintiffs submitted a Notice of Government Claim to the County of San Diego pursuant to California Government Code sections 910 et seq. *Id.* ¶ 2. On September 28, 2020, the County of San Diego rejected Plaintiffs' claims. *Id.* Plaintiffs filed their Complaint on February 25, 2021. *Id.* Plaintiffs filed the instant First Amended Complaint on June 14, 2021. ECF No. 27. In the FAC, Plaintiffs allege five claims for relief against all Defendants: violation of civil rights pursuant to 42 U.S.C. §1983 (one count of "deception in the presentation of evidence" and one count of unwarranted/non-consensual medical procedures/treatment and invasion of privacy), violation of state civil rights pursuant to Cal. Civ. Code § 43, violation of the Tom Bane Civil Rights Act (Cal. Civ. Code §52.1), intentional infliction of emotional distress, and intrusion into private affairs.

## II.   LEGAL STANDARDS GOVERNING MOTION TO DISMISS

Defendants bring their respective Motions to Dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint, i.e. whether the complaint lacks either a cognizable legal theory or facts sufficient to support such a theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citations omitted). For a complaint to survive a Rule 12(b)(6) motion to dismiss, it must contain "sufficient factual matter, accepted as true, to 'state a claim to

21-cv-00341-GPC

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the motion, the Court accepts the allegations in the complaint as true and construes the pleadings in the light most favorable to the non-moving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). The court is also not required to accept as true mere legal conclusions. *Id.* Determination of whether a complaint states a plausible claim is "context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663-64. Dismissal without leave to amend is improper unless it is clear that amendment would be futile. *Id.*

## III. DISCUSSION

### A. Rooker-Feldman Doctrine Does Not Bar the Court's Jurisdiction

At the outset, the Court pauses to address Defendants' assertion that the *Rooker-Feldman* doctrine "bars Plaintiffs from asking this Court to review the juvenile court's findings." ECF No. 35-1 at 14; ECF No. 36-1 at 6. "The *Rooker-Feldman* doctrine bars lower federal courts from exercising jurisdiction 'to review the final determinations of a state court in judicial proceedings.'" *Benavidez v. County of San Diego*, 993 F.3d 1134, 1142 (9th Cir. 2021) (quoting *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1029 (9th Cir. 2001). Plaintiffs cannot approach a federal court to obtain what is, in substance, appellate review of a state judgment. *Id.* (citing *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)). "[F]or *Rooker-Feldman* to apply, a plaintiff must seek not only to set aside a state court judgment; he or she must also allege a legal error by the state court as the basis for that relief." *Benavidez v. County of San Diego*, 2019 WL 581647 (S.D. Cal., Feb. 12, 2019) (citing *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004). "If, on the other hand, a federal plaintiff asserts as a legal wrong an

allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Id.* (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)). A plaintiff alleging extrinsic fraud on a state court is not alleging a legal error by the state court, but rather, a wrongful act committed by an adverse party. *Id.* (citing *Kougasian*, 359 F.3d at 1140-41.). The Ninth Circuit upheld analysis by the court in *Benavidez* that found the *Rooker-Feldman* doctrine did not bar the district court's consideration of the case. *Benavidez,* 993 F.3d at 1143.

Here, as in *Benavidez*, Plaintiffs are not seeking reversal or abrogation of the state court judgment itself. Rather, they seek damages flowing from wrongs that, *inter alia*, they allege adverse parties perpetuated via deception of the juvenile court itself, as well as wrongs committed by adverse parties in the events surrounding the juvenile court proceedings. Therefore, Plaintiffs' claims are not a de facto appeal of the juvenile court's orders, and Defendants are incorrect that the *Rooker-Feldman* doctrine bars this Court's jurisdiction.

**B. Plaintiffs' Federal Claims: First Cause of Action (Section 1983 Claims)**

Plaintiffs allege two counts of violations under 42 U.S.C. § 1983 against all Defendants: (1) deception in the presentation of evidence and *Monell* related claims; and (2) unwarranted/non-consensual medical procedures/treatment and invasion of privacy and *Monell* related claims. FAC at 20, 32. Plaintiffs claim punitive damages under the claim of deception in the presentation of evidence.

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *Long v. County of Los Angeles,* 442 F.3d 1178, 1185 (9th Cir. 2006). "The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right secured by the Constitution and laws." *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Even if a plaintiff

21-cv-00341-GPC

can plausibly plead a violation of their rights secured by law, that plaintiff must also plead that the violation occurred under color of state law.

In general, private parties do not act under color of state law unless they satisfy the two-part test laid out by the Supreme Court in *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936 (1982): "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." In other words, "the state-action element in § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010). A person may become a state actor by conspiring with a state official, by engaging in joint activity with state officials, or by becoming so closely related to the State that the person's actions can be said to be those of the State itself (i.e. that the relationship becomes "symbiotic"). *Price v. State of Hawaii*, 939 F.2d 702, 708 (9th Cir. 1991). "Joint action exists where the government either (1) affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party, or (2) otherwise has so far insinuated itself into a position of interdependence with the non-governmental party, that it is recognized as a joint participant in the challenged activity." *Laberre v. University Professional and Technical Employees, CWA 9119*, 493 F. Supp. 3d 964, 970 (S.D. Cal. 2020), *appeal docketed*, No. 20-56173 (9th Cir. Nov. 6, 2020) (citing *Belgau v. Inslee*, 975 F.3d 940, 947 (9th Cir. 2020)).

### 1.     Count One: Deception in the Presentation of Evidence

The Ninth Circuit recognizes a constitutional right under the Due Process Clause of the Fourteenth Amendment "to be free from judicial deception and fabrication of evidence in the context of civil child custody cases." *Benavidez v. County of San Diego*,

7

993 F.3d at 1146 (citing *Costanich v. Dep't of Soc. And Health Servs.*, 627 F.3d 1101, 1108 (9th Cir. 2010)). "To successfully allege a violation of the constitutional right to be free from judicial deception, [plaintiffs] must make out a claim that includes (1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." *Id.* at 1147.

Since Plaintiffs allege this count against all Defendants, the Court will analyze the sufficiency of Plaintiffs' pleadings with regard to each Defendant in turn.

### a.      Deception Claim Against Dr. Nienow

Plaintiffs' Count One allegations focus primarily on the actions of Ms. Valenzuela and her supervisor in presenting a fraudulent application in support of a protective custody warrant and statement of probable cause to the juvenile court. FAC ¶ 74. Dr. Nienow is mentioned only as having "reviewed and approved" certain "reports and/or other documents" filed with the juvenile court. *Id*. ¶ 81. The FAC does not adequately allege that Dr. Nienow herself made any misrepresentations or omissions to the juvenile court, let alone that such misrepresentations or omissions were made deliberately or with a reckless disregard for the truth, or that they were material to the court's decision. In fact, certain allegations in the FAC seem to cut against a plausible pleading of liability on the part of Dr. Nienow: "For example . . . Ms. Valenzuela completely fabricated and twisted her reporting of the substance of her conversations with Dr. Nienow, to such an extent that when Dr. Nienow testified at the Trial in October 2019, that [sic] she did not make such statements." *Id.* ¶ 86. The Court finds that Plaintiffs have failed to state a claim of judicial deception in the presentation of evidence pursuant to §1983 against Dr. Nienow that is plausible on its face. There is insufficient factual content in the FAC for the Court to draw the reasonable inference that Dr. Nienow is liable for the misconduct alleged. *See Iqbal*, 556 U.S. at 678.

Plaintiffs further allege that "the individual Defendants [sic] wrongful conduct, collectively and each of them, was intentional, malicious, wrongful, and despicable, and done with conscious disregard . . ." thereby entitling Plaintiffs to punitive damages. Since the Court finds that Plaintiffs have failed to state a claim against Dr. Nienow under count one of their Section 1983 cause of action, Plaintiffs have also failed to make the requisite showing for punitive damages. Count one of Plaintiffs' Section 1983 claims is DISMISSED WITHOUT PREJUDICE as to Defendant Dr. Nienow. Because leave to amend must be granted unless it is apparent that a plaintiff will not be able to sufficiently plead a claim no matter what facts are alleged, the Court grants Plaintiffs leave to amend this claim in a Second Amended Complaint.

### b.      Deception Claim Against Rady and Ms. Reese

Defendants Rady Children's Hospital and Ms. Reese argue in their Motion to Dismiss (ECF No. 32-1) that Plaintiffs' § 1983 claims against them must fail because they are private parties, and Plaintiffs do not, and cannot, show that Rady and/or Ms. Reese acted "under color of state law." ECF No. 32-1 at 14. The Court discusses whether Plaintiffs have adequately pled Rady and Ms. Reese to be "state actors" in its analysis of count two below. As to this count of judicial deception, however, the Court finds that Plaintiffs have again failed to plead sufficient facts indicating any plausible tie between Rady and/or Ms. Reese and Plaintiffs' generalized allegations of judicial deception. At most, Plaintiffs state that Ms. Reese "reviewed and approved" unspecified "reports and/or other documents." FAC ¶ 81. Plaintiffs do not allege facts tying Ms. Reese or Rady to any statement or omission made to the juvenile court, and do not show that if such a statement or omission existed, it was made deliberately or with reckless disregard for the truth, nor do Plaintiffs show that the juvenile court relied on any statement or omission by Ms. Reese or Rady. As such, Plaintiffs have failed to allege facts against Rady or Ms. Reese sufficient to withstand a motion to dismiss. The Court

9

1    HEREBY DISMISSES WITHOUT PREJUDICE this claim as to Defendants Rady

2    Children's Hospital and Ms. Reese. Given that Plaintiffs may be able to sufficiently

3    plead a claim, the Court will grant Plaintiffs leave to amend this claim as to Defendants

4    Rady Children's Hospital and Ms. Reese.

5                    **c.    Deception Claim Against Ms. Valenzuela**

6         The majority of Plaintiffs' allegations under this count turn on the alleged actions

7    of Ms. Valenzuela in preparing the Application for Protective Custody Warrant and

8    Statement of Probable Cause ("the Warrant Application") submitted to the juvenile

9    court. FAC ¶ 74. Specifically, Plaintiffs assert that Ms. Valenzuela "represented that all

10   of the facts set out in the Statement of Cause were true . . . [but] she knowingly inserted

11   false statements attributed to others, fabricated statements of third parties, and described

12   interactions and events that in fact never happened," including conversations with Dr.

13   Nienow. *Id.* ¶ 86. According to Plaintiffs, Ms. Valenzuela filed a fraudulent Warrant

14   Application with the intention that the juvenile court rely on her representations in

15   granting the Warrant and detaining M.M. from her parents' custody. *Id.* ¶ 87. The

16   juvenile court then did so. Plaintiffs also allege the Ms. Valenzuela further re-used many

17   of the same allegedly fraudulent representations in preparing the Detention Report,

18   including specifically that Plaintiffs subjected M.M. to unnecessary medical procedures,

19   and that there were no known organic causes for M.M.'s symptoms. *Id.* ¶¶ 92-93.

20        At this early stage of litigation, the Court does not weigh the factual plausibility or

21   credibility of a plaintiff's allegations. Taking Plaintiffs' allegations as true and reading

22   them in the light most favorable to the nonmoving party, the Court finds that Plaintiffs

23   have sufficiently alleged facts supporting a violation of their constitutional rights by Ms.

24   Valenzuela pursuant to a claim of judicial deception, because Plaintiffs have alleged a

25   misrepresentation/omission made deliberately to the juvenile court that was material to

26   the court's decision.

27

28

21-cv-00341-GPC

1   Turning to whether this alleged violation was carried out under color of state law,

2   Plaintiffs allege that Ms. Valenzuela was a PSW "with HHSA and/or the County, and . .

3   . was an officer, agent, and/or employee of, HHSA and/or the County . . ." FAC at 6.

4   Taking these allegations as true, the Court finds that Plaintiffs have sufficiently alleged

5   Ms. Valenzuela to have been acting under color of state law as a County employee

6   acting within the scope of her responsibilities.

7   Ms. Valenzuela argues that the doctrine of qualified immunity applies to bar her

8   liability under § 1983. ECF No. 35-1 at 9. To determine whether an official is entitled to

9   qualified immunity, a court considers whether there has been a violation of a

10  constitutional right, and whether that right was clearly established by controlling

11  precedent at the time of the official's alleged misconduct. *O'Doan v. Sanford*, 991 F.3d

12  1027, 1036 (9th Cir. 2021) (citing *Jessop v. City of Fresno*, 936 F.3d 937, 940 (9th Cir.

13  2019)). If the answer to either question is no, qualified immunity shields the official

14  from liability. Qualified immunity "balances two important interests—the need to hold

15  public officials accountable when they exercise power irresponsibly and the need to

16  shield officials from harassment, distraction, and liability when they perform their duties

17  reasonably." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The right to be

18  free from judicial deception and the fabrication/misrepresentation of evidence in

19  proceedings involving child abuse was clearly established at the time of Ms.

20  Valenzuela's alleged actions. *Costanich v. Dept. of Soc. and Health Servs.*, 627 F.3d

21  1101, 1114 (9th Cir. 2010) ("[G]oing forward, officials who deliberately fabricate

22  evidence in civil child abuse proceedings which result in the deprivation of a protected

23  liberty or property interest are not entitled to qualified immunity . . .").

24  While government officials are entitled to raise the qualified immunity defense on

25  a motion to dismiss the complaint, it is not always wise for a court to dismiss a claim

26  with prejudice where the factual record has not yet been developed, keeping in mind the

11

21-cv-00341-GPC

stricture that the federal courts may not dismiss a complaint unless it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Wong v. United States*, 373 F.3d 952, 956-57 (9th Cir. 2004). Therefore, this Court declines to decide at this stage of the litigation whether qualified immunity would act as a bar to Ms. Valenzuela's liability because, while Plaintiffs have sufficiently alleged facts to survive a motion to dismiss, there has been no determination of whether Ms. Valenzuela actually violated Plaintiffs' constitutional rights. Without such a determination, the Court finds it premature to decide the issue of qualified immunity, and HEREBY DENIES Ms. Valenzuela's motion to dismiss as to the claim of judicial deception.

### d.   Deception Claim Against Ms. Paugh

Ms. Paugh is alleged to be a PSW with the County of San Diego whose duties include the "investigation, detention, placement, and services of children entrusted to the custody, care, and control of the County and/or HHSA." *Id.* ¶ 13. In their allegations of judicial deception, Plaintiffs mention Ms. Paugh by name only twice: once to assert that any reasonable social services/government agent in her position would know it is a fundamental due process violation to fabricate or suppress evidence, and once to assert that Ms. Paugh had the affirmative duty to be honest and accurate in any representations to the juvenile court and its officers. *Id.* ¶¶ 71-72. Nowhere in the FAC do Plaintiffs allege that Ms. Paugh made, or participated in deliberately or recklessly making, false material statements to the juvenile court. Plaintiffs' inclusion of Ms. Paugh in a group pleading under this cause of action is insufficient to support an entitlement to relief, even under a liberal pleading standard. Since it is possible, at this stage, that Plaintiffs might be able to sufficiently plead *particular* actions by Ms. Paugh supporting a claim to relief stemming from judicial deception, the Court HEREBY DISMISSES WITHOUT PREJUDICE this claim against Ms. Paugh. Plaintiffs will be permitted to amend their

1   pleading with regard to Ms. Paugh, though Plaintiffs are advised against putting forward

2   an indiscriminate group pleading that is not sufficiently supported by factual allegations

3   relating to the specific Defendant at issue, as here.

4                    **e.    Deception Claim Against San Diego County**

5           This Court assumes that Plaintiffs' use of the phrase "entity Defendants"

6   encompasses San Diego County, though the FAC does not clearly identify when the

7   allegations pertain to the County and when they might pertain to other entities. Based

8   upon the following analysis, the Court concludes that Plaintiffs have failed to allege

9   sufficient facts supporting *Monell* liability against the County.

10                  **i.    Legal Standard for *Monell* Liability**

11          A municipality may not be sued under § 1983 for an injury inflicted solely by its

12  employees or agents under a theory of *respondeat superior*. *Monell v. Dept. of Soc. Serv.*

13  *of City of New York*, 436 U.S. 658, 691 (1978). Instead, municipalities may only be held

14  liable under § 1983 for constitutional violations resulting from official county policy or

15  custom. *Id.* at 694. "The Supreme Court has made clear that policies can include written

16  policies, unwritten customs and practices, failure to train municipal employees on

17  avoiding certain obvious constitutional violations, and in rare instances, single

18  constitutional violations are so inconsistent with constitutional rights that even such a

19  single instance indicates at least deliberate indifference of the municipality." *Benavidez*,

20  993 F.3d at 1153.

21          Failure to train as a basis for *Monell* liability cannot be premised on mere

22  negligence, but requires a failure that amounts to deliberate indifference to the rights of

23  those who deal with municipal employees. *Id.* (citing to *City of Canton v. Harris*, 489

24  U.S. 378, 388-89 (1989)). "To allege a failure to train, a plaintiff must include sufficient

25  facts to support a reasonable inference (1) of a constitutional violation; (2) of a

26  municipal training policy that amounts to a deliberate indifference to constitutional

27

28

rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Id.* (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Generally speaking, a single instance of unlawful conduct is insufficient to state a claim for municipal liability under § 1983. *Id.* "Single acts may trigger municipal liability where 'fault and causation' were clearly traceable to a municipality's legislative body or some other authorized decisionmaker." *Id.*

### ii.     *Monell* Liability: Deception in the Presentation of Evidence

The FAC alleges that the entity Defendants had a duty to use reasonable care in training their employees and agents to protect Plaintiffs' constitutional rights, and that the entity Defendants had a regular custom or practice of including false, exaggerated, misleading, or untrue factual statements and omitting or withholding exculpatory evidence before the court. FAC ¶¶ 79-80. When the individual Defendants engaged in deception in the presentation of evidence to the juvenile court, they were allegedly acting in accordance with the entity Defendants' established customs and practices. *Id.* ¶ 81. The entity Defendants are alleged to have engaged in these customs and practices "on an ongoing and continuous basis since at least 2005, if not earlier." *Id.* ¶ 97. The entity Defendants are "aware that the individual Defendants make false statements and/or suppress known exculpatory evidence . . . Yet, the entity Defendants . . . made a knowing and conscious decision to refrain from promulgating the policy and recurrent training to prevent such misconduct." *Id.* ¶ 103. This includes a failure to train employees on the "rights of parents and children to not be lied about in court filed documents." *Id.* "The Entity Defendants' failure to adopt the necessary prophylactic policies and training was the moving force behind the violations of Plaintiffs'

constitutional rights." *Id.* ¶ 108. Plaintiffs thus variously characterize their theory of the County's liability as a policy, practice, failure to train, and as a single incident that indicates a failure to adequately train. *See Benavidez*, 993 F.3d at 1153 (summarizing plaintiff's similar theory of *Monell* liability).

First, Plaintiffs do not point to any specific stated policy regarding deception in the presentation of evidence. The assertion that the County has a policy/custom/practice of including false statements or withholding exculpatory evidence from the state court is a bare legal conclusion that is not entitled to a presumption of truth. As to the failure to train, Plaintiffs allege in a conclusory fashion that the decision to refrain from training has been ongoing, but provide no factual assertions supporting even faint plausibility. Plaintiffs offer their own experiences in support of the failure to train theory, but this is insufficient to support a plausible claim to relief. *Id.* at 1155 (finding that single incident exception did not apply and that "micromanaging of municipal policies should be avoided.") Ultimately, none of Plaintiffs' allegations provide sufficiently targeted factual support for *Monell* liability. Therefore, the Court HEREBY DISMISSES WITHOUT PREJUDICE this cause of action as to San Diego County. Plaintiffs are permitted leave to amend, with a caution that such claims moving forward must be made with greater specificity and factual support.

> **2.     Count Two of First Claim for Relief: Unwarranted/Non-Consensual Medical Procedures/Treatment and Invasion of Privacy**

The Court now turns to a consideration of Plaintiffs' second "count" pursuant to § 1983. Parents have a constitutional right to be present at their children's medical examinations and to receive notice in advance of such examinations. *Benavidez*, 993 F.3d at 1134; *Mann v. County of San Diego*, 907 F.3d 1154, 1161 (9th Cir. 2018) (holding that parents have a due process right to notice and consent that is not dependent

21-cv-00341-GPC

on the invasiveness, environment, or investigatory purpose of the examination). This right does not turn on whether the medical examination is investigatory in nature or not. *Id.* An exception exists for emergency medical situations where action without consent is needed to protect the child's health, or where there is a reasonable concern that material physical evidence might dissipate. *Id.*

As for Plaintiffs' constitutional right to privacy, the Supreme Court has recognized that "one aspect of the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment is 'a right of personal privacy, or a guarantee of certain areas or zones of privacy.'" *Carey v. Population Servs. Int'l*, 431 U.S. 678, 684 (1977) (quoting *Roe v. Wade*, 410 U.S. 113, 152 (1973)). The Ninth Circuit has stated that this right of personal privacy includes "at least two constitutionally protected privacy interests: the right to control the disclosure of sensitive information and the right to independence in making certain kinds of important decisions." *Parents for Privacy v. Barr*, 949 F.3d 1210, 1222 (9th Cir. 2020). These decisions are related to "the most intimate of human activities and relationships," such as marriage, procreation, contraception, family relationships, raising children, and education. *Forbes v. County of San Diego*, No. 20-cv-00998-BAS-JLB, 2021 WL 843175, at *6 (S.D. Cal. Mar. 4, 2021).

The allegations in this section of the FAC focus primarily on intrusive and unconsented medical care. FAC ¶¶ 117, 119, 123, 127. Plaintiffs also mention a violation of their right to privacy as part of a longer list of rights that the entity and individual Defendants had a duty to recognize and respect. *Id.* ¶¶ 117, 123. However, the FAC provides few specific allegations describing the ways in which Defendants, whether collectively or individually, violated Plaintiffs' rights to control the disclosure of sensitive information or to make the kinds of important decisions laid out by the Ninth Circuit as constitutionally protected. The Court finds that Plaintiffs have failed to adequately plead violations of their constitutionally protected right to privacy against

21-cv-00341-GPC

any of the Defendants.  Consequently, the Court HEREBY DISMISSES WITHOUT PREJUDICE the particular claim of violation of privacy pursuant to § 1983 as to all Defendants. However, finding that the Plaintiffs can overcome the identified deficiencies, Plaintiffs are granted leave to amend.

The Court now turns to an analysis of Plaintiffs' claims of unwarranted/non-consensual medical procedures and treatment, and related *Monell* claims, as to each Defendant.

### a.      Medical Treatment Claim Against Dr. Nienow

Plaintiffs do not state any specific allegations against Dr. Nienow under this medical treatment claim, nor does the relevant portion of the FAC even name her. As Dr. Nienow correctly points out, liability under § 1983 requires a showing of "personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiffs have not made this showing. In fact, the FAC itself cuts against Plaintiffs' claim when it states that Dr. Nienow failed to investigation, acknowledge, or understand hEDS and its effect on M.M., and that "Dr. Nienow never even spoke with, nor met with, Ms. Gascay, Mr. Meyer, or M.M." FAC ¶ 62. The Court HEREBY DISMISSES WITHOUT PREJUDICE this claim against Dr. Nienow. Plaintiffs will be granted leave to amend.

### b.      Medical Treatment Claim Against Rady and Ms. Reese

The Court first analyzes Plaintiffs' allegations against Ms. Reese under this cause of action. For their claim to survive a motion to dismiss, Plaintiffs must adequately allege that Ms. Reese violated their right to be present during their child's medical procedures, and that she did so under color of state law. Plaintiffs do not allege that Ms. Reese was involved with the "invasive swallow test" they identify (FAC at 19), nor do they provide further details linking Ms. Reese to any other medical procedures related to M.M. Plaintiffs therefore have failed to sufficiently allege a violation attributable to Ms. Reese.

17

The Court also finds it doubtful that Plaintiffs have adequately alleged Ms. Reese to be acting under color of state law. Plaintiffs allege that Ms. Reese facilitated "communication between the County and all other entities . . . collaborating with investigating agencies . . . [and] acting as a liaison between the County and M.M.'s treatment team." FAC at 5. These scant allegations, without more, do not show that Ms. Reese's actions were "fairly attributable to the state." *Belgau*, 975 F.3d at 946. The Court HEREBY DISMISSES WITHOUT PREJUDICE Plaintiff's claim of non-consensual/unwarranted medical procedures as to Ms. Reese. The Court grants Plaintiffs leave to amend.

The Court now turns to whether Plaintiffs have successfully stated a claim under § 1983 against Rady. Plaintiffs allege that "[i]n or around April 2019, without [Plaintiffs'] knowledge or consent, and without providing [Plaintiffs] an opportunity to be near M.M. for support, Rady performed an invasive swallow test on M.M. . . . [Plaintiffs] were only made aware of this test after the test was performed." FAC ¶ 63. As to Rady's state actor status, Plaintiffs allege that Rady is a medical center "the specific form of which is presently unknown, acting on behalf of, and for the benefit of, the County, and was and is, acting as a public entity." *Id.* ¶ 8. Plaintiffs further allege that "on information and belief, a contract exists between Rady and the County, contracting Rady and its agents as investigators of child abuse and/or neglect on behalf of and/or in collaboration with the County and its agents." *Id.* ¶ 13. Plaintiffs allege that "[o]n information and belief . . . KPSD and/or the County requested Rady . . . [to] conduct an investigation for Munchausen Syndrome by Proxy . . ." *Id.* ¶ 46. The Court finds that, taking these allegations as true and in the light most favorable to Plaintiffs, the FAC has sufficiently alleged a violation of Plaintiffs' right to be present at their child's medical examinations and to receive notice of such examinations, because this right is not abrogated by the examination's invasiveness or its investigatory nature. *Mann*, 907 F.3d at 1162 (holding

that the County is required to notify parents even where examinations may have a health objective as well as an investigatory objective).

Next, the Court looks to whether Plaintiffs have sufficiently alleged Rady to be a state actor under the legal standard discussed above, *supra* Section III.A. The FAC states that Rady acted "by authorization and approval of the County and its agents" and further allege that "Defendant Rady is paid money by the County for its investigatory and 'expert' services, and regularly cooperates in joint action with HHSA to investigate allegations of child abuse." FAC ¶ 120. Whether this allegation supports Rady's characterization as a state actor is a close call. An assertion that an entity engages in "joint action" with the state is conclusory, without more. However, the allegation that "Defendant Rady regularly and systematically performed non-consensual and unwarranted investigatory medical services in collaboration with HHSA . . . pursuant to contract, and at the behest and direction of HHSA" is, at this stage, sufficient to allege the requisite nexus between state and private entity. *Id.* ¶ 119. The Court finds that Plaintiffs have sufficiently alleged facts that, taken as true, state a plausible entitlement to relief against Defendant Rady for violating their right to be present at medical procedures carried out on M.M. The Court HEREBY DENIES Defendant Rady's motion to dismiss as to this particular claim.

### c.  Medical Treatment Claim Against Ms. Valenzuela and Ms. Paugh

Plaintiffs do not allege facts tying either Ms. Valenzuela or Ms. Paugh to the alleged swallow test or any other medical procedure carried out on M.M. As such, the Court finds that Plaintiffs have failed to allege sufficient facts against Ms. Valenzuela or Ms. Paugh plausibly entitling Plaintiffs to relief due to violations of Plaintiffs' right to be present during their child's medical procedures. The Court HEREBY DISMISSES

21-cv-00341-GPC

1  WITHOUT PREJUDICE Plaintiffs' claims against Ms. Valenzuela and Ms. Paugh as to
2  unwarranted/non-consensual medical procedures. Plaintiffs are granted leave to amend.

### d.  Medical Treatment Claim Against San Diego County

4       Plaintiffs do not allege specific facts linking the County to any potential violation
5  of their right to be with M.M. during a medical procedure or treatment. At most, the FAC
6  alleges that Rady "performed various tests and medical procedures on M.M. without
7  [Plaintiffs'] knowledge and/or consent" and that this was carried out with the County's
8  "authorization and approval." FAC ¶ 64. The FAC also contains generalized allegations
9  that Defendants collectively had in place, *inter alia*, "the custom and/or practice of
10 subjecting children to unwarranted non-consensual medical examinations," and "the
11 custom and/or practice of barring a parent from being in close proximity to their child
12 during medical care, diagnosis, or treatment." *Id.* at 34-35. Here again the FAC does little
13 more than recite the elements of its legal claim in a conclusory fashion, without pointing
14 to factual support. This is insufficient to satisfy Rule 12(b)(6)'s requirements or to meet
15 the standard set out by *Monell*. As such, the Court finds that Plaintiffs have failed to state
16 a plausible claim to relief as against Defendant San Diego County under "count two" of
17 their §1983 claim. The Court HEREBY DISMISSES WITHOUT PREJUDICE this claim
18 as to San Diego County. Plaintiffs are granted leave to amend.

### C. Plaintiffs' State Law Claims

### a.  Compliance with California Tort Claims Act

21      With regard to the public entity and public employee Defendants in this case (San
22 Diego County, Ms. Valenzuela, and Ms. Reese), the Court looks to whether Plaintiffs'
23 action complies with the requirements of the California Tort Claims Act ("Claims Act").
24 Cal. Gov't. Code §§ 905, 950.2. Under the Claims Act, a plaintiff may not maintain an
25 action for damages against a public entity or public employee unless the plaintiff first
26 presents a written claim to the public entity within six months of the date that the cause of

action accrued. *County of Los Angeles v. Superior Court,* 127 Cal.App.4th 1263, 1267 (Ct. App. 2005). "The general rule is that a cause of action accrues when it is complete with all of its elements—those elements being wrongdoing, harm, and causation." *Jackson v. City of San Diego*, 2019 WL 3306296 (citing *Pooshs v. Philip Morris USA, Inc.*, 51 Cal.4th 788, 797 (2011) (quotations omitted)). Under California law, a plaintiff's failure to file a timely claim under the Tort Claims Act deprives a district court of jurisdiction to hear those claims. *See Creighton v. City of Livingston*, 628 F. Supp. 2d 1199, 1225 (E.D. Cal. 2009) ("Presentation of a timely tort claim is a jurisdictional prerequisite to maintaining a cause of action against a public entity.").

Public entity and public employee Defendants argue that Plaintiffs' state claims are barred because, among other reasons, Plaintiffs failed to file their government claim within six months of their claims' accrual. According to Defendants, this would have been six months after Plaintiffs learned of the information of the warrant application, and/or six months after Plaintiffs discovered the existence of the video recordings. ECF No. 35-1 at 27.

In the FAC, Plaintiffs fail to adequately plead compliance with the California Tort Claims Act. The FAC merely states that Plaintiffs filed their Complaint before this Court on February 25, 2021, "within six-months [sic] of receiving notice of The County of San Diego's rejection." FAC ¶ 2. This statement, however, does not address the preliminary requirement that a government claim be filed within six months of the claim's accrual. Since failure to timely present claims would act as a jurisdictional bar to Plaintiffs' state law causes of action against the public entity and public employee Defendants, the Court HEREBY DISMISSES WITHOUT PREJUDICE Plaintiffs' state law claims as against Defendants San Diego County, Defendant Valenzuela, and Defendant Paugh. Plaintiffs

21-cv-00341-GPC

should amend their Complaint in order to properly allege compliance, or plead excused

noncompliance, with the California Tort Claim Act's presentation requirements.[2]

### b.  Second Cause of Action: Cal. Civ. Code § 43

Before discussing this and Plaintiff's other state law claims against the remaining

Defendants, the Court notes that where no federal claim remains against a Defendant, a

federal court has discretion to refrain from exercising jurisdiction over pendant state law

claims. *See* 28 U.S.C. §1367(c)(3); *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001).

However, since the Court does not dismiss Plaintiff's claims with prejudice at this stage,

the Court will proceed to analysis of the sufficiency of the allegations supporting

Plaintiff's state law claims even where the Court has dismissed the federal law claims,

above.

Plaintiffs allege that Defendants violated Plaintiffs' rights including "the right of

protection from personal and physical insult and violation, from defamation and from

injury to personal relation, as set forth in California Civil Code § 43. California Civil

Code § 43 codifies the common law torts of assault, battery, and invasion of privacy.

*Marsh v. San Diego Cty.*, 432 F. Supp. 2d 1035, 1057-58 (S.D. Cal. 2006). Thus, the

Court's analysis of Plaintiffs' purported claims is the same as, and collapses into, its

analysis of Plaintiffs' common law tort claims of intentional infliction of emotional

distress ("IIED") and intrusion into private affairs, *see infra* Sections III.B.d, III.B.e. *See*

---

[2] Since the state law claims were not clearly alleged to be in compliance with the claims presentation requirement, and the Court therefore disposed of the state law claims against the public entity and public employee Defendants on that ground, the Court need not decide Defendants Valenzuela and Paugh's motion to strike Plaintiffs' second, third, and fourth causes of action pursuant to California's anti-SLAPP statute. ECF No. 35-1 at 31. However, the Court reserves consideration of Defendants' request until such time as Plaintiffs may plead state law claims that survive the Tort Claims presentation requirements.

21-cv-00341-GPC

1   *Franklin v. S. Cal. Permanente Med. Grp.*, No. 05-0330, 2006 WL 5309515, fn. 1

2   (C.D.Cal. Nov. 7, 2006) (Cal. Civ. Code §43 "do[es] not give rise to causes of action

3   distinct from the common law torts at issue here, and thus [it] do[es] not change the

4   analysis").

5   **c.  Third Cause of Action: Tom Bane Civil Rights Act, Cal.**

6   **Civ. Code § 52.1**

7   Plaintiffs allege violations of their rights pursuant to the Tom Bane Civil Rights

8   Act ("Bane Act") against all Defendants. FAC at 40. The Bane Act was enacted in 1987

9   to address hate crimes. *Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir.

10  2018). "The Bane Act civilly protects individuals from conduct aimed at interfering with

11  rights that are secured by federal or state law, where the interference is carried out 'by

12  threats, intimidation, or coercion.'" *Id.* (quoting *Venegas v. County of Los Angeles*, 153

13  Cal.App.4th 1230, 1239 (2007)). The doctrine of qualified immunity does not apply to

14  causes of action under Civil Code § 52.1. *Venegas*, 153 Cal.App.4th at 1232.

15  Allegations of interference carried out by threats, intimidation, or coercion are thus

16  central elements of a Bane Act claim. In their FAC, Plaintiffs do not allege threats,

17  intimidation, or coercion from any of the Defendants. At most, Plaintiffs assert that

18  Defendants violated their rights "by obtaining or attempting to obtain, [sic] evidence and

19  testimony by duress, fraud, and/or undue influence, in juvenile dependency investigations

20  and proceedings." FAC ¶ 136. This allegation of "duress" is the closest that the FAC

21  comes to alleging any kind of coercion or intimidation. However, these bare legal

22  conclusions are insufficient to survive a motion to dismiss. The Court therefore HEREBY

23  DISMISSES WITHOUT PREJUDICE the Bane Act cause of action as to all Defendants.

24  Plaintiffs are granted leave to amend.

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### d.  Fourth Cause of Action: Intentional Infliction of Emotional Distress

A cause of action for intentional infliction of emotional distress exists where there is "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009) (citing *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 1001 (1993)). A defendant's conduct is "outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* The defendant's conduct must be intended to inflict injury or "engaged with the realization that injury will result." *Id.* "Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it." *Id.*

Plaintiffs base their intentional infliction of emotional distress claims on conduct carried out by "all Defendants" including, among other actions: providing the court false information, wrongfully and unlawfully removing M.M. from their custody, causing M.M. to be physically and mentally examined without her parents' presence or consent, and videotaping M.M. and Plaintiffs covertly. FAC ¶ 149. Plaintiffs allege that, as a result of this conduct, Plaintiffs suffered physical and emotional distress including "mental anguish, anxiety, worry, shock, grief, nervousness, and humiliation." *Id.* ¶ 152. The FAC does not specifically allege conduct by any of the Defendants that would rise to the level of "extreme and outrageous conduct" that would exceed the bounds of tolerability within a civilized society. As a result of the scattershot and generalized allegations, the Court finds that Plaintiffs have failed to plead facts supporting a plausible claim for intentional infliction of emotional distress. Nor have Plaintiffs adequately

21-cv-00341-GPC

alleged the severity of their distress stemming from Defendants' actions. At this time, the Court does not consider whether any immunities shield particular Defendants from liability under this cause of action, due to the general deficiency of Plaintiffs' pleading. The Court HEREBY DISMISSEES WITHOUT PREJUDICE the entirety of this cause of action as to all Defendants. Plaintiffs are given leave to amend.

### e.  Fifth Cause of Action: Intrusion into Private Affairs

Plaintiffs allege that they had a reasonable expectation of privacy upon entering M.M.'s private hospital room, and that "all Defendants" intentionally intruded into Plaintiffs' private affairs without Plaintiffs' consent or knowledge by placing covert recording devices in M.M.'s hospital room for about thirty consecutive days. FAC ¶ 156. Plaintiffs allege during the time of the covert recording, they took private phone calls, ate in the room, and changed clothes, and therefore the recording was an "unconsented-to physical and sensory intrusion, the nature and scope of which is highly offensive to a reasonable person." *Id.* ¶ 157.

There are two elements to the common law tort of intrusion in California. "First, the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy. Second, the intrusion must occur in a manner highly offensive to a reasonable person." *Hernandez v. Hillsides*, 47 Cal.4th 272, 286 (2009). As to the first element, "the expectation of privacy must be 'objectively reasonable.'" *Id.* (citing *Shulman v. Group W Productions, Inc.*, 18 Cal.4th 200, 232 (1998)). The second element involves a determination as to whether the alleged intrusion is highly offensive under the particular circumstances, taking into account factors such as the degree and setting of the intrusion and the intruder's motives and objectives. *Id.* "Even in cases involving the use of photographic and electronic recording devices, which can raise difficult questions about covert surveillance, California tort law provides no bright line on offensiveness; each case must be taken on its facts." *Id.*

21-cv-00341-GPC

1    The question before the Court in this fact-specific inquiry is whether Plaintiffs
2    have adequately pled supporting facts and allegations of an objectively reasonable
3    expectation of privacy and an intrusion that was highly offensive to a reasonable person.
4    Plaintiffs were visitors to M.M.'s hospital room, and though the room had an element of
5    excludability that would have allowed Plaintiffs to keep out certain visitors, Plaintiffs
6    have not adequately alleged that they had a reasonable expectation of privacy as to the
7    particular Defendants here, who were all medical professionals and/or individuals
8    involved in the investigation of alleged abuse and neglect. Plaintiffs have not adequately
9    alleged that it would be objectively unreasonable for the Defendants, all of whom were
10   hospital personnel or closely linked to the functions of the hospital, to "enter" the hospital
11   room, including through surveillance. Plaintiffs have also not adequately alleged, beyond
12   a bare legal conclusion, that the intrusion would be highly offensive to a reasonable
13   person. Even taking all of Plaintiffs' allegations as factually true and viewing the
14   pleadings in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have
15   failed to allege facts sufficient to state a claim for intrusion of privacy. The Court
16   HEREBY DISMISSES WITHOUT PREJUDICE this cause of action as to all
17   Defendants. Plaintiffs have leave to amend. However, any amendment should state with
18   more clarity how the specific Defendants are each alleged to have violated Plaintiffs'
19   rights under this cause of action.

20   **D. Defendants Valenzuela and Paugh's Request for Judicial Notice**

21       Defendants Valenzuela and Paugh request that this Court take judicial notice of the
22   contents of Exhibits A-D (including records from state court proceedings and a copy of
23   the government tort claim presented by Plaintiffs to the County), attached to their Motion
24   to Dismiss and Anti-SLAPP Motion to Strike. ECF No. 35-2 at 1. On October 8, 2021,
25   Plaintiffs filed an opposition to Defendants' Request for Judicial Notice. ECF No. 55.

26

27

28

21-cv-00341-GPC

A court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, but a court may not take judicial notice of a fact that is subject to reasonable dispute. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'" *Id.* at 690 (quoting *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426-27 (3d. Cir. 1999).

At this stage, the Court declines to entertain the request for judicial notice and need not decide the scope of judicial notice available because the Court did not rely on any of the aforementioned exhibits—either their contents or their "existence"—in promulgating the instant Order on Defendants' Motions to Dismiss. Since the Court did not rely on the exhibits, Defendants' request for judicial notice is denied as moot. By the same token, Plaintiffs' request for limited discovery on the issues presented in Defendants' request is also denied as moot. Furthermore, because the Court did not consider either the Defendant's request for judicial notice or Plaintiffs' Objection (ECF No. 55), Defendants Paugh and Valenzuela's ex parte Motion to Strike the Objection (ECF No. 56) is also denied as moot. Plaintiffs are cautioned, however, that in future they must timely file according to the deadlines set by this Court.

## IV.   CONCLUSION

For the reasons stated above, the Court HEREBY DENIES Defendant Valenzuela's motion to dismiss as to the claim of judicial deception. The Court also HEREBY DENIES Defendant Rady Children's Hospital's Motion to Dismiss as to the claim of "non-consensual medical procedures," i.e. violation of Plaintiffs' right to be present and/or notified of medical procedures carried out on their minor child. All other claims are HEREBY DISMISSED WITHOUT PREJUDICE. The Court GRANTS

1  Plaintiffs leave to file a Second Amended Complaint correcting the deficiencies noted

2  above. Plaintiffs must file this Second Amended Complaint on or before November 12,

3  2021. The Motion to Strike Plaintiffs' Objection is DENIED as moot. ECF No. 56.

4      **IT IS SO ORDERED.**

5  Dated:  October 20, 2021

6                                            Hon. Gonzalo P. Curiel

7                                            United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21-cv-00341-GPC