**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILLIAM MEYER, an individual; and DANA GASCAY, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN DIEGO, a public entity; RADY CHILDREN'S HOSPITAL, a California nonprofit organization; REGENTS OF THE UNIVERSITY OF CALIFORNIA, a California nonprofit organization; ELIZABETH REESE, an individual; KAYLA VALENZUELA, an individual; DR. SHALON NIENOW, an individual; TIFFANY PAUGH, an individual; CATHERINE CRAFT, an individual; TAMI SNYDER, an individual; DOE HHSA, manager, an unidentified named individual; DOES 1 through 50, <br><br> Defendant. | Case No.: 3:21-cv-00341-LL-BLM <br><br> **ORDER:** <br><br> **(1) GRANTING-IN-PART MOTION TO FILE DOCUMENTS UNDER SEAL;** <br><br> **(2) DENYING REQUEST FOR ORAL ARGUMENT; and** <br><br> **(3) DENYING-IN-PART PLAINTIFFS'** *EX PARTE* **APPLICATION FOR EXTENSION OF TIME TO FILE RESPONSE TO DEFENDANTS' MOTION TO DISMISS** <br><br> **[ECF Nos. 67, 70, 74]** |

**I.   INTRODUCTION**

Plaintiff WILLIAM MEYER, an individual, and DANA GASCAY, an individual (collectively, "Plaintiffs") bring this action pursuant to 42 U.S.C. § 1983 ("Section 1983")

against Defendants the COUNTY OF SAN DIEGO, a public entity, erroneously sued as the San Diego County Health and Human Services Agency (the "County"); the SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY (the "HHSA")[1]; RADY CHILDREN'S HOSPITAL, a California nonprofit organization ("Rady"); REGENTS OF THE UNIVERSITY OF CALIFORNIA, a California nonprofit organization ("Regents"); ELIZABETH REESE, an individual ("Reese"); KAYLA VALENZUELA, an individual ("Valenzuela"); DR. SHALON NIENOW, an individual ("Dr. Nienow"); TIFFANY PAUGH, an individual ("Paugh"); CATHERINE CRAFT, an individual ("Craft"); TAMI SNYDER, an individual ("Snyder"); DOE HHSA, manager, an unidentified named individual; DOES 1 through 50.[2]  ECF No. 1.

Before the Court are following motions: (1) the Motion to File Documents Under

---

[1]     HHS was named in the original complaint and is still listed on the docket.  Because the County and HHSA are the same entity, and the FAC did not name HHSA, *see* ECF Nos. 25, 26, the Court dismisses SDCHHS *without prejudice*.

[2]     Plaintiffs are on the third iteration of their complaint and have yet to serve, much less advance any individual allegations as to how Does 1 through 50 violated their rights.  The Federal Rules of Civil Procedure ("FRCP") neither authorize nor prohibit the use of fictitious parties; however, FRCP 10 does require a plaintiff to include the names of all parties in his complaint.  *See Rojas by & through Rojas v. Sea World Parks & Ent., Inc.*, 538 F. Supp. 3d 1008, 1030-31 (S.D. Cal. 2021) (Benitez, J.).  Naming doe defendants further implicates FRCP 4 requiring service of the complaint.  *Canesco v. Ford Motor Co.*, -- F. Supp. 3d ---, No. 3:21-cv-00425-BEN-RBB, 2021 WL 5122231, at *21 (S.D. Cal. Nov. 4, 2021) (Benitez, J.) (noting that "it is effectively impossible for the United States Marshal or deputy marshal to fulfill his or her duty to serve an unnamed defendant"); *Keavney v. Cty. of San Diego*, No. 3:19-cv-01947-AJB-BGS, 2020 WL 4192286, at *4-5 (S.D. Cal. July 21, 2020) (Battaglia, J.) (same).  "A plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege specific facts showing how each particular doe defendant violated his rights." *Id.* at *4-5.  Where a "[p]laintiff fails to link any particular constitutional violation to any specific, individual state actor," or seeks "to even minimally explain how any of the unidentified parties he seeks to sue personally caused a violation of his constitutional rights," the court must dismiss those individuals, especially when they have not been served.  *See id.* at *4 (dismissing the plaintiff's first amended complaint); *see also* FED. R. CIV. P. 4(m) (providing that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."); S.D. Cal. Civ. R. 41.1(a).  Thus, Does 1 through 50 are dismissed *without prejudice* for want of prosecution pursuant to Rule 4(m).

Seal of the County, Valenzuela, Craft, Paugh, and Snyder, ECF No. 70; (2) Dr. Niewnow's Request for Oral Argument, ECF No. 67; and (3) Plaintiffs' *Ex Parte* Application for Extension of Time to File Response to Defendants' Motion to Dismiss, ECF No. 74. After considering the papers submitted, supporting documentation, and applicable law, the Court (1) **GRANTS-IN-PART** and **DENIES-IN-PART** the Motion to File Documents Under Seal of the County, Valenzuela, Craft, Paugh, and Snyder, ECF No. 70; **DENIES** Dr. Nienow's Request for Oral Argument, ECF No. 67; and (2) **GRANTS-IN-PART** and **DENIES-IN-PART** Plaintiffs' *Ex Parte* Application for Extension of Time to File Response to Defendants' Motion to Dismiss, ECF No. 74.

## II.   BACKGROUND

### A.   Statement of Facts

Plaintiffs are the parents of a non-party minor child, M.M., who has suffered a long and complicated medical history of repeated injury, chronic pain, and other symptoms related to a diagnosis of Ehlers-Danlo Syndrome, hypermobile type ("hEDS"). SAC at ¶¶ 4, 45, 46, 51.[3] Defendants Valenzuela, Craft, Paugh, and Snyder are employees of the HHSA. *Id.* at ¶¶ 6-9. Defendant Rady is a medical center located in San Diego, which operates, manages, and supervises the Chadwick Child Advocacy Center, also known as the Child Protection Team, which includes its members of law enforcement personnel, HHSA personal, and personnel from the prosecution. *Id.* at ¶¶ 11-12. The Child Protection Team is a multidisciplinary team of individuals who provide a centralized, coordinated, and comprehensive multidisciplinary response to child abuse allegations and investigations, serving as a liaison between the medical professionals and the County investigators. *Id.* at ¶ 12. Defendant Reese is an employee of Rady and active member of the Child Protection Team at Rady. *Id.* at ¶ 16. Dr. Nienow was also a Rady and/or Chadwick employee working as the Chadwick Medical Clinical Director. SAC at ¶ 18.

Due to the complexity of her condition and uncertainty or disagreement among her

---

[3]   Unless otherwise indicated, all page number references are to the ECF-generated page number contained in the header of each ECF-filed document.

treating physicians as to the condition's causes, M.M. was treated at various hospitals in 2017-2019, including Rady's outpatient pain program, Kaiser Permanente San Diego, Kaiser Permanente Los Angeles, and Mt. Sinai in New York. *Id.* at ¶¶ 52-82.

On December 13, 2018, Plaintiffs were notified that the County received a referral alleging abuse and neglect of M.M., including that M.M.'s mother "was tampering with M.M.'s IV pump, and was not allowing medical staff to help M.M. get better." SAC at ¶ 71. On December 14, 2018, Defendant Valenzuela, a Protective Services Worker ("PSW") with the County, spoke with and interviewed the reporting party. *Id.* at ¶ 72. On December 17, 2018, Valenzuela interviewed Plaintiffs individually as well as with M.M. *Id.* at ¶ 73.

On January 23, 2019, and continuing with her investigation, Valenzuela again contacted a physician who told her that (1) M.M.'s diagnosis of Complex Regional Pain Syndrome had been confirmed, (2) Plaintiffs had been cooperative, and (3) there was no evidence of Munchausen by Proxy.[4] SAC at ¶ 89.

On January 23, 2019, Valenzuela "had no choice to close the referral" for the initial complaint as inconclusive and notified Plaintiffs of the case closure on February 15, 2019. SAC at ¶ 93. Plaintiffs allege that between January 23, 2019 and January 29, 2019, Reese and Dr. Nienow met and conferred to discuss how to develop evidence that M.M. was faking her symptoms and malingering so Valenzuela would have evidence to present to the juvenile court to support an application to remove M.M. from her parents' care. *Id.* at ¶ 94. Reese and Dr. Nienow decided to place M.M. in a room equipped for covert video recording, which recorded Plaintiffs 24 hours a day, seven days a week for a period of 36 days. *Id.* at ¶¶ 97-98. Plaintiffs were not informed that they were being recorded, and

---

[4]  As another court has noted, "Munchausen syndrome by proxy," occurs where "an individual produces … physical or emotional symptoms in another person under his or her care," and "[u]sually the victim is a young child, and the person producing the symptoms may be the child's parent or caretaker, most often the mother." *Cooney v. Rossiter*, 583 F.3d 967, 969 (7th Cir. 2009) (citing American Medical Association, *Complete Medical Encyclopedia* 870 (Jerrold B. Leikin & Martin S. Lipsky eds. 2003); Thomas Lathrop Stedman, *Stedman's Medical Dictionary* 1906 (28th ed. 2006)).

Defendants did not obtain a warrant or judicial authorization for the recording. SAC at ¶¶ 97-98.

On or around January 29, 2019, M.M. was transferred from Mt. Sinai and admitted to Rady based on decisions made by Kaiser and Dr. Bolognese, M.M.'s treating physician at Mt. Sinai. SAC at ¶¶ 82, 98-99. Two days later, on January 31, 2019, Reese, at Dr. Nienow's direction, made a child abuse hotline referral claiming that Plaintiffs had Munchausen by Proxy, and that M.M. was purposefully dislocating her arm and faking her symptoms. *Id.* at ¶¶ 104-05.

On February 12, 2019, Dr. Nienow provided a report to Valenzuela, stating, *inter alia*, that "separation from her parents was essential to preserve her life." SAC at ¶¶ 124-133. On February 28, 2019, Plaintiffs were informed that they were the subject of another child abuse complaint alleging that Plaintiffs did not support M.M.'s psychiatric needs and were interviewed individually by Valenzuela. *Id.* at ¶¶ 84, 118-119.

On March 6, 2019, Dr. Nienow provided a report to Valenzuela, which "stated that in order to prevent M.M. from dying, it was imperative that her parents be 'immediately removed' from the hospital." SAC at ¶ 136. Plaintiffs allege that "[s]he … falsely stated that M.M. suffered substantial physical and emotional harm as a result of the medical decisions [Plaintiffs] made with respect to her condition and care." *Id.* Plaintiffs also claim that Dr. Nienow "falsely claimed that Bill and Dana had 'pushed for numerous invasive, and potentially dangerous procedures, despite a lack of physiologic evidence to support them despite the recommendations of medical providers against them.'" *Id.*

On March 7, 2019, Valenzuela and Craft filed a Petition and Warrant Application as well as a Detention Report, which judges use to rely on in deciding whether to grant such petitions. SAC at ¶ 151. That same day, Plaintiffs were removed from the hospital, and Valenzuela told Plaintiffs that a warrant had been issued preventing them from seeing M.M., but that there would be a hearing the following morning to determine whether M.M. would continue to be detained from Plaintiffs' care. *Id.* at ¶¶ 159-162.

On March 8, 2019, Plaintiffs were summoned to a juvenile dependency hearing in

the juvenile court of San Diego County, at which time the judge found that a "*prima facie* showing [had] been made" and ordering responsibility for M.M.'s continued care and placement be vested with the County. SAC at ¶¶ 163-165.

On March 11, 2019, at the continued Detention Hearing, the Court continued to find separation appropriate but allowed Plaintiffs access to M.M. via supervised visits once per week with a monitor selected by HHSA. SAC at ¶¶ 171-72. On March 15, 2019, Valenzuela transferred management of M.M.'s dependency case to Paugh. SAC at ¶ 173.

Around April 2019, Dr. Nienow, with Paugh and Snyder's approval, directed Rady to perform various invasive tests on M.M., including "an invasive swallow test," prompted M.M. experiencing difficulties swallowing and being unable to eat consistently by mouth. SAC at ¶¶ 197-98. Plaintiffs were not aware of this test until after it occurred. *Id.* at ¶ 197.

From March 11, 2019 through the trial on February 5, 2020, Plaintiffs remained removed from M.M. while M.M. remained a patient at Rady and continued to suffer from symptoms relating to hEDs. SAC at ¶¶ 163-167, 209. On February 5, 2020, the trial concluded with a ruling in Plaintiffs' favor. SAC at ¶ 209.

On May 1, 2020, Plaintiffs submitted a Notice of Government Claim to the County of San Diego pursuant to California Government Code sections 910 et seq. SAC at ¶ 28. On September 28, 2020, the County rejected Plaintiffs' claims. SAC at ¶ 29. On February 25, 2021, or within six months of receiving the County's rejection, Plaintiffs filed their initial complaint. SAC at ¶ 30.

Plaintiffs accuse Defendants Valenzuela, Craft, Reese, and Dr. Nienow of concocting a plan to secretly surveil and record the Plaintiffs and their daughter in their daughter's private hospital room. SAC at ¶ 31. They further allege that when the allegedly unlawful surveillance failed to yield the hoped-for results, Defendants "devised a plan to strip M.M. from her parents' custody" by concocting "a false story about how [Plaintiffs] were the cause of M.M.'s deteriorating medical condition." *Id.* at ¶¶ 33.

B. **Procedural History**

On February 25, 2021, Plaintiffs filed their 21-page complaint alleging six claims

for relief for (1) violation of civil rights pursuant to Section 1983; (2) *Monell* liability; (3) violation of state civil rights, CAL. CIV. CODE § 43; (4) violation of the Bane Act, CAL. CIV. CODE § 52.1; (5) intentional infliction of emotional distress; and (6) intrusion into private affairs. ECF No. 1. On April 7, 2021, Plaintiffs served the San Diego County Health and Human Services Agency.[5] ECF No. 4.

On May 14, 2021, Rady and Reese as well as Regents and Dr. Nienow timely filed separate motions to dismiss for failure to state a claim. ECF Nos. 11, 13. On May 17, 2021, the County Defendants timely filed a motion to dismiss for failure to state a claim, ECF No. 17, while Valenzuela and Paugh alone filed a motion to quash for improper service of process, ECF No. 18. On May 25, 2021, Plaintiffs and the County Defendants filed a Joint Motion to modify and extend their briefing schedule. ECF No. 20. On May 26, 2021, the Court modified the briefing schedule for all parties. ECF No. 23.

On May 26, 2021, Plaintiffs filed a proof of service showing service of the complaint on Paugh and Valenzuela that same day. ECF Nos. 24, 25.

On June 14, 2021, Plaintiffs filed their 44-page First Amended Complaint (the "FAC"), which included the following claims for relief: (1) violation of civil rights pursuant to Section 1983 arising from (a) deception in the presentation of evidence and related *Monell* claims and (b) unwarranted non-consensual medical procedures/treatment and invasion of privacy and related *Monell* claims; (2) violation of state civil rights, CAL. CIV. CODE § 43; (3) violation of the Bane Act, CAL. CIV. CODE § 52.1; (4) intentional infliction of emotional distress; and (5) intrusion into private affairs. ECF No. 27. Based upon the filing of the FAC, on June 15, 2021, the Court denied the pending motions to dismiss and seal, ECF Nos. 11, 13, 15, 17, 18, as moot and vacated its previously set briefing schedules. ECF No. 28. In its order, the Court noted that while the motion to

---

[5] Although the dates of service for some of the remaining defendants is not clear, after requests for extensions filed by all defendants in this case, the Court ordered the County, Paugh, and Valenzuela (the "County Defendants") to respond by May 17, 2021, ECF No. 8, the remaining defendants to answer by May 14, 2021, ECF No. 10.

dismiss pertaining to Valenzuela and Paugh was not mooted by the filing of the FAC, the Court denied that motion as well because the record indicated Plaintiffs effected service for those defendants. *Id.*

On June 22, 2021, the Court granted the parties' another joint motion, this time seeking an extension of time for Defendants to respond to the FAC. ECF No. 30. On July 9, 2021, Dr. Nienow, Rady, Reese, the County, Valenzuela, and Paugh timely filed a Motion to Dismiss the FAC for failure to state a claim, ECF Nos. 30, 31, 32, 36. The County Defendants also moved to strike the FAC pursuant to California's anti-SLAPP statute, CAL. CODE CIV. PROC. § 425.16, ECF No. 35, and moved to file documents under seal in support of their motions, ECF Nos. 33, 34.

After the parties again sought to modify the briefing schedule, ECF No. 40, the Court set a new briefing schedule, ECF Nos. 39, 41, but Plaintiffs opposed on August 28 and 30, 2021, ECF Nos. 42, 43, 44, 45, which was after the Court's deadline of August 27, 2021. On September 1, 2021, Plaintiffs sought relief due to their untimely filing, explaining that it was due to "unforeseen and inexplicable technological issue[s] with [the] documents." ECF No. 46 at 5:5-9. On September 2, 2021, the Court granted Plaintiffs relief, deeming their late oppositions timely filed. ECF No. 47. On September 17, 2021, Defendants timely filed their reply briefs. ECF Nos. 39, 41, 48, 49, 50, 51. On October 8, 2021, the Court submitted the pending motions on the papers. ECF No. 54. That same day, Plaintiffs filed an Objection to the County Defendants Request for Judicial Notice in Support of their Motion to Dismiss and Strike the FAC. ECF No. 55. On October 13, 2021, the County Defendants filed an *Ex Parte* Motion to Strike Plaintiffs' Objection. ECF No. 56.

On October 21, 2021, the Court issued an Order (1) Granting in Part and Denying in Part Defendants' Motions to Dismiss Plaintiffs' FAC by denying Valenuzela's motion to dismiss the claim of judicial deception and Rady's motion to dismiss as to the claim of non-consensual medical procedures but granting the motions to dismiss all other claims,, ECF Nos. 31 , 32 , 34 , 35 , 36 , 56; (2) denying the motion to strike Plaintiffs' objection as moot, ECF No. 56; and (3) ordering Plaintiffs to file their Second Amended Complaint

("SAC") by November 12, 2021. ECF No. 57 at 27-28. In this order, the Court expressly noted that "Plaintiffs are cautioned … that in future they must timely file according to the deadlines set by this Court." *Id.* at 27.

On November 4, 2021, Plaintiffs filed a Joint Motion for Extension of Time to File their SAC, seeking an additional 45 days to file their SAC. ECF No. 58. On November 5, 2021, the Court granted their joint motion, requiring Plaintiffs to file their SAC by December 27, 2021. ECF No. 59.

On December 27, 2021, Plaintiffs timely filed their 120-page SAC, alleging eight claims for relief for (1) violation of Section 1983 due to unwarranted search/surveillance and invasion of privacy; (2) violation of Section 1983 due to deception in the presentation of evidence and violation of the rights of familial association; (3) violation of Section 1983 arising from the Fourteenth Amendment right to be free of unwarranted medical procedures/exclusion; (4) violation of Section 1983 under *Monell* against the County; (5) violation of Section 1983 under *Monell* against Rady; (6) invasion of privacy/intrusion into private affairs; (7) invasion of privacy, CAL. CONST. ART. 1, § 1; and (8) intentional infliction of emotional distress. ECF No. 61.

On December 28, 2021, this case was transferred to the Hon. Linda Lopez. ECF No. 63. On January 19, 2022, Plaintiffs filed a Waiver of Service of Summons as to the SAC, executed by counsel for the County Defendants.[6] ECF No. 65

On January 26, 2022, Dr. Nienow filed a Request for Oral Argument, arguing that, *inter alia*, "this case presents a novel issue of state law, *i.e.*, whether visitors have a reasonable expectation of privacy in their daughter's hospital room under the factual

---

[6] The SAC, although alleging three more claims for relief than the FAC, in substance, does not add new claims. Thus, while no waiver of service of summons was filed as to the other defendants, the Court finds that service of the SAC was not governed by FRCP 4. *See, e.g.*, *Emp. Painters' Tr. v. Ethan Enterprises, Inc.*, 480 F.3d 993, 999 (9th Cir. 2007) (noting an amended complaint qualifies as a "pleading subsequent to the original complaint," governing by FRCP 5(b), permitting service by mail, whereas an original complaint is governed by FRCP 4; however, where an amended complaint adds "new or additional claims for relief," it must be "served in the manner provided by Rule 4").

circumstances alleged in this case." ECF No. 67.

On January 26, 2022, Nienow filed a Motion to Dismiss Claims 1, 3, 6, 7, and 8 of the SAC, ECF No. 66; Rady & Reese filed a motion to dismiss the entire SAC, ECF No. 68; the County Defendants along with Craft and Snyder filed a motion to dismiss the SAC for failure to state a claim upon which relief can be granted, ECF No. 69, 71;

That same day, the County Defendants, Craft, and Snyder filed a motion to file documents under seal, ECF No. 70, and Motion to Strike the SAC pursuant to Cal. Code Civ. Proc. § 425.16, ECF No. 72.

On February 1, 2022, Plaintiffs filed an *Ex Parte* Application to Extend Deadlines and re-set the briefing schedule, which is their fourth request to seek an extension in this case. ECF No. 74. On February 9, 2022, the County Defendants, Craft, and Snyder opposed this application, asking the Court to deny the requested extension, which is one of many extensions requested throughout this case. ECF No. 75 at 2. On February 3, 2022, Plaintiffs replied proposing their alternative briefing schedule and reiterating the need for an extension. ECF No. 76 at 5:1-9.

## III. LEGAL STANDARD

### A. Motions to Seal

Except for certain documents "traditionally kept secret," federal courts begin a sealing analysis with "a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). A party seeking to seal a judicial record then must "articulate [] compelling reasons supported by specific factual findings," *id.*, that outweigh the general history of access and the public policies favoring disclosure, such as the "public interest in understanding the judicial process," *Hagestad v. Tragesser,* 49 F.3d 1430, 1434 (9th Cir. 1995). The Court "conscientiously balance[s] . . . the competing interests" of the public and the party who seeks to keep certain judicial records secret. *Foltz,* 331 F.3d at 1135. After considering these interests, if the Court decides to seal certain judicial records, it "base[s] its decision on a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or

conjecture." *Hagestad*, 49 F.3d at 1434; *see also Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (applying compelling reasons standard to dispositive motions).

A party must satisfy the compelling reasons standard even if the motion, or its attachments, were previously filed under seal or protective order. *Foltz*, 331 F.3d at 1136 ("[T]he presumption of access is not rebutted where . . . documents subject to a protective order are filed under seal as attachments to a dispositive motion."). A party's failure to meet the burden of articulating specific facts showing a "compelling reason" means that the "default posture of public access prevails." *Kamakana*, 447 F.3d at 1182. In ruling on motions to seal, this Court has recognized that "compelling reasons sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such court files might . . . become a vehicle for improper purposes, such as the use of records to . . . release trade secrets." *Kamakana*, 447 F.3d at 1179. Similarly, other "sources of business information that might harm a litigant's competitive standing" may also constitute a compelling reason to seal, *see Nixon*, 435 U.S. at 598, such as a company's confidential profit, cost, and pricing information, which if publicly disclosed could put the company at a competitive disadvantage, *see Apple, Inc. v. Samsung Elec. Co.*, 727 F.3d 1214, 1225 (Fed. Cir. 2013) ("[I]t seems clear that if Apple's and Samsung's suppliers have access to their profit, cost, and margin data, it could give the suppliers an advantage in contract negotiations, which they could use to extract price increases for components.").

B. ***Ex Parte* Application for Extension of Time**

Rule 7(b)(1) of the Federal Rules of Civil Procedure requires all motions to (1) be made in writing unless made during a hearing or trial; (2) "state with particularity the grounds for seeking the order"; and (3) "state the relief sought." Local Rule 7.1 provides that a party moving the Court for relief must file their papers 28 days before the hearing date. S.D. Cal. Civ. R. 7.1 (e)(1). Subdivision (e)(5)[7], governing motion practice and

---

[7]  While state courts often offer a procedure to secure relief that could be secured by

-11-

enlargements or shortening of time, provides: "All applications for orders shortening time under these rules must be submitted ex parte, be accompanied by a proposed order, and be served on all opposing parties." S.D. Cal. Civ. R. 7.1(e)(5). Further, Local Rule 73.3(g)(2) provides that "[a] motion for an order must not be made ex parte unless it appears by affidavit or declaration" that (1) "within a reasonable time before the motion the party informed the opposing party or the opposing party's attorney when and where the motion would be made" or (2) "the party in good faith attempted to inform the opposing party and the opposing party's attorney but was unable to do so, specifying the efforts made to inform them"; or (3) "for reasons specified the party should not be required to inform the opposing party or the opposing party's attorney." S.D. Cal. Civ. R. 73.3(g)(2). Further, while a district court may shorten the usual notice period, courts generally only do so when circumstances warrant an expedited hearing. *See Anderson v. Davila*, 125 F.3d 148, 156 (3rd Cir. 1997).

## IV. DISCUSSION
### A. Motion to Seal

The County Defendants, Craft, and Snyder seek to seal Exhibits A through D as well as an unredacted copy of their motion. ECF No. 70 at 2:1-4. They argue that compelling reasons exist to seal the exhibits "because they contain sensitive, statutorily-protected information regarding juvenile dependency proceedings." *Id.* at 2:5-6.

California law fiercely protects the confidentiality of juvenile records. *See, e.g.*, CAL. WELF. & INST. CODE § 827 (providing that "the Legislature reaffirms its believe that juvenile court records, in general, should be confidential"); *In re Keisha T.*, 38 Cal. App.

---

noticed motion on a shortened timeline, the Federal Rules of Civil Procedure contain no provisions directly addressing the filing and service of papers seeking to seek relief on a shortened notice period. Instead, Rule 65 of the Federal Rules of Civil Procedure governs temporary restraining orders, and Rule 3.5 of the California Rules of Professional Conduct governs *ex parte* communications with chambers; however, there is no Federal Rule of Civil Procedure covering *ex parte* applications similar to Rule 3.1200 of the California Rules of Court.

4th 220, 231 (1995), *as modified* (Oct. 10, 1995) ("The strong public policy of confidentiality of juvenile proceedings and records has long been recognized."). Federal courts have likewise adhered to this confidentiality. *See T.T. v. Cty. of San Diego*, No. 3:19-cv-00407-AJB-AGS, 2020 WL 6118781, at *1 (S.D. Cal. Oct. 16, 2020) (Battaglia, J.) (granting a motion to seal juvenile records because "given the confidential status of Plaintiff's juvenile records pursuant to section 827 of the Welfare and Institutional Code, the Court finds that Defendants have articulated compelling reasons in support of their motion to seal").

The moving Defendants seek to seal the following exhibits:

| Sealed Doc. ECF No. | Request to Seal Portions of: | | Basis: |
|---|---|---|---|
| | Ex. | Description: | |
| 73-1 | A | Copies of the April 12, 2021 and May 20, 2021 orders of the superior court granting County Defendants' request and ordering that any records from the juvenile court proceedings for *In the matter of M.M.—a minor*, Petition No. NJ015489 used as exhibits be filed and/or maintained in a confidential manner (filed conditionally under seal) | Juvenile Court Records |
| 73-2 | B | Copies of the juvenile court's orders dated March 7, 2019, March 8, 2019, March 11, 2019, March 27, 2019, April 2, 2019, April 15, 2019, June 3, 2019, June 10, 2019, June 25, 2019, July 11, 2019, July 18, 2019, August 5, 2019, August 12, 2019, September 20, 2019, October 1, 2019, October 3, 2019, October 4, 2019, October 7, 2019, October 8, 2019, October 10, 2019, October 23, 2019, October 29, 2019, October 31, 2019, November 13, 2019, November 18, 2019, November 20, 2019, December 11, 2019, December 12, 2019, December 16, 2019, December 20, 2019, January 8, 2020, January 15, 2020, January 31, 2020, February 4, 2020, and February 5, 2020 from the juvenile court proceedings for *In the matter of M.M.—a minor*, Petition No. NJ015489 (filed conditionally under seal). | Juvenile Court Records |
| 73-3 | C | Excerpts from the certified reporter transcripts from hearings dated March 8, 2019 and March 11, 2019, from the juvenile court proceedings for *In the matter of M.M.—a* | Juvenile Court Records |

| | | | |
|---|---|---|---|
| | | *minor*, Petition No. NJ015489 (filed conditionally under seal) | |
| 73-4 | D | Copies of the Detention Report filed March 8, 2019 and the Addendum to the Detention Report filed March 11, 2019, from the juvenile court proceedings for *In the matter of M.M.—a minor*, Petition No. NJ015489 (filed conditionally under seal) | Juvenile Court Records |

As for the County Defendants memorandum of points and authorities, the County seeks limited redactions. First, they seek to redact two words on Page 9, line 7 and a sentence on Page 9, lines 19 to 20. However, the Court does not find the two words, which were "very severe," or the sentence quoting a statement from the judge convey any confidential information concerning the minor in this case that is not already public record (*e.g.*, that her case was very severe). The Court finds this does not warrant sealing and **DENIES** the motion to seal as to these redactions.

Second, the County Defendants seek to seal an opinion from a psychologist concerning the child's case in this case. ECF No. 19:13-17. The Court finds this warrants sealing and **GRANTS** the motion as to this quote.

Third, the County Defendants seek to seal five words on Page 22, lines 20 and 23-25. However, the five words on Page 22, line 20 are "and any of its particulars," which in no way reveals any confidential information. The Court finds this does not warrant sealing and **DENIES** the motion to seal as to these redactions. However, the other sentence they seek to seal at Page 22, lines 22-26 (citing RJN, Ex. C, March 11, 2019 hearing transcript at 7-10) warrants sealing, and the motion is **GRANTED** as to that quote.

As for the exhibits, given that other district courts have lodged under seal the very type of documents at issue here, the confidential and privileged nature of the records involved, and the fact that these records remain under seal in state court, the Court concludes there exist compelling reasons to exercise its discretion and inherent authority to similarly lodge these materials under seal. *See Kamakana*, 447 F.3d at 1179. Accordingly, the Motion to Seal is **GRANTED** as to Exhibits A through D. The Clerk is **DIRECTED** to lodge Exhibits A through D contained in ECF No. 73 **UNDER SEAL**.

The moving defendants shall submit a new version of the redacted memorandum of points and authorities containing only the redactions permitted by the Court within ten (10) days for the Clerk of the Court to lodge under seal.

### B. *Ex Parte* Application for Extension of Time

On February 1, 2022, Plaintiffs filed an *Ex Parte* Application to Extend Deadlines and re-set the briefing schedule. ECF No. 74. On February 9, 2022, the County Defendants, Craft, and Snyder opposed this application, asking the Court to deny the extension. ECF No. 75 at 2. They argue that the Court should deny the application because (1) this case has been filed over a year ago and has made little progress, *id.* at 2:8; (2) Plaintiffs have filed several amended complaints, and Defendants have stipulated to extensions repeatedly, *id.* at 2:8-11 (citing ECF Nos. 20, 40, 58); (3) Plaintiffs were already granted a 45-day extension to file their SAC after Defendants stipulated to an additional 45 days on top of the 21-days already imposed by the Court, *id.* at 2:11-14 (citing ECF Nos. 57, 58, 61); (4) Plaintiffs now request an additional 45 days to oppose the motions filed in response to the SAC; and (5) Plaintiffs' repeated requests for extensions "is at odds with their obligation 'to secure the just, speedy, and inexpensive determination' of this action," *id.* at 2:14-20 (citing Fed. R. Civ. P. 1; *see also In re PPA Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) (explaining that delay "is costly in money, memory, manageability, and confidence in the process"). Defendants also point out that "Plaintiffs claim they require more time to respond to the County Defendants' motions because of the number of motions and the complex factual and legal questions presented," but "the factual allegations and causes of action in the SAC were similar to those in the first amended complaint, and as a result," similar to the motions filed by Defendants in response to the previous complaints. ECF No. 75:21-22:3. Finally, they note that while "Mr. McMillan, counsel for Plaintiffs, cites workload and personal issues as reasons why his office cannot meet the briefing schedule" even though "there are currently three separate law firms and five attorneys of record representing Plaintiffs in this case." ECF No. 75 at 3:4-7 (citing ECF No. 74-2 at ¶¶ 12-16).

On February 3, 2022, Plaintiffs replied, arguing that Mr. McMillan, due to his "particularized and narrow expertise, as well as the fact that he drafted the [SAC], he has been allocated the responsibility for researching and drafting the oppositions to the bulk of the Defendants' five various motions," Reply, ECF No. 76 at 3, ¶ B. Plaintiffs propose the following schedule:

| Event | Current Date | Proposed Date |
|---|---|---|
| Plaintiffs' Oppositions Due (Non-County Defendants) | Wednesday, February 16, 2022 | Friday, March 18, 2022 |
| Plaintiffs' Oppositions Due (All County Defendants) | Wednesday, February 16, 2022 | Friday, April 1, 2022 |
| Non-County Defendants' Replies Due | Wednesday, February 23, 2022 | Friday, April 8, 2022 |
| County Replies Due | Wednesday, February 23, 2022 | Friday, April 8, 2022 |
| Hearing Date on All Motions | Wednesday, March 2, 2022 | Friday, April 15, 2022 |

ECF No. 76 at 5:1-9.

The Court agrees with Defendants that Plaintiffs have repeatedly requested extensions in this case and failed to adhere to filing deadlines. The Court **GRANTS-IN-PART** the request for a modification, as outlined in the conclusion of this order, but cautions that absent a strong showing of good cause, no further extensions or modifications will be granted to either party in this case. Further, the Court finds that given the similarity in arguments advanced by Defendants for dismissing this case, judicial economy warrants the Court striking all Defendants' pending motions to dismiss. Instead, Defendants shall coordinate and file a consolidated joint motion to dismiss as outlined below.

V. **CONCLUSION**

For the above reasons, the Court **ORDERS** as follows:

1. The County Defendants' Motion to Seal is **DENIED-IN-PART** and **GRANTED-IN-PART**. The Motion to Seal is **GRANTED** as to Exhibits A through D.

The Clerk is **DIRECTED** to lodge Exhibits A through D contained in ECF No. 73 **UNDER SEAL**. The moving defendants shall submit a new version of the redacted memorandum of points and authorities containing only the redactions permitted by the Court within ten (10) days for the Clerk of the Court to lodge under seal.

2. Plaintiffs' *Ex Parte* Application to Alter the Briefing Schedule is **GRANTED-IN-PART**. In the duration of this case, Plaintiffs have requested an extension for nearly every filing and only recently received a 45-day extension. The Court grants a final extension, while reiterating that further extensions must be supported by good cause. Plaintiffs are cautioned, however, that in future they must timely file according to the deadlines set by this Court. The briefing schedule is altered as follows:

| Event: | Deadline: |
| --- | --- |
| **All Defendants' Combined Motion to Dismiss:** | Monday, February 28, 2022 |
| **Plaintiffs' Oppositions to All Defendants' Motions to Dismiss:** | Monday, March 28, 2022 |
| **All Defendants' Combined Motion to Dismiss:** | Monday, April 11, 2022 |
| **Hearing Date on All Pending Motions:** | Vacated. The Court finds this matter appropriate for submission on the papers. |

3. Finally, the Court orders that all Defendants pending motions to dismiss, but not the pending motion to strike, are **STRICKEN** from the record. All of the motions address related issues, and as such, all Defendants must submit a joint motion to dismiss. Because the Court is requesting a combined brief, but there are several defendants, the Court extends the page limit for the combined brief to no more than 35 pages. The County Defendants' motion to strike may remain on the docket as a separate motion. Plaintiffs' opposition brief must also not exceed 35 pages. Reply briefs shall not exceed 15 pages.

4. Plaintiffs are cautioned that without having determined the matter, should the Court grant the pending motions, absent a showing in their opposition brief of what facts, if any, they can allege to remedy the alleged deficiencies in their SAC, the Court may grant

the motions without leave to amend in light of (1) the number of chances Plaintiffs have had to cure the deficiencies in their complaint and (2) the Court's detailed previous order explaining the failures of the previous complaint.

**IT IS SO ORDERED.**

DATED:   February 8, 2022

_____
**HON. LINDA LOPEZ**
United States District Judge