UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADISON MEYER,<br><br>                                   Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>                                   Defendants. | Lead Case No.:  21-cv-341-RSH-BLM<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF MADISON MEYER'S FIRST AMENDED COMPLAINT**<br><br>[ECF No. 242] |

Before the Court is Defendants' motion to dismiss plaintiff Madison Meyer's First Amended Complaint (ECF No. 235, "FAC") under Federal Rule of Civil Procedure 12(b)(1) and (b)(6). ECF No. 242. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the motion presented appropriate for resolution without oral argument. For the reasons below, the Court grants in part and denies in part the motion.

## I.    BACKGROUND

The instant case arises from the alleged unauthorized video surveillance of plaintiff Madison Meyer and her family at Rady Children's Hospital–San Diego ("Rady's").

///

///

## A.    The Parties

Plaintiff names multiple defendants in this action which the Court groups into three categories. The first group comprises Rady's and its alleged officers, agents, or employees: Elizabeth Reese, Tia Luber, Melissa Lambing, Emily Holland, Rebecca Bukolt (incorrectly sued as Rebecca Harvard), Carissa Menard, Daisy Dorantes, Jessica Robershaw, and Gail Knight (collectively, the "Rady Defendants").

The second group comprises the County of San Diego ("County") and its alleged officers, agents, or employees: Kayla Valenzuela, Tiffany Paugh, Tami Snyder, Catherine Craft, Jason Anthony, Karli Cox, Heather Molzen, Brenda Ferro, Rachel Swaykos, Katharina Fleming, Timothy Harris, Gloria Salgado, Martha Palafox, Kristen Niemann, Rodney Byrd, and Angela Duffy (collectively, the "County Defendants").

The third group comprises persons associated with the Regents of the University of California: Shalon Nienow, Andrew Skalsky, Willough Jenkins, Tamara Maginot, Susan Biffl, and Ekta Patel (collectively, the "Regents Defendants").[1]

## B.    Plaintiff's Allegations

Plaintiff's FAC alleges as follows.

### 1.    Plaintiff's Diagnosis and Treatment

On February 2017, Plaintiff was diagnosed with Ehlers-Danlos syndrome, Hypermobile type. FAC ¶ 86. Between 2017 to 2018, Plaintiff was treated by multiple physicians at different hospitals, including at Rady's. *Id.* ¶¶ 87–103.

### 2.    First Hotline Referral and Investigation

On December 13, 2018, the County received a hotline referral from a third party alleging Plaintiff's mother was abusing her. *Id.* ¶¶ 106–107. Defendant Valenzuela was assigned to investigate. *Id.* ¶ 107. During her investigation, Valenzuela interviewed the

---

[1]    There is a dispute as to the exact nature of the relationship between Rady's and the Regents Defendants. *See* ECF No. 251 at 18.

reporting party,[2] Plaintiff, Plaintiff's parents, and one of Plaintiff's physicians. *Id.* ¶¶ 108–111.

On December 20, 2018, Valenzuela "enlisted" the assistance of defendant Nienow, a member of Rady's Child Protection Team,[3] to "drum up evidence of abuse." *Id.* ¶¶ 32, 112. On January 8, 2019, based upon a review of limited medical records, Dr. Nienow told Valenzuela that Plaintiff was "malingering and lying about some of her symptoms." *Id.* ¶ 118. A few days later, on January 11, 2019, Dr. Nienow provided Valenzuela with a Paper Consult. *Id.* ¶ 118. In the Paper Consult, Dr. Nienow misstated the contents of Plaintiff's medical records to support a hypothesis Plaintiff was malingering and being enabled by her parents. *Id.* ¶ 119. As one example, the Paper Consult falsely reported Plaintiff's parents had pushed for Plaintiff to undergo invasive procedures and to be given intravenous pain medications against recommendations. *Id.* ¶ 120.

Between January 8 and January 23, 2019, Valenzuela spoke with several of Plaintiff's other physicians who did not express concerns regarding Plaintiff's parents. *Id.* ¶¶ 122–27. On January 23, 2019, Valenzuela closed her investigation as inconclusive. *Id.* ¶ 131. She notified Plaintiff's parents of the closure on February 15, 2019. *Id.*

### 3.    Surveillance of Plaintiff and her Parents

Between January 23 and January 29, 2019, Dr. Nienow and defendant Reese, another member of Rady's Child Protection Team, met multiple times to discuss how to best "develop evidence" that Plaintiff was faking her symptoms so that Valenzuela would have evidence to support an application for a juvenile court to remove Plaintiff from her parents'

---

[2]    According to Plaintiff, the reporting party's identity is currently redacted from the records Plaintiff possesses. FAC fn.17.

[3]    Rady's Child Protection Team is a "multidisciplinary team of individuals who provide a centralized, coordinated, and comprehensive multidisciplinary response to child abuse allegations and investigations, serving as a liaison between the medical professionals and the County investigators, participating in multidisciplinary team meetings, and making recommendations related to child abuse and/or neglect investigations." FAC ¶ 26.

care. *Id.* ¶¶ 30, 132. Dr. Nienow, Reese, and Valenzuela agreed on a plan to covertly record Plaintiff and her parents while at Rady's. *Id.* ¶¶ 132–36. Valenzuela consulted with her supervisor, defendant Craft, who approved and authorized the proposed surveillance plan. *Id.* ¶¶ 136–37.

On January 29, 2019, Plaintiff was readmitted to Rady's and placed in a room equipped with two cameras. *Id.* ¶¶ 138–39. From January 29 to March 7, 2019, Plaintiff and her family were covertly recorded twenty-four hours a day, seven days a week for a period of approximately 38 days. *Id.* ¶¶ 139–40, 242. No warrant, court order, or consent was obtained authorizing this surveillance. *Id.* ¶ 137. Plaintiff did not discover she had been recorded until May 2019. *Id.* ¶ 138.

### 4. Second Hotline Referral and Investigation

On January 31, 2019, defendant Reese, guided by Dr. Nienow, called the County's child abuse hotline claiming Plaintiff's parents had Munchausen by Proxy,[4] that Plaintiff was falsely claiming she was having seizures and was blind, and that Plaintiff could dislocate her own arms on purpose. *Id.* ¶¶ 146–47.

Valenzuela was assigned to investigate this second referral. *Id.* ¶ 148. Between February 4 and March 7, 2019, Valenzuela, Craft, Dr. Nienow, and Reese communicated multiple times on how to obtain a juvenile court order removing Plaintiff from her parents' care. *Id.* ¶ 162. To this end, on February 12, 2019, Dr. Nienow prepared a Record Review Update that stated, among other things, that Plaintiff's parents were guilty of "medical child abuse" and that separation from her parents was essential to preserve Plaintiff's life. *Id.* ¶¶ 167, 174.

On March 6, 2019, Dr. Nienow provided another report to Valenzuela stating, among other things, that to prevent Plaintiff from dying, it was imperative that Plaintiff's parents

---

[4]    "Munchausen by proxy is a form of child abuse in which a parent induces real or apparent symptoms of a disease in a child." *B.S. v. Somerset Cty.*, 704 F.3d 250, 254 n.3 (3d Cir. 2013) (internal quotation marks omitted).

be removed from Rady's. *Id.* ¶¶ 176–77. The report further stated Plaintiff's parents had pushed for Plaintiff to undergo numerous, invasive, and potentially dangerous procedures. *Id.* ¶ 177. At this point, Dr. Nienow and Reese had already reviewed the videos taken of Plaintiff and her family and found nothing to support Dr. Nienow's conclusions. *Id.* ¶ 178.

### 5.    First Juvenile Court Petition

On March 7, 2019, Valenzuela filed a dependency petition, protective custody warrant, and detention report with the juvenile court. *Id.* ¶¶ 182–199. The documents contained several false statements, including that the Plaintiff had been diagnosed with disorders requiring mental health treatment, which her parents refused to acknowledge, and that they were subjecting her to harmful and unnecessary medical procedures. *Id.* The documents also omitted various pieces of exculpatory information. *Id.*

On the same day, the juvenile court issued a warrant and Plaintiff's father was removed from Rady's. *Id.* ¶¶ 200–203. Plaintiff's father was given papers indicating there would be a juvenile court hearing the next morning to determine whether Plaintiff would continue to be kept from her parents' care. *Id.* ¶ 202.

### 6.    Juvenile Court Detention Hearing

On March 8, 2019, the juvenile court held a detention hearing and determined a *prima facie* showing had been made that Plaintiff had been abused, that continued parental custody was contrary to Plaintiff's welfare, and that there were no less intrusive means to protect her. *Id.* ¶ 204. Based on these findings, the court ordered that Plaintiff's care be vested with the County. *Id.* ¶ 205. The detention hearing was then continued to March 11, 2019. *Id.* ¶ 207.

Prior to the continued hearing, Valenzuela and Craft prepared a short addendum report falsely claiming Plaintiff's parents were attempting to transfer Plaintiff to a different hospital to circumvent the juvenile court's order. *Id.* ¶ 209. At the March 11, 2019 hearing, the court accepted the addendum report into evidence and found the continued separation of Plaintiff from her parents was appropriate, but allowed Plaintiff's parents supervised visits once a week with a monitor selected by the County's Health and Human Services

Agency ("HHSA"). *Id.* ¶¶ 210, 212. The juvenile court also ordered that a medical plan that Dr. Nienow put forward be implemented. *Id.* ¶ 210. Any deviation from this plan would require further notice to Plaintiff's parents, an opportunity for them to be heard, and further court orders. *Id.*

### 7.   *Transfer of Plaintiff's Dependency Case*

On or about March 15, 2019, Valenzuela transferred Plaintiff's dependency case to defendant Paugh and Paugh's supervisor, defendant Snyder. *Id.* ¶¶ 65, 213–14. In assuming responsibility, Paugh, and Snyder both reviewed the complete Contact Notes/Delivered Services Logs for the case. *Id.* ¶ 214.[5]

On March 28, 2019, Paugh and Snyder drafted and signed a Jurisdiction/Disposition Report to the juvenile court that was filed a few days later. *Id.* ¶¶ 221, 225. Although Paugh and Snyder were aware of exculpatory information that had not been previously disclosed from their review of the Contact Notes/Delivered Service Logs, they did not include this information in their report. *Id.* ¶ 223. Instead, Paugh "embellished the accusations" against Plaintiff's parents further. *Id.* ¶¶ 65, 224. On April 2, 2019, the juvenile court held another hearing, accepted the Jurisdiction/Disposition Report into evidence, and detained Plaintiff from her parents for an additional ten months. *Id.* ¶ 226.

### 8.   *Additional Medical Procedures*

Around April 2019, Plaintiff began having difficulties swallowing and was unable to eat consistently. *Id.* ¶ 238. Dr. Nienow, with Paugh and Snyder's approval, directed that an invasive swallow test be performed on Plaintiff. *Id.* Multiple representatives of Rady's also allegedly subjected Plaintiff to "intensive unwarranted and non-consensual psychological manipulation" designed to implant false memories of sexual abuse in Plaintiff's mind. *Id.* ¶ 239.

///

---

[5]      Contact Notes/Delivered Services Logs are records related to child welfare services that all County HHSA employees are trained to complete. FAC fn. 30.

### 9.    *Juvenile Court Trial*

On February 5, 2020, trial proceedings in the juvenile court concluded. *Id.* ¶ 252. The juvenile court dismissed Valenzuela's petition and released Plaintiff back into the custody of her parents. *Id.* In so doing, the juvenile court noted every medical decision made by Plaintiff's parents was done in consultation with and under the direction and supervision of Plaintiff's treating physicians who, given their own ethical obligations, would have declined to perform any unnecessary or unwarranted procedures. *Id.* The juvenile court additionally "intimated" that many of the allegations against Plaintiff's parents were not true and that the manner in which Plaintiff and her parents had been covertly recorded was an "unbelievable invasion of privacy." *Id.* ¶¶ 253, 255.

After the juvenile court proceedings, Plaintiff remained hospitalized. During this period, employees and agents of the County and Rady's continued to interfere with Plaintiff and her family without legal authority, including by limiting Plaintiff's visitation time with her parents, subjecting Plaintiff to unwarranted medical procedures without parental knowledge or Plaintiff's consent, and restricting Plaintiff and her parents' access to her medical records. *Id.* ¶¶ 258–261.

### 10.    *Suicide Attempt and Second Juvenile Court Petition*

In late February 2020, Plaintiff disclosed "externally constructed false memories of sexual abuse" by her father *Id.* ¶ 264. Plaintiff attempted to commit suicide afterwards on June 16, 2020. *Id.* ¶ 267.

On June 26, 2020, defendant Molzen filed a second petition to the juvenile court falsely alleging that Plaintiff had extensive mental health needs and anxiety regarding returning to the care of her parents. *Id.* ¶¶ 268–270. During the contested hearing on this second petition, Plaintiff's parents stipulated to the juvenile court's jurisdiction to prevent Plaintiff from being ejected from her short-term residential treatment program. *Id.* ¶¶ 272–73. On May 4, 2021, the juvenile court terminated Plaintiff's reunification with her parents. *Id.* ¶ 274.

///

## C.    Procedural Background

On February 25, 2021, Plaintiff's parents initiated an action on behalf of Plaintiff, then a minor, against the County of San Diego, the HHSA, Rady's, the Regents of the University of California, and individuals associated with these entities. *Meyer et al. v. County of San Diego, et al.*, 21cv341 ("*Meyer I*"). On August 29, 2023, Plaintiff, now a legal adult, initiated a separate action against Defendants in California Superior Court. *Meyer v. County of San Diego,* 24cv438 ("*Meyer II*"), ECF No. 1 at 5–115. On March 6, 2024, Defendants removed Plaintiff's action to this Court based on federal question jurisdiction. *Id.* at 3. On April 24, 2024, the Court granted Defendants' motion to consolidate the *Meyer I* and *Meyer II* cases. *Meyer II*, ECF No. 14 at 6.[6]

On June 3, 2024, Plaintiff filed her FAC in the Consolidated Action. *Meyer I*, ECF No. 235.[7] Plaintiff's FAC asserts various federal civil rights claims under 42 U.S.C. § 1983 against the individual Defendants and against the County and Rady's under *Monell*. FAC ¶¶ 277–329, 349–456. In addition, Plaintiff asserts a claim for disability discrimination under the Americans with Disabilities Act ("ADA") and Vocational Rehabilitation Act ("Rehabilitation Act") and state law claims for violation of California's Unruh Civil Rights Act, violation of California Health and Safety Code §§ 123110 and 123120, and violation

---

[6]    Both the *Meyer I* and *Meyer II* cases arise from the same set of facts: the surveillance of Plaintiff and her family during at Rady's and evidence subsequently presented to the juvenile court.

[7]    Although the cases are consolidated, the claims brought by Plaintiff's parents are still governed by their own complaint. *See Hall v. Hall*, 584 U.S. 59, 70 (2018) ("[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.") (internal quotation marks omitted); *Schnall v. Proshares Tr.*, No. 09 CIV. 6935 (JGK), 2010 WL 1962940, at *2 (S.D.N.Y. May 17, 2010) ("Consolidation means that the litigation will be consolidated, not that [plaintiffs] will lose their individual claims.").

of Article I, § 1 of the California Constitution. *Id.* ¶¶ 330–48; 457–76.[8]

## II.    LEGAL STANDARD

### A.    Lack of Subject Matter Jurisdiction under Rule 12(b)(1)

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks omitted). Accordingly, it is "presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). A party may seek dismissal of a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1).

### B.    Failure to State a Claim under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The plausibility review is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Pleading facts

---

[8]    On December 30, 2024, Defendants filed a Notice of Supplemental Authority in support of their Motion. ECF No. 262. Plaintiff subsequently filed a Response. ECF No. 263. The Court rejects Defendants' Notice as being non-compliant with Civil Chamber Rules III.E. *See* Civil Chamber Rules III.E ("[N]otices of supplemental authority may not be filed unless leave of court has been granted. The only exception to this requirement is if there is a change in binding intervening law that is directly on point issued after the filing.").

"'merely consistent with' a defendant's liability" falls short of a plausible entitlement to relief. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

### C.    Section 1983

#### 1.    Generally

"The Civil Rights Act codified in 42 U.S.C. § 1983 provides a cause of action against state officials who deprive a plaintiff of her federal constitutional rights." *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023). "Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." *Id.* at 934. "[T]he statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff." *Kiger v. Johnson*, No. 223CV1263KJMDBP, 2024 WL 345978, at *2 (E.D. Cal. Jan. 30, 2024).

#### 2.    Monell

Municipal entities "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipal entity can be held liable only if a "policy or custom" of the municipality "inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that

the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

In the motion to dismiss context, the Ninth Circuit has made clear claims of *Monell* liability must comply with the basic principles set forth in *Twombly* and *Iqbal*. *AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012); *see e.g., Alter v. Cty. of San Diego*, 635 F. Supp. 3d 1048, 1055 (S.D. Cal. 2022). First, a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE*, 666 F.3d at 637. Second, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

### 3. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818, (1982)). The doctrine "is more than a 'mere defense to liability,'" but is "a complete *immunity from suit*" which is "effectively lost if a case is erroneously permitted to go to trial." *Mueller v. Auker*, 576 F.3d 979, 987 (9th Cir. 2009) (emphasis in original).

To determine whether government officials are entitled to qualified immunity, courts conduct a two-step inquiry. First, courts consider "whether the facts that a plaintiff has alleged make out a violation of a constitutional right[.]" *Martinez v. City of Clovis*, 943 F.3d 1260, 1270 (9th Cir. 2019). Second, courts consider "whether that right was clearly established at the time of the incident." *Id.* "Once Defendant has invoked the protective mantle of qualified immunity, it is Plaintiff's burden to cast it aside by showing the

infringed upon constitutional right was clearly established." *G.L. by & through Greene v. Catanio*, No. 222CV01686JAMJDP, 2023 WL 3076978, at *2 (E.D. Cal. Apr. 25, 2023); *see Gordon v. Cty. of Orange*, 6 F.4th 961, 969 (9th Cir. 2021) ("[T]he plaintiff bears the burden of showing that the rights allegedly violated were clearly established.") (internal quotation marks omitted).

"Determining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). As the Ninth Circuit has explained:

> On the one hand, we may not dismiss a complaint making a claim to relief that is plausible on its face. But on the other hand, defendants are entitled to qualified immunity so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known . . . .
>
> Balancing these competing rules, when a district court dismisses a complaint for failure to state a claim based on a qualified immunity defense, we consider whether the complaint alleges sufficient facts, taken as true, to support the claim that the officials' conduct violated clearly established constitutional rights of which a reasonable officer would be aware in light of the specific context of the case. If the operative complaint contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right, then plaintiffs are entitled to go forward with their claims.

*Id.* at 1235 (internal quotation marks and citations omitted).

## III.    ANALYSIS

### A.    Individual Section 1983 Claims (Claims 1-5)

The FAC asserts five federal civil rights claims under 42 U.S.C. § 1983 against the County and various individual defendants. Defendants move to dismiss all five claims.

///

///

///

1                 *1.    Personal Participation*

2                 *a.    Failure to Allege Involvement*

3      Defendants first contend Plaintiff fails to state a § 1983 against the majority of the

4  defendants named in this action because Plaintiff does not adequately allege how these

5  defendants personally participated in the deprivation of Plaintiff's constitutional rights.

6  ECF Nos. 242-1 at 17–21; 253 at 10–11. In response, Plaintiff argues personal participation

7  is not the only predicate for section 1983 liability, citing the Ninth Circuit's decision in

8  *Johnson v. Duffy*, 588 F.2d 740 (9th Cir. 1978). ECF No. 251 at 15.

9      Plaintiff's argument misses the mark. In *Johnson*, the Ninth Circuit held that

10  "[a]nyone who 'causes' any citizen to be subjected to a constitutional deprivation" may

11  also be held liable under section 1983. *Johnson*, 588 F.2d at 743. As such, "[t]he requisite

12  causal connection" in a section 1983 claim "can be established not only by some kind of

13  direct personal participation in the deprivation, but also by setting in motion a series of acts

14  by others which the actor knows or reasonably should know would cause others to inflict

15  the constitutional injury." *Id.* at 743–44. Nevertheless, even absent personal participation,

16  a plaintiff must still plead "a sufficient causal connection between [a defendant]'s wrongful

17  conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.

18  1989).

19      Here, Plaintiff's FAC references defendants Jason Anthony, Brenda Ferro, Rachel

20  Swaykos, Katharina Fleming, Gloria Salgado, Martha Palafox, Rodney Byrd, Melissa

21  Lambing, Emily Holland, Rebecca Bukolt (Harvard), Daisy Dorantes, Jessica Robershaw,

22  and Gail Knight only once in a section entitled "The Parties," but then does not reference

23  any of these Defendants again. Similarly, defendant Kristen Niemann is named in the

24  caption of the FAC only. The FAC does not adequately allege how these Defendants were

25  involved *at all* in the deprivation of Plaintiff's constitutional rights. This is insufficient to

26  survive a motion to dismiss. *See Iqbal*, 556 U.S. 676 ("Because vicarious liability is

27  inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-

28  official defendant, through the official's own individual actions, has violated the

Constitution."); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."); *see also S.M. by & through J.R. v. San Jose Unified Sch. Dist.*, No. 14-CV-03613-LHK, 2015 WL 1737535, at *7 (N.D. Cal. Apr. 13, 2015) ("[A]ny amended complaint Plaintiff elects to file should also specify how each individual defendant was personally involved in violating Plaintiff's constitutional rights.").

For these reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's § 1983 claims against defendants Anthony, Ferro, Swaykos, Fleming, Salgado, Palafox, Byrd, Niemann, Lambing, Holland, Bukolt (Harvard), Dorantes, Robershaw, and Knight.

### b.  *Impermissible Grouping*

Defendants next move to dismiss Plaintiff's § 1983 claims against: (1) the majority of the County Defendants; (2) Rady Defendants Tia Luber and Carissa Menard; and (3) Regents Defendants Susan Biffl, Andrew Skalsky, Willough Jenkins, Tamara Maginot and Ekta Patel, contending Plaintiff has improperly grouped her claims against these and other Defendants together, thereby making it "impossible to show what each one personally did." ECF Nos. 242-1 at 17–18, 21; 253 at 11.[9] Plaintiff responds the FAC sufficiently alleges a "coordinated effort" by Defendants and their agents "to isolate Plaintiff and pursue actions that violated her constitutional rights." ECF No. 251 at 16.

"It is well-settled that undifferentiated pleading against multiple defendants is improper." *Barbosa by & through Co-successors in Int. v. Shasta Cnty.*, No. 220CV02298JAMDMC, 2021 WL 1634446, at *5 (E.D. Cal. Apr. 27, 2021) (internal quotation marks omitted); *see  Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a

---

[9]    The Court focuses its analysis of this "grouping" argument on those Defendants it has not already dismissed above.

constitutional deprivation."); *see also Steinley v. Health Net, Inc.*, No. CV 18-5458 PSG (SKX), 2018 WL 6985318, at *5 (C.D. Cal. Dec. 4, 2018) ("Generally, [u]ndifferentiated pleading against multiple defendants is improper because it fails to give each defendant notice of the specific allegations and claims that pertain to it."); *Aaron v. Aguirre*, No. 06-CV-1451-H POR, 2007 WL 959083, at *16 (S.D. Cal. Mar. 8, 2007) ("[U]ndifferentiated pleading against multiple defendants is improper.").

Here, Plaintiff's FAC improperly groups its allegations against: (1) County Defendants Karlie Cox, Timothy Harris, Angela Duffy; (2) Rady Defendants Tia Luber, Carissa Menard; and (3) Regents Defendants Susan Biffl, Andrew Skalsky, Willough Jenkins, Tamara Maginot and Ekta Patel together with a group of other named and Doe defendants, consequently failing to give any of these defendants individualized notice of the specific allegations and claims that pertain to them.

For example, Plaintiff alleges "agents and representatives of Rady, including but not limited to" defendants Luber, Skalsky, Biffl, Maginot, Patel, Menard, and unidentified Doe Defendants "continued to isolate [Plaintiff] from her family" even after the first juvenile dependency petition was dismissed. FAC ¶ 73. Plaintiff alleges another group of named and unidentified Doe defendants, including defendants Maginot, Patel, Jenkins, Duffy, Cox, and Harris subjected Plaintiff to "intensive emotional and psychological manipulation." *Id.* ¶ 74. "Such general and conclusory allegations against an indistinguishable group of defendants does not demonstrate a causal link between any *individual* defendant's conduct and an alleged constitutional violation, and therefore are insufficient to state a viable Section 1983 claim against any of the defendants." *White v. Los Angeles Cnty.*, No. CV 18-1756 JAK(JC), 2018 WL 6074524, at *4 (C.D. Cal. June 8, 2018); *see Williams v. Cnty. of Los Angeles Dep't of Pub. Soc. Servs.*, No. CV 14-7625 JVS (JC), 2016 WL 8730914, at *5 (C.D. Cal. May 2, 2016), *report and recommendation adopted*, No. CV 14-7625 JVS(JC), 2016 WL 8737230 (C.D. Cal. May 20, 2016) ("Conclusory allegations that an indistinguishable group of defendants essentially engaged

in identical misconduct . . . are insufficient to show that plaintiff is entitled to relief from any *individual* defendant").

For these reasons, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's § 1983 claims against defendants Cox, Harris, Duffy, Luber, Menard, Biffl, Skalsky, Jenkins, Maginot, and Patel.

### 2. Remaining Defendants

In light of the Court's rulings above, the Court focuses the remainder of its analysis on Plaintiff's § 1983 claims against: (1) County Defendants Kayla Valenzuela, Tiffany Paugh, Tami Snyder, Catherine Craft, and Heather Molzen; (2) Rady Defendant Elizabeth Reese; and (3) Regent Defendant Shalon Nienow.

### 3. Under Color of State Law

#### a. Rady Defendants (Defendant Reese)

Defendants move to dismiss Plaintiff's § 1983 claims against the individual Rady Defendants, arguing Plaintiff has not sufficiently alleged the individual Rady Defendants were acting under the color of state law. ECF No. 242-1 at 18–20.

"Section 1983 liability attaches only to individuals 'who carry a badge of authority of a State and represent it in some capacity.'" *Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002) (quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961)). "A § 1983 plaintiff therefore must show that a defendant's actions are fairly attributable to the government." *Id*. (internal quotation marks omitted). The Ninth Circuit has "recognized at least four different general tests" to aid "in identifying state action: (1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Rawson v. Recovery Innovations*, *Inc.*, 975 F.3d 742, 747 (9th Cir. 2020) (internal quotation marks omitted). "The satisfaction of any one test is sufficient to find state action, but at bottom, the inquiry is always whether the defendant has exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Pasadena Republican Club v. W. Justice Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021) (internal quotation marks omitted).

"Private parties act under color of state law if they willfully participate in joint action with state officials to deprive others of constitutional rights." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1540 (9th Cir. 1989). "The close nexus and joint action tests may be satisfied where the court finds a sufficiently close nexus between the state and the private actor so that the action of the latter may be fairly treated as that of the State itself, or where the State has so far insinuated into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Rawson*, 975 F.3d at 748 (internal quotation marks omitted).

Here, the FAC alleges that Reese was an active member of Rady's Child Protection Team. FAC ¶ 29. According to the FAC, Rady's Child Protection Team regularly cooperates in joint actions with the County's HHSA to investigate allegations of child abuse. *Id*. At the behest of the HHSA, the team is alleged to have conducted hundreds of forensic interviews and medical examinations. *Id.* ¶ 28. The FAC alleges Reese specifically collaborated with County Defendants Valenzuela, Craft, Paugh and Snyder to investigate Plaintiff's alleged abuse at the hands of her parents. *Id.* ¶ 30. Defendant Reese allegedly then agreed on a plan with the County Defendants to: (1) covertly record Plaintiff and her parents at Rady's; and (2) fashion a narrative Plaintiff had mental health problems her parents were unwilling to acknowledge to support a juvenile dependency case to remove Plaintiff from her parents' care. *Id.* ¶¶ 30, 132–145, 162–64, 178.

At this stage of the proceedings, the Court finds Plaintiff has sufficiently alleged that defendant Reese was acting under the color of state law. *See N.L. v. Childrens Hosp. L.A.*, 711 F. App'x 433, 433 (9th Cir. 2018) (plaintiff plausibly alleged a private hospital and medical group were acting under color of state law in performing an "intrusive forensic examination" when it was "not providing medical treatment but instead was exercising its discretion to collaborate with county government in the laudable endeavor of investigating child abuse, a potential crime"); *Wright v. S. Arizona Children's Advoc. Ctr.*, No. CV-21-00257-TUC-JGZ, 2024 WL 4349422, at *6 (D. Ariz. Sept. 30, 2024) (holding physician was likely a state actor when he acted at the behest of law enforcement by performing a

21-cv-341-RSH-SBC

forensic medical examination to document evidence of child abuse); *Mueller v. Auker*, No. CV-04-399-S-BLW, 2005 WL 8159827, at *5–6 (D. Idaho Apr. 13, 2005) (holding plaintiffs adequately alleged that defendant was acting under color of state law by jointly engaging with state officials to illegally remove a minor from parental custody).

### b.    *Regents Defendants*

Defendants argue Plaintiff has mistakenly claimed the Regents Defendants are private actors employed by Rady's rather than acknowledging they are public employees. ECF No. 242-1 at 21. Plaintiff responds that whether Rady's employs the Regents Defendants is irrelevant at this stage of the proceedings as ambiguities regarding the relationship between Rady's and the Regents Defendants can be resolved through discovery. ECF No. 251 at 18.

At this stage of the proceedings, the Court declines to rule on whether Plaintiff or Defendant's characterization of the Regents Defendants is more accurate. Defendants have not explained how a ruling in their favor would change the posture of this case. Even assuming Defendants are correct and the Regents Defendants are public employees of the Regents of the University of California, they would still be public employees subject to suit under § 1983 in their individual capacities. *See Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997) (holding that the University of California "is an arm of the State of California"); *Armstrong v. Meyers*, 964 F.2d 948, 949 (9th Cir. 1992) ("[T]he Regents, a corporation created by the California constitution, is an arm of the state[.]"). The Parties may re-raise this issue if discovery later demonstrates Defendants are incorrect and the Regents Defendants are in fact private actors employed by Rady's.

### 4.    *Covert Surveillance (Claim 1)*

In Claim 1 of her FAC, Plaintiff alleges defendants Nienow, Reese, Craft, Valenzuela, Snyder and various Doe defendants violated her clearly established constitutional right to privacy under the First, Fourth, and Fourteenth Amendments by covertly recording her and her family in her room at Rady's. FAC ¶¶ 277–290. Defendants move to dismiss this claim, arguing Plaintiff has not adequately alleged she had a clearly

established reasonable expectation of privacy in her private hospital room. ECF Nos. 242-1 at 30–32; 253 at 8–9.

The Court previously held Plaintiff's parents had pleaded sufficient facts to demonstrate that they had a reasonable expectation not to be subject to continuous video surveillance in Plaintiff's hospital room. ECF No. 95 at 15–19. The Court now holds Plaintiff has also plausibly pleaded a reasonable expectation of privacy for similar reasons.

### a.    Fourth Amendment Right to Privacy

The Fourth Amendment, as incorporated against the states through the Fourteenth Amendment, provides that the government shall not violate "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The threshold inquiry in any Fourth Amendment analysis is whether the government's conduct is included in the Amendment's coverage, in other words, whether it amounts to a 'search' for constitutional purposes." *United States v. Gonzalez*, 328 F.3d 543, 546 (9th Cir. 2003). "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *Kyllo v. United States*, 533 U.S. 27, 33 (2001).

As such, "[a] person's 'capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.'" *Gonzalez*, 328 F.3d at 547 (quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)). "To establish a 'legitimate' expectation of privacy" plaintiff must demonstrate: (1) she had a subjective expectation that her activities would be private; and (2) that her expectation was "one that society is prepared to recognize as reasonable." *United States v. Nerber*, 222 F.3d 597, 599 (9th Cir. 2000) (internal quotation marks omitted).

### b.    Subjective Expectation of Privacy

The first question the Court must address is whether Plaintiff, by her conduct, "has 'exhibited an actual (subjective) expectation of privacy.'" *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (quoting *Katz v. United States*, 389 U.S. 347, 361 (1967)). In other words,

the Court asks whether Plaintiff "has shown that [she] seeks to preserve [something] as private.'" *Id.* (internal quotation marks omitted); *see Trujillo v. City of Ontario*, 428 F. Supp. 2d at 1102 ("One has a subjective expectation of privacy if one has taken efforts to preserve something as private.").

Here, the FAC alleges Plaintiff considered her private hospital room the "only sanctuary where the family could spend meaningful time together." FAC ¶ 282. Plaintiff and her family therefore "took measures that significantly limited the number of people who could observe their private activities." *Trujillo*, 428 F. Supp. 2d at 1102. The door to Plaintiff's room was kept closed by her parents most of the time they were present. *Id.* ¶ 281. Although the room had windows facing the hallway outside, there was a curtain which Plaintiff's parents also kept closed. *Id.* ¶ 280. With the curtain drawn and the door closed, the interior of the room was not visible from the hallway or from the nurse's station outside. *Id.* These allegations are sufficient to allege Plaintiff exhibited a subjective expectation not to be filmed in her hospital room. *See Nerber*, 222 F.3d at 603 (trial court did not err in holding defendants had a subjective expectation not to be videotaped in their hotel room where they closed the door, drew the blinds, and acted in manner "they clearly would not have done had they thought outsiders might see them"); *Trujillo*, 428 F. Supp. 2d at 1102 (holding plaintiff had adequately alleged a subjective privacy expectation to be free from covert video surveillance in a locker room).

### c.    Objectively Reasonable Expectation of Privacy

The Court next considers whether Plaintiff's expectation of privacy was objectively reasonable. There is "no talisman that determines in all cases those privacy expectations that society is prepared to accept as reasonable." *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987). Instead, in considering whether a plaintiff's expectation of privacy is reasonable, a court may consider factors such as: "(1) the nature of the search, (2) where the search takes place, (3) the person's use of the place, (4) our societal understanding that certain places deserve more protections than others, and (5) the severity of the search." *Trujillo*, 428 F. Supp. 2d at 1103.

21-cv-341-RSH-SBC

Here, Defendants contend Plaintiff has not adequately alleged a reasonable expectation of privacy in her hospital room when the "entire purpose" of her admission was "to undergo medical treatment." ECF No. 242-1 at 31. As such, Defendants contend Plaintiff must have known that at any time any number of persons could "enter" the room in accordance with her medical needs. *Id.*

The Ninth Circuit has recognized that:

> Public hospitals, by their nature, are institutions not only accessible to the community, but places in which the needs of security and treatment create a diminished expectation of privacy. The use of surveillance cameras in hospitals for patient protection, for documentation of medical procedures and to prevent theft of prescription drugs is not uncommon.

*Gonzalez*, 328 F.3d at 547.

Even so, here, the *nature* of the intrusion on Plaintiff's privacy is important. The Ninth Circuit's decisions in *Taketa* and *Nerber* are instructive. In *Taketa*, the Ninth Circuit held that the covert video surveillance of an employee in his co-worker's office violated the Fourth Amendment, noting individuals "may create temporary zones of privacy within which they may not reasonably be videotaped . . . even when that zone is a place they do not own or normally control, and in which they might not be able reasonably to challenge a search at some other time or by some other means." 923 F.2d at 677. Similarly, in *Nerber*, the Ninth Circuit held individuals have an reasonable expectation to be free from hidden video surveillance when they are alone in another person's hotel room, noting that "even if one cannot expect total privacy while alone in another person's hotel room (i.e., a maid might enter, someone might peek through a window, or the host might reenter unannounced), this diminished privacy interest does not eliminate society's expectation to be protected from the severe intrusion of having the government monitor private activities through hidden video cameras." 222 F.3d at 604; *see also Bernhard v. City of Ontario*, 270 F. App'x 518, 519 (9th Cir. 2008) ("[C]ommon sense dictates that reasonable persons, including police officers, do not expect to be secretly videotaped by other police officers

while changing clothes in their workplace locker rooms."); *Trujillo*, 428 F. Supp. 2d at 1104 ("Plaintiffs aptly concede that minimal intrusions are likely to occur [in a locker room] and that they have no reasonable expectation of privacy from those intrusions. This does not diminish the reasonableness of a person's expectation to be free from covert video surveillance"); *see also United States v. Cuevas-Sanchez*, 821 F.2d 248, 251 (5th Cir. 1987) (defendant's expectation to be free from video surveillance in his backyard "is one that society is willing to recognize as reasonable").

Similarly, here, while Plaintiff may not have expected to be free from medical personnel entering her hospital room at certain times, when necessary, this does not diminish Plaintiff's objectively reasonable expectation she would not be subject to constant hidden video surveillance in the same room. For these reasons, the Court concludes Plaintiff has pleaded sufficient facts to show she had a reasonable expectation of privacy from being covertly videotaped in her Rady's hospital room.

### d. Qualified Immunity

Defendants lastly contend Claim 1 of Plaintiff's FAC should be dismissed, because Plaintiff has not established that her right to be free from video surveillance in her hospital room was clearly established. ECF No. 242-1 at 32. In response, Plaintiff relies on the Court's prior March 16, 2023 Order which rejected a similar qualified immunity argument. ECF No. 95 at 20–23.

The Court stands by its earlier decision. Multiple Ninth Circuit decisions have held that video recording individuals without a warrant constitutes a violation of the Fourth Amendment in similar locations to the private hospital room at issue here. *See Nerber*, 222 F.3d at 605 (holding the warrantless video surveillance of individuals alone in a hotel room violates the Fourth Amendment); *Taketa*, 923 F.2d at 678 (holding the warrantless video surveillance of an office violates the Fourth Amendment); *see also Bernhard*, 270 F. App'x at 520 ("[S]everal courts, from this Circuit and elsewhere, had recognized prior to 1996 that secret video surveillance is especially intrusive on the privacy interests protected by the Fourth Amendment.").

While Defendants cite several cases to argue Plaintiff's right to be free from video surveillance in her hospital room was not clearly established, these decisions are not factually analogous and therefore are not persuasive. *See O'Connor*, 480 U.S.at 715 ("The reasonableness of an expectation of privacy . . . differ[s] according to context."). Nor are the majority of these cases binding. Indeed, the only binding authority Defendants cite is the Ninth Circuit's *Gonzalez* decision. ECF No. 242-1 at 30. *Gonzalez* held a defendant did not have a reasonable expectation of privacy from video surveillance in a large, quasi-public mailroom in a public hospital. 328 F.3d at 547–48. The surveillance in *Gonzalez* is easily distinguished from that at issue here.[10]

For these reasons, the Court **DENIES** Defendants' motion to dismiss Claim 1, as to defendants Nienow, Reese, Craft, Valenzuela, and Snyder.[11]

### 5.    *Judicial Deception (Claim 2)*

In Claim 2 of her FAC, Plaintiff alleges the individual Defendants violated her "clearly established" right to familial association under the Fourteenth Amendment by presenting deceptive evidence to the juvenile court. FAC at ¶¶ 291–301. Defendants move to dismiss this claim, arguing: (1) Plaintiff's claim against the individual Rady and Regents Defendants lack any factual support; and (2) Plaintiff's claim against the County Defendants is precluded under the doctrine of qualified immunity. ECF No. 242-1 at 35–39.

---

[10]    This Order should not be interpreted as foreclosing qualified immunity as a defense to any of Plaintiff's claims. Whether the alleged unlawful conduct in this case, in fact, infringes on a clearly established right is a question that requires a more fully developed record. *See Keates*, 883 F.3d at 1234 ("But our decision at the motion-to-dismiss stage sheds little light on whether the government actors might ultimately be entitled to qualified immunity were the case permitted to proceed, at least to the summary judgment stage and the court is presented with facts providing context for the challenged actions.") (internal quotation marks omitted).

[11]    The Court takes no position on whether Plaintiffs have alleged a viable claim for violation of the First Amendment's right to privacy. Defendants have not moved to dismiss on this basis and the Court declines to *sua sponte* take up this question.

### a.    Generally

"Parents and children have a well-elaborated constitutional right to live together without governmental interference. That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency." *Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1116 (9th Cir. 2017). "[A]s part of the right to familial association, parents and children have a right to be free from judicial deception in child custody proceedings and removal orders." *David v. Kaulukukui*, 38 F.4th 792, 800 (9th Cir. 2022) (internal quotation marks omitted). To state a plausible claim for judicial deception, a plaintiff must allege: "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1147 (9th Cir. 2021).

### b.    Rady Defendant Reese

Defendants move to dismiss Claim 2 against defendant Reese, contending Plaintiff has not pleaded sufficient facts to set forth a plausible judicial deception claim against her. ECF No. 242-1 at 36–37.

At the outset, the Court notes that in its prior March 16, 2023 Order, it held a judicial deception claim had been plausibly pleaded against Reese in light of allegations she had deliberately made false statements through the County's child abuse hotline that were then used by the County Defendants to obtain a juvenile court order removing Plaintiff from her parents' care. ECF No. 95 at 25. The FAC makes identical allegations here. FAC ¶¶ 146–47. Specifically, the FAC alleges defendant Reese, under Dr. Nienow's direction, contacted the County's child abuse hotline on January 31, 2019 and reported that: (1) Plaintiff's parents suffered from Munchausen by Proxy; (2) Plaintiff was falsely reporting seizures and blindness; and (3) Plaintiff was intentionally dislocating her own arms. *Id.*

Defendants contend these allegations are insufficient to state a plausible claim for judicial deception because: (1) Plaintiff has failed to allege sufficient facts to demonstrate Reese knew the statements she was making at the January 31, 2019 report were false; and

(2) Reese's January 31, 2019 report was the basis for Valenzuela's investigation, not the basis for the juvenile court's decision. ECF No. 242-1 at 37.

The Court disagrees. Here, the FAC identifies the specific misrepresentations Reese allegedly made in her hotline call and states why Reese would or should have known these statements were false. *Id.* ¶ 147. Taking the allegations in Plaintiff's FAC as true and construing all inferences in Plaintiff's favor, the FAC sets forth a plausible claim Reese reported false information to the County's child abuse hotline either deliberately or at least with reckless disregard for the truth despite evidence to the contrary (such as Plaintiff's medical records). *See Kastis v. Alvarado*, No. 118CV01325DADBAM, 2020 WL 2468389, at *4 (E.D. Cal. May 13, 2020) (holding a plausible judicial deception claim was made where plaintiff specified which statements defendant made were false and why these statements were false); *Sigal v. Cnty. of Los Angeles*, No. 217CV04851RGKAGR, 2017 WL 10560532, at *8 (C.D. Cal. Aug. 28, 2017) (holding a plausible judicial deception claim was made where plaintiff alleged "specific omissions and misrepresentations" contained in a warrant application and that defendant deliberately misrepresented the facts in the application).

The Court further understands Plaintiff to be asserting a judicial deception claim based on the theory that defendant Reese made specific misrepresentations knowing they would be submitted and relied upon by the juvenile court. This theory is plausible at the pleadings stage. *See Williams v. Cnty. of Monterey*, No. 19-CV-01811-BLF, 2021 WL 1966711, at *5 (N.D. Cal. May 17, 2021) (holding plaintiff had made a plausible claim for judicial deception even where defendants did not submit documents directly to the juvenile dependency court but instead made material misstatements and omissions in their logs knowing these logs would be relied on in drafting a petition to the court).[12]

///

---

[12]    The Court takes no position as to whether Plaintiff will ultimately be able to prove a claim of judicial deception against defendant Reese.

### c. *Regent Defendant Nienow*

Plaintiff moves to dismiss Claim 2 against Defendant Nienow, contending Plaintiff has failed to allege any statements Dr. Nienow made was false or made with reckless disregard for the truth. ECF No. 242-1 at 37. The Court does not agree. The FAC is replete with allegations of specific misrepresentations Dr. Nienow purportedly made and states why Dr. Nienow knew or should have known these representations were false. *See e.g.*, FAC ¶¶ 119–21, 170–74, 176–79, 208, 250. Again, taking the allegations in Plaintiff's FAC as true and construing all inferences in Plaintiff's favor, the FAC sets forth a plausible claim Dr. Nienow prepared reports with false information either deliberately or at least with reckless disregard for the truth that were material to the juvenile court's decisions.

### d. *Qualified Immunity*

Defendants lastly contend Claim 2 of Plaintiff's FAC should be dismissed against the County Defendants, because this claim is precluded by the doctrine of qualified immunity. ECF No. 242-1 at 38–39. Specifically, Defendants contend Plaintiff has not identified any precedent "where a social worker was held to have violated the Fourteenth Amendment by seeking a protective custody warrant on assessments of multiple medical professionals who warned of life-threatening consequences to a hospitalized child if her parents were not removed from her bedside." *Id.*

The Court is not persuaded. Centrally, Defendants' argument relies on its own characterization of the facts. In considering Defendants' motion to dismiss, however, the Court takes all allegations of fact in the FAC as true and construes them in the light most favorable to Plaintiff, the nonmoving party. *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023). Here, the FAC alleges defendant Valenzuela submitted a fraudulent juvenile dependency petition to remove Plaintiff from her parents' care with defendant Craft's approval. The petition is alleged to have contained "a series of lies and half truths" and to have suppressed "known exculpatory information." FAC ¶¶ 62, 64, 182–199. When defendants Paugh and Snyder took over the management of Plaintiff's juvenile dependency case, they then allegedly filed a report to the juvenile court that "embellished the

accusations" against Plaintiff's parents further. *Id.* ¶¶ 65, 213–25. Finally, defendant Molzen is alleged to have filed a second petition to the juvenile court that falsely alleged Plaintiff had extensive mental health needs and anxiety regarding returning to the care of her parents. *Id.* ¶¶ 268–270.

As alleged in the FAC, a government official would have been on notice, based on prior law, that providing incomplete or false information to a juvenile court to separate a minor from her parents would constitute judicial deception. *See Rieman v. Vazquez*, 96 F.4th 1085, 1093 (9th Cir. 2024) ("An individual has a well-established constitutional right to be free from deception in the presentation of evidence during juvenile dependency proceedings."); *David v. Kaulukukui*, 38 F.4th 792, 801 (9th Cir. 2022) ("[T]he right to be free from judicial deception in matters of child custody is beyond debate.") (internal quotation marks omitted); *Hardwick*, 844 F.3d at 1119 ("There are no circumstances in a dependency proceeding that would permit government officials to bear false witness against a parent.").[13]

For these reasons, the Court **DENIES** Defendants' motion to dismiss Claim 1, as to defendants Nienow, Reese, Valenzuela, Paugh, Snyder, Craft and Molzen.

///

---

[13]     Defendants cite the Supreme Court's decisions in *Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021) and *City of Tahlequah v. Bond*, 595 U.S. 9 (2021) to argue Plaintiff must identify controlling precedent that addresses facts sufficiently similar to the ones at issue here. ECF No. 242-1 at 38. In both cases, the Supreme Court reversed two federal courts of appeals, holding that police officer defendants were entitled to qualified immunity in excessive force cases given the absence of sufficiently similar precedent. *See Rivas-Villegas*, 595 U.S. at 6; *City of Tahlequah*, 595 U.S. at 13–14. As the Ninth Circuit more recently set forth in *Rieman*, however, "[w]hile it is true that specificity in past decisional law is especially important in the Fourth Amendment context where law enforcement officers often have to make quick decisions with significant consequences, that principle more appropriately applies in excessive force cases arising under the Fourth Amendment." 96 F.4th at 1095. Further, as noted above, there is controlling precedent that would have put Defendants on notice as to the unconstitutionality of their actions as alleged in the FAC.

6.    *Nonconsensual Medical Procedures (Claim 3)*

In Claim 3 of her FAC, Plaintiff alleges the individual Defendants violated her constitutional right to remain free of unwarranted, nonconsensual medical procedures by subjecting her to medical procedures without a court order or the knowledge and consent of her parents. FAC ¶¶ 66, 302–312. Specifically, Plaintiff alleges three categories of medical procedures were performed on her without consent or court approval: (1) the covert video surveillance of Plaintiff, to the extent this was done for diagnostic purposes; (2) a "Swallow Study, KUB, Echo cardiogram, Kidney and Bladder studies, Renal Function Panel, Plasma Renin, ACT, QCT for Body's regulation of BP," and "Surgical Consult for continued drainage of post Jejunostomy tube removal"; and (3) "mental, emotional, and psychological manipulation . . . focused on implanting false memories of sexual abuse." *Id.* The Court addresses each of these categories below.

a.    *Generally*

"The right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis ex rel. Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 1999). "Children removed from their parents' custody have a legitimate expectation of privacy in not being subjected to medical examinations without their parents' notice and consent." *Mann v. Cty. of San Diego*, 907 F.3d 1154, 1165 (9th Cir. 2018). State officials are therefore required to "(1) notify the parents of a medical examination of their children; (2) obtain parental consent or a court order in advance of the medical examination; and (3) permit the parent to be present at the examination." *Benavidez*, 993 F.3d at 1150.

b.    *Video Surveillance*

Plaintiff first alleges that "to the extent" Defendants assert the covert video surveillance of her private room was done for "diagnostic purposes," Defendants have violated her Fourth Amendment rights. FAC ¶ 304. Defendants move to dismiss Plaintiff's claim contending: (1) Plaintiff has not alleged any of the individual Rady Defendants were involved in this videorecording; (2) Plaintiff has not explained or provided any legal

28

authority as to how covert video surveillance is a "physical examination" or "medical procedure"; and (3) Plaintiff's claim is foreclosed under the doctrine of qualified immunity. ECF Nos. 242-1 at 32–34; 253 at 11.

The Court agrees Plaintiff has not explained how she has alleged a claim for a violation of her right not to be subject to a nonconsensual medical examination. As Defendants note, Plaintiff has not explained or provided legal authority as to how video surveillance amounts to a "medical procedure." In addition, in her FAC, Plaintiff alleges she makes this claim against Defendants' alleged video surveillance "only to the extent" Defendants argue it was undertaken for "diagnostic purposes." FAC ¶ 304. Yet Defendants have stated this surveillance was undertaken to investigate potential child abuse—not to diagnose Plaintiff with any condition. ECF No. 242-1 at 33. For these reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's Claim 3 to the extent it is based on the covert video surveillance of Plaintiff and her family.

### c.    Other Procedures

Plaintiff next alleges that defendant Nienow, with defendant Paugh and Snyder's approval, directed medical personnel at Rady's to perform an "invasive swallow test" on her. FAC ¶ 238. According to Plaintiff, this procedure was non-emergent and not disclosed to either the juvenile court or Plaintiff's parents. *Id.* As in its March 16, 2023 Order, the Court holds these allegations are sufficient to state a claim for a violation of the right to familial association against defendants Nienow, Paugh and Snyder. ECF No. 95 at 30–31.

Plaintiff also identifies a litany of other specific medical procedures that were allegedly performed on her without her consent or notice to her parents—including a "KUB, Echo cardiogram, Kidney and Bladder studies, Renal Function Panel, Plasma Renin, ACT, QCT for Body's regulation of BP," and "Surgical Consult for continued drainage of post Jejunostomy tube removal." FAC ¶ 66. The FAC does not allege, however, how any of the Defendants were involved in authorizing or performing these procedures. The Court therefore **GRANTS** Defendants' motion to dismiss Plaintiff's Claim 3 to the extent it is based on these procedures.

21-cv-341-RSH-SBC

Finally, Plaintiff alleges a group of undifferentiated defendants subjected Plaintiff to "intensive emotional and psychological manipulation." *Id.* ¶¶ 74, 239, 263. As the Court already held above, such allegations are insufficient to state a viable claim against any of the defendants individually. The Court therefore **GRANTS** Defendants' motion to dismiss Plaintiff's Claim 3 to the extent it is based on this alleged "emotional and psychological manipulation."

### d.    Summary

For these reasons, the Court **DENIES** Defendants' motion to dismiss Claim 3 with respect to Plaintiff's allegations that defendant Nienow, with defendants Paugh and Snyder's approval, directed that a swallow test to be performed on Plaintiff. The Court **GRANTS** Defendants' motion to dismiss Claim 3 as to the remainder of Plaintiff's allegations.

### 7.    Failure to Provide Adequate Supervision, Safety, Security, and Healthcare (Claim 4)

In Claim 4 of her FAC, Plaintiff alleges the individual Defendants violated her right to receive adequate care while she was a dependent of the County. FAC ¶¶ 313–19. Defendants move to dismiss this claim contending: (1) Plaintiff has not alleged she was placed in the care or custody of any of the individual Defendants; and (2) Plaintiff's allegations against the individual Defendants are vague and conclusory. ECF No. 242-1 at 39–40.

"Generally, the Fourteenth Amendment's Due Process Clause . . . does not confer any affirmative right to governmental aid and typically does not impose a duty on the state to protect individuals from third parties." *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012) (internal quotation marks omitted). An exception to this general rule is "the 'special relationship' exception—when a custodial relationship exists between the plaintiff and the State such that the State assumes some responsibility for the plaintiff's safety and well-being." *Id.* Under this exception, "[o]nce the state assumes wardship of a child, the state owes the child, as part of that person's protected liberty interest, reasonable safety and

minimally adequate care and treatment appropriate to the age and circumstances of the child." *Lipscomb v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992); *see Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 843 (9th Cir. 2010) ("[T]he law does not impose the duty of guarding their own safety on wards of the state. Rather, that duty is the quintessential responsibility of the social workers assigned to safeguard the well-being of this helpless and vulnerable population.").

Here, Plaintiff alleges that while she was under the care of the County, the individual Defendants were aware of Plaintiff's medical condition and refused to provide her with appropriate treatment by: (1) failing to investigate the actual cause of Plaintiff's condition; (2) refusing to provide her with appropriate care; (3) allowing her to remain at Rady's; (4) approving Rady's treatment plans; and (5) failing to provide her with adequate psychotherapeutic care. FAC ¶ 316. Again, such conclusory allegations against *all* the individual Defendants fails to give any individual Defendant proper notice of the specific allegations directed against them.

Plaintiff argues the FAC should be read "as a whole." ECF No. 251 at 26. In making this argument, however, Plaintiff does not cite any portion of the FAC that identifies the acts each specific Defendant allegedly took in violation of Plaintiff's right to adequate care. *Id.* at 25–26. The Court is under no obligation to sift through Plaintiff's FAC in an attempt to match the alleged wrongdoings to a plausible claim for relief. *See Polsky v. Ramnani,* No. SACV1700993AGJCGX, 2018 WL 6133406, at *5 (C.D. Cal. Mar. 26, 2018) ("[T]he Court cannot sift through the complaint to match the alleged wrongdoings to plausible claims for relief against each Defendant."); *Biers v. Washington State Liquor & Cannabis Bd.,* No. C15-1518JLR, 2016 WL 3079025, at *9 (W.D. Wash. June 1, 2016) ("[The court is under no obligation to—and will not—scour large portions of [plaintiff's] complaint to find support for his conclusory statements; nor will the court attempt on its own to piece together plausible claims[.]"). For these reasons, the Court **GRANTS** Defendants' motion to dismiss Claim 4.

///

8. *Violation of Federal Statute (Claim 5)*

In Claim 5 of her FAC, Plaintiff alleges the County and "County Affiliated" Defendants violated § 1983 by failing to develop a case plan adequately addressing Plaintiff's needs in accordance with the Adoption Assistance and Child Welfare Act of 1980 (the "Child Welfare Act"), 42 U.S.C. § 670 *et seq.* FAC ¶¶ 320–29. Defendants move to dismiss this claim contending: (1) the County cannot be held vicariously liable in a § 1983 action; and (2) the FAC does not sufficiently articulate a violation of the Fourteenth Amendment. ECF No. 242-1 at 40–41. Plaintiff argues it is well established the case plan provisions of the Child Welfare Act are enforceable in a § 1983 action. ECF No. 251 at 26–27.

The Child Welfare Act "was adopted in 1980 to enable states to provide foster care and adoption assistance for children in need of such services." *Cal. State Foster Parent Ass'n v. Wagner*, 624 F.3d 974, 978 (9th Cir. 2010). "The Act establishes a program through which the federal government provides funding to states to cover the costs of administering the foster care system." *Id.* Under Section 671(a)(16), for a State to be eligible for payments under the Act, it must have a plan that "provides for the development of a case plan . . . for each child receiving foster care maintenance payments under the State plan." 42 U.S.C. 671(a)(16). In turn, "Section 675(1) provides a detailed definition of what a case plan must include, such as the child's health and educational records, a description of the child's permanency plan, and a plan for ensuring the child's educational stability." *Willden*, 678 F.3d at 1006. "The case plan provisions are enforceable through § 1983." *Henry A. v. Willden*, 678 F.3d 991, 1006 (9th Cir. 2012).

Here, Plaintiff's allegations are too conclusory to survive a motion to dismiss. The FAC alleges the County and "County-affiliated" Defendants "knew definitively" that Plaintiff needed a "certain course" of medical and psychological treatment, but Defendants failed to "promptly craft a case plan that addressed [Plaintiff's] known needs." FAC ¶ 324. These allegations fail to provide any specificity as to: (1) what Plaintiff is alleging this "certain course" of treatment was; (2) what (if any) case plan was created; and (3) the

specific deficiencies of this plan and are insufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 663 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."); *Gatlin v. Contra Costa Cnty.*, No. 21-CV-00370-SI, 2023 WL 8853713, at *12–13 (N.D. Cal. Dec. 21, 2023) (dismissing claim where complaint provided "no detail regarding which pieces of the case plan [defendants] failed to provide.").

Moreover, Plaintiff's allegations that *all* the "County" and "County-affiliated" Defendants are liable under this claim again provide no notice of: (1) which of the named Defendants Plaintiff is seeking relief from in this claim; or (2) what Plaintiff's specific allegations against them are. For these reasons, the Court **GRANTS** Defendants' Motion to Dismiss Claim 5.

## B.   *Monell* Claim against the County (Claim 7)

In Claim 7 of her FAC, Plaintiff pleads a claim for municipal liability against the County. FAC ¶¶ 349–408.

### 1.   Generally

A plaintiff may recover under *Monell* under one of three theories. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016). First, "a local government may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury.'" *Id*. at 1249 (quoting *Monell*, 436 U.S. at 708). Second, "under certain circumstances, a local government may be held liable under § 1983 for acts of 'omission,' when such omissions amount to the local government's own official policy." *Id*. Third, "a local government may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id*. at 1250 (internal quotations omitted). Here, Plaintiff variously characterizes her claim as being based on a longstanding custom or practice, failure to train or discipline, or ratification by a final policymaker. FAC ¶¶ 349–408. Defendants move to dismiss the

1    entirety of this claim. ECF Nos. 242-1 at 21–29; 253 at 15–16.

2        2.    *Practice, Policy or Custom*

3        Plaintiff alleges the County is liable under *Monell* for maintaining three categories

4    of unofficial practices or customs. FAC ¶¶ 356, 380. Defendants argue Plaintiff's

5    allegations are insufficient as the FAC relies solely on Plaintiff's own experiences. ECF

6    No. 242-1 at 24.

7        "An unconstitutional policy need not be formal or written to create municipal

8    liability under Section 1983; however, it must be 'so permanent and well settled as to

9    constitute a 'custom or usage' with the force of law.'" *Gordon*, 6 F.4th at 974 (quoting

10   *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 169 (1970)). "Liability for improper custom

11   may not be predicated on isolated or sporadic incidents; it must be founded upon practices

12   of sufficient duration, frequency and consistency that the conduct has become a traditional

13   method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

14       Plaintiff first alleges the County has an unconstitutional practice or custom of

15   subjecting minors to nonconsensual medical examinations. FAC ¶ 356. In support of her

16   allegation, Plaintiff cites multiple lawsuits filed against the County. *Id.* ¶ 357. The FAC

17   describes how each lawsuit allegedly involves County employees subjecting a minor child

18   to medical procedures without consent or parental authorization. *Id.* At this stage of the

19   proceedings, Plaintiff's allegations are sufficient to survive Defendants' motion to dismiss.

20   *See Perryman v. City of Pittsburg*, 545 F. Supp. 3d 796, 800–01 (N.D. Cal. 2021) (denying

21   motion to dismiss *Monell* claim where complaint cited ten lawsuits and included

22   parenthetical information for each case detailing conduct similar to that complained of by

23   plaintiff); *Bagos v. Vallejo*, No. 2:20-CV-00185-KJM-AC, 2020 WL 6043949, at *5 (E.D.

24   Cal. Oct. 13, 2020) ("Prior incidents involving lawsuits alone, even those which do not

25   result in a finding or admission of wrongdoing, can be sufficient for *Monell* liability

26   purposes in the face of a motion to dismiss."); *Villa v. Cnty. of San Diego*, No. 20-CV-537-

27   CAB-NLS, 2020 WL 5535384, at *3 (S.D. Cal. Sept. 15, 2020) (denying motion to dismiss

28

*Monell* claim where plaintiff referenced a number of lawsuits framing "the existence of a specific custom or practice that was the moving force behind Plaintiff's alleged injuries").

Plaintiff next alleges the County has an unconstitutional practice or custom of subjecting minors and their parents to covert video surveillance without legal authority. FAC ¶ 356. Apart from her own experiences, however, Plaintiff does not allege how any other person was subjected to similar conduct. This is not sufficient to set forth a plausible *Monell* claim. *See, e.g.*, *Mitchell v. Cnty. of Contra Costa*, No. 21-CV-05014-DMR, 2022 WL 526161, at *5 (N.D. Cal. Feb. 22, 2022) (dismissing *Monell* claim where "[t]he complaint does not allege that any other person was subjected to similar unconstitutional conduct"); *Hensley v. City of Upland, CA*, No. CV 20-2462-CBM-(ASX), 2021 WL 1585212, at *4 (C.D. Cal. Mar. 1, 2021) (dismissing *Monell* claim because the complaint did not identify "any specific incidents . . . other than the incident involving Plaintiff"); *Nixon v. Buck*, No. CV1904610CJCSHSX, 2019 WL 12377857, at *4 (C.D. Cal. Nov. 13, 2019) (dismissing *Monell* claim where allegations of an unconstitutional policy was "premised entirely on Plaintiff's own experience"); *Young v. City of Menifee*, No. EDCV171630JGBSPX, 2019 WL 4238880, at *6 (C.D. Cal. Aug. 2, 2019) (dismissing *Monell* claim when plaintiff failed to "identify any specific instances," other than his own experience, "where [defendant] engaged in such [unconstitutional] conduct").

Finally, Plaintiff alleges the County has an unconstitutional practice or custom of including false and misleading statements and omitting known exculpatory evidence in documents filed to the juvenile court. FAC ¶ 380. In support of her allegation the County's customs are longstanding and widespread, Plaintiff identifies a number of lawsuits where the County and its employees "engaged in similar violations of constitutional rights." ECF No. 383. Plaintiff has not, however, sufficiently alleged how any of those cases cited are similar to the instant one. Instead, Plaintiff's descriptions of these cases simply state, in a conclusory fashion, that a County employee "engaged in deception in the presentation of evidence to the Juvenile Court." *Id.* This is not sufficient to set forth a plausible *Monell* claim. *See Jackson v. Cnty. of San Bernardino*, No. 523CV00341SSSSHKX, 2023 WL

9066307, at *5 (C.D. Cal. Sept. 29, 2023) (dissimilar lawsuits are "immaterial for purposes of determining whether there is a widespread custom in this case."); *Gal v. Cnty. of Kauai*, No. CV 20-00011 JMS-WRP, 2020 WL 3895756, at *4 (D. Haw. July 10, 2020) ("[A]lleging 'numerous lawsuits' for 'excessive force' is meaningless if Plaintiff does not identify a specific custom or policy, and/or identify 'numerous lawsuits' with a *similar use* of alleged excessive force exhibited in those lawsuits to give rise to a reasonable inference of a specific custom or policy.").

### 2. *Failure to Train*

Plaintiff alleges the County failed to train its employees that: (1) a minor cannot be examined or subjected to medical procedures without parental consent or court order; (2) a minor cannot be subjected to video surveillance without parental consent or court order; (3) a county worker must disclose all known exculpatory information to a juvenile court; and (4) a county worker is precluded from knowingly including false statements in documents or reports submitted to the juvenile court. FAC ¶¶ 356, 367, 380, 398.

A "[f]ailure to train may constitute a basis for *Monell* liability where the failure amounts to deliberate indifference to the rights of those who deal with municipal employees." *Benavidez*, 993 F.3d at 1153. "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Id.* at 1153–54. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks omitted).

Defendant argues Plaintiff has failed to allege facts to show any failure to train its employees constituted deliberate indifference. ECF No. 242-1 at 27. "A pattern of violations is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train[.]" *Connick*, 563 U.S. at 70. "[I]n a narrow range of circumstances a

particular showing of obviousness can substitute for the pattern of violations ordinarily necessary to establish municipal culpability." *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 794 (9th Cir. 2016) (internal quotation marks omitted). "Such a situation is rare—the unconstitutional consequences of failing to train must be patently obvious and the violation of a protected right must be a highly predictable consequence of the decision not to train." *Id.* (internal quotation marks omitted).

The Court has already determined Plaintiff has not adequately alleged a pattern of sufficiently similar constitutional violations in relation to Plaintiff's claims the County has a custom or policy of: (1) subjecting minors to unauthorized covert video surveillance; or (2) making false or misleading statements in documents submitted to the juvenile court. Plaintiff's failure to train claims based on these allegations fail for the same reasons. Because Plaintiff *did* sufficiently allege a pattern of similar constitutional violations as to its claim the County has a custom or policy of subjecting minors to nonconsensual and unauthorized medical procedures, however, the Court concludes Plaintiff has also adequately alleged a failure to train claim based on these allegations.[14]

### 3. Ratification

Finally, the Court grants Defendants' motion to dismiss Plaintiff's *Monell* claim against the County to the extent this claim is based on a ratification theory. Here, the FAC merely alleges in a conclusory fashion that the "appropriate" County official "ratified" the violation of Plaintiff's constitutional rights "after having been fully informed of the underlying facts and circumstances." FAC ¶¶ 362, 392 (similarly alleging a County official "ratified" the inclusion of false statements and suppression of exculpatory evidence in

---

[14] To the extent Plaintiff's *Monell* claim is based on a failure to supervise or discipline, "[a] claim of failure to supervise and discipline is subject to the same standard as a failure to train claim." *Russell v. City of San Diego*, No. 24CV0527-GPC(SBC), 2025 WL 297034, at *7 (S.D. Cal. Jan. 24, 2025); *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 936 n.4 (S.D. Cal. 2022) ("[T]he same standards that apply to Plaintiff's failure to train claim apply to Plaintiff's failure to supervise or discipline claims.").

documents filed to the juvenile court). Plaintiff's arguments defendant Craft and an unknown DOE defendant "approved and authorized" the covert video surveillance of Plaintiff and her parents are similarly conclusory. ECF No. 251 at 35–36. These allegations are insufficient to survive a motion to dismiss. *See Segura*, 647 F. Supp. 3d at 939 ("The court joins numerous other courts in this Circuit that have found similar conclusory allegations to be insufficient to withstand a motion to dismiss.") (collecting cases); *Linder v. Bridge*, No. 14-CV-03861 SC, 2015 WL 1778608, at *6 (N.D. Cal. Apr. 17, 2015) (dismissing *Monell* claim where plaintiff merely made "conclusory allegations" defendant was a "final policymaker or that a final policymaker ratified [defendant]'s actions.").

### 4.   Conclusion

For these reasons, the Court denies Defendants' motion to dismiss Plaintiff's *Monell* claim to the extent it is based on Plaintiff's allegation the County maintains an unconstitutional custom or policy and fails to train its employees as to subjecting minors to medical examinations without a court order or parental consent. The Court grants Defendants' motion to dismiss Plaintiff's *Monell* claim against the County in all other respects.

### C.   *Monell* Claim against Rady's (Claim 8)

In Claim 8 of her FAC, Plaintiff pleads a claim for municipal liability against Rady's. FAC ¶¶ 409–456. Like in her *Monell* claim against the Country, Plaintiff variously characterizes this claim as being based on a custom or practice, failure to train or discipline, or ratification by a final policymaker. *Id.* Defendants move to dismiss the entirety of this claim. ECF No. 242-1 at 21–29.

### 1.   Practice, Policy or Custom

#### a.   Policy No. CPM 4-40

Plaintiff first alleges that Rady's has an express policy of subjecting minors to covert video surveillance without legal authority. Plaintiff specifically points to Policy No. CPM 4-40—which allegedly "allows for covert, secret, and surreptitious video recording anytime accusations of Munchausen by Proxy are being investigated." FAC ¶ 419.

Defendants do not dispute this policy exists but argue, without legal support, that Plaintiff's claim cannot be based on a single official policy alone. ECF No. 253 at 16. This argument is unpersuasive. *See Hardrick v. City of Detroit*, 876 F.3d 238, 244–45 (6th Cir. 2017) (identifying a section of a single city ordinance as the relevant policy under *Monell*); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (identifying a single police department general order as the relevant policy under *Monell*); *Valenzuela v. City of Anaheim*, No. SACV1700278CJCDFMX, 2019 WL 2949035, at *10 (C.D. Cal. Feb. 12, 2019) (denying summary judgment as to a plaintiff's *Monell* claim based on written policy providing that a carotid restraint could be appropriately applied for subduing suspects).

Defendants' argument Plaintiff has failed to demonstrate a "direct causal link" between this official policy and any constitutional violation is also unpersuasive. Here, because the acts of the Rady Defendants were allegedly committed "in accordance" with CPM 4-40, the Court can "infer" this policy was "the 'moving force' behind the violation of Plaintiff's rights. *See Gerrie v. Cnty. of San Bernardino*, No. EDCV191435JGBSPX, 2019 WL 8013412, at *7 (C.D. Cal. Nov. 12, 2019) ("[B]ecause the acts of the Social Worker Defendants that violated Plaintiff's rights were committed in accordance with these alleged policies, the Court can infer that the policies were the 'moving force' behind the violation of Plaintiff's rights."); *Valenzuela*, 2019 WL 2949035, at *10 (holding that given officers "both applied what they believed was a carotid restraint hold in accordance with [police department], a reasonable jury could also conclude that this policy was the moving force behind the constitutional violations at issue[.]").

### b.    *Nonconsensual Medical Procedures/Judicial Deception*

Plaintiff next alleges Rady's maintains an unconstitutional custom or policy of: (1) subjecting minors to nonconsensual medical procedures; and (2) submitting false or incomplete information to the juvenile court. FAC ¶¶ 419, 432. Plaintiff does not identify any official policies supporting this theory, and apart from Plaintiff's own experience, the FAC cites to only one other lawsuit in support of Plaintiff's allegation Rady's customs are longstanding and widespread. *Id.* ¶ 420. This is insufficient to survive Defendants' motion

to dismiss. *See Meehan v. Cty. of L.A.*, 856 F.2d 102, 107 (9th Cir. 1988) (directed verdict in favor of defendant county was proper as proof of two unconstitutional assaults "standing alone" did not support a finding of liability under *Monell*); *Lien v. City of San Diego*, No. 21-CV-224-MMA (WVG), 2021 WL 2072385, at *5 (S.D. Cal. May 24, 2021) (two prior incidents insufficient to state a plausible claim for a longstanding custom); *Barber v. Cnty. of Orange*, No. SACV2100031CJCJDEX, 2021 WL 2981015, at *2 (C.D. Cal. Apr. 29, 2021) ("Three incidents over a five-year period are too isolated and sporadic to support a long-standing policy in violation of *Monell.*").

### 2.    *Failure to Train*

Plaintiff also alleges Rady's is liable for: (1) failing to its train its employees not to include false statements in documents or reports submitted to the juvenile court; and (2) failing to train its employees that a minor cannot be examined or subjected to medical procedures without parental consent or court order. FAC ¶¶ 414, 419, 446.[15] Defendants argue Plaintiff has failed to allege a pattern of similar constitutional violations to support this claim. ECF No. 253 at 17. The Court agrees. As the Court already held above, these theories are supported only by Plaintiff's own experience and a single lawsuit. This is insufficient to allege a "pattern" of similar constitutional violations.

### 3.    *Ratification Claim*

Finally, the Court grants Defendants' motion to dismiss Plaintiff's *Monell* claim against Rady's to the extent this claim is based on a ratification theory. Here, the FAC merely alleges in a conclusory fashion that Rady's "considered the actions and conduct" of defendants Nienow, Reese, and a number of Doe defendants and "ratified and/or approved such acts and conduct." FAC ¶¶ 423, 441 (similarly alleging that Rady's "ratified and/or approved the inclusion of false statements, and/or suppression of known exculpatory

---

[15]    To the extent Plaintiff contends Rady's is liable for training its employees to follow Policy No. CPM 4-40, the Court is unable to determine how this theory differs from Plaintiff's claim Rady's is liable because it adopted CPM 4-40.

evidence, in reports and/or documents provided to HHSA in the context of joint child abuse investigations."). Such conclusory allegations are insufficient to state a plausible *Monell* claim based on a ratification theory.

Plaintiff's more specific contention that defendant Nienow, as the director of Rady's Child Protection Team, was a "managing member" of this team with "policy making authority" is similarly unavailing. FAC ¶ 431. As Defendants note, Plaintiff is resurrecting an argument made by Plaintiff's parents that the Court already rejected. ECF No. 95 at 42–43; 253 at 17. In short, Plaintiff has not specified or explained how Dr. Nienow is a "final policymaker" as a matter of state law. *Id.* Plaintiff has provided no explanation for why the Court should revisit its earlier decision.

### 4.    Conclusion

For these reasons, the Court denies Defendants' motion to dismiss Plaintiff's *Monell* claim to the extent it is based on Rady's Policy No. CPM 4-40. The Court grants Defendants' motion to dismiss Plaintiff's *Monell* claim against Rady's in all other respects.

### D.    ADA/Rehabilitation Act (Claim 6)

In Claim 6 of her FAC, Plaintiff pleads a claim for: (1) violation of the ADA against the County and Rady's; and (2) violation of the Rehabilitation Act against the County and all "County-affiliated" defendants. FAC ¶¶ 330–348. Defendants move to dismiss this claim, arguing Plaintiff: (1) lacks standing to bring her ADA claim; (2) fails to allege recoverable damages under the ADA or Rehabilitation Act; and (3) fails to allege facts to plausibly establish discrimination on the basis of a disability under either the ADA or Rehabilitation Act. ECF No. 242-1 at 41–44.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be

subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). ADA and Rehabilitation Act claims are commonly analyzed together "because the statutes provide identical remedies, procedures and rights." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018) (internal quotation marks omitted); *see Witt v. Bristol Farms*, No. 21-CV-00411-BAS-AGS, 2021 WL 5203297, at *3 (S.D. Cal. Nov. 9, 2021) (addressing ADA and Rehabilitation Act claims together). "To establish a claim under the ADA or Rehabilitation Act, [a plaintiff] must show: (1) [she] is a qualified individual with a disability; (2) [she] was denied a reasonable accommodation that [she] needs in order to enjoy meaningful access to the benefits of public services; and (3) the program providing the benefit receives federal financial assistance" (for the Rehabilitation Act claim) or is a public entity (for the ADA claim)." *Csutoras v. Paradise High Sch.*, 12 F.4th 960, 968–69 (9th Cir. 2021).

Here, Plaintiff's ADA and Rehabilitation Act claim is based solely on her allegations that Defendants: (1) engaged in "prohibited forms of discrimination"; (2) "did not process her request for accommodations," and (3) "never provided Plaintiff with accommodations in violation of their own policies and procedures." FAC ¶¶ 338, 343–44. Such conclusory allegations are insufficient to state a plausible claim under either the ADA or Rehabilitation Act. *See Garland v. California Dep't of Corr. & Rehab.,* No. 2:23-CV-0418 DAD SCR P, 2025 WL 36015, at *3 (E.D. Cal. Jan. 6, 2025) ("Plaintiff has not adequately alleged he was denied the benefits of an entity's program by reason of his disability and therefore has not stated a claim under the ADA and/or the [Rehabilitation Act]"); *Melton v. California Dep't of Correction & Rehab.*, No. 221CV00833JDPPC, 2021 WL 5105421, at *2 (E.D. Cal. Nov. 3, 2021), *report and recommendation adopted*. No. 221CV00833JAMJDPPC, 2021 WL 6117425 (E.D. Cal. Dec. 27, 2021) (denying ADA and Rehabilitation Act claims based solely on conclusory allegations); *Gonzalez v. Cnty. of Los Angeles*, No. CV 16-6305 PSG (JCX), 2017 WL 11632458, at *6 (C.D. Cal. May 23, 2017) (granting motion to dismiss ADA and Rehabilitation Act claim where Plaintiff failed "to identify the specific programs or benefits for which he was qualified and pleads no facts as to when or how he

was excluded from any of these programs or benefits.”). For these reasons, the Court **GRANTS** Defendants' Motion to Dismiss Claim 6.[16]

### E. Unruh Civil Rights Act (Claim 9)

In Claim 9 of her FAC, Plaintiff alleges an Unruh Civil Rights Act claim against all Defendants. FAC ¶¶ 457–461. Defendants contend this claim must be dismissed for two reasons. ECF No. 242-1 at 44–45.

#### 1. Generally

“The Unruh Act . . . is a public accommodations statute that focuses on discriminatory behavior by business establishments.” *Stamps v. Superior Ct.*, 136 Cal. App. 4th 1441, 1452 (2006). It applies only to “‘business establishments’ that are ‘generally open to the public’ and mandates that those establishments ‘serve all persons without arbitrary discrimination.’” *Smith v. BP Lubricants USA Inc.*, 64 Cal. App. 5th 138, 149 (2021) (internal quotation marks and citations omitted). “To state a claim for discrimination under the Unruh Act, a plaintiff must allege: (1) that he was denied full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) that his protected characteristic was a motivating factor for this denial; (3) that defendant's denial was the result of its intentional discrimination against plaintiff; and (4) that the defendant's wrongful conduct caused him to suffer injury.” *Doe 1 v. United Airlines, Inc.*, No. CV2005554RSWLAGRX, 2021 WL 4595766, at *3 (C.D. Cal. Apr. 22, 2021); *see also Bridges v. Kohl's Stores, Inc.*, No. 23-CV-00685-DAD-JDP, 2024 WL 4647621, at *3 (E.D. Cal. Oct. 31, 2024).

#### 2. Individual Defendants

Defendants first contend Plaintiff's Unruh Civil Rights Act claim against the individual Defendants must be dismissed because the Act does not apply to “individual persons.” ECF Nos. 242-1 at 44; 253 at 20.

---

[16]    In light of this decision, the Court declines to address Defendants' alternative argument that Claim 6 should be dismissed for lack of standing.

The Unruh Civil Rights Act "does not cover 'discriminations other than those made by a business establishment in the course of furnishing goods, services or facilities to its clients, patrons or customers.'" *Smith*, 64 Cal. App. 5th at 149 (quoting *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493, 500 (1970)). "An entity qualifies as a business establishment for purposes of the Unruh Act when it 'appears to have been operating in a capacity that is the functional equivalent of a commercial enterprise.'" *Cooley v. City of Los Angeles*, No. 2:18-CV-09053-CAS-PLA, 2019 WL 3766554, at *6 (C.D. Cal. Aug. 5, 2019) (quoting *Warfield v. Peninsula Golf & Country Club*, 10 Cal. 4th 594, 622 (1995)).

Here, Plaintiff has not set forth—nor has the Court been able to locate—any legal authority supporting the proposition that natural persons may be considered "business establishments" under the Unruh Civil Rights Act. Indeed, Plaintiff's Opposition contends *only* that her FAC sufficiently alleged an Unruh Civil Rights Act claim against the County and Rady's and that certain types of *entities* may be considered "business establishments." ECF No. 251 at 42. In light of this concession, and the absence of any legal authority to the contrary, the Court **GRANTS** Defendants' motion to dismiss Claim 9 as to the individual Defendants.

### 3. County and Rady's

Defendants next contend Plaintiff's Unruh Civil Rights Act claim should be dismissed against the remaining Defendants (the County and Rady's) because Plaintiff has not set forth sufficient facts to establish that the County or Rady's acted with discriminatory intent. ECF No. 242-1 at 44.

The Court agrees. Here, Plaintiff's Unruh Civil Rights Act asserts that Defendants: "(1) denied/aided or incited a denial of/discriminated or made a distinction that denied full and equal accommodations/advantages/facilities/privileges/services to Plaintiff"; (2) and that a "substantial motivator reason" for Defendants' conduct was "their perception of Plaintiff's medical condition/genetic information/mental condition." FAC ¶¶ 458–59. Such conclusory allegations are insufficient to state a claim under the Unruh Civil Rights Act. *See Acevedo v. City of Farmersville*, No. 118CV01747LJOSAB, 2019 WL 3003996, at

*16 (E.D. Cal. July 10, 2019) (dismissing Unruh Civil Rights Act claim where plaintiff failed to plead any particularized facts as to what actions defendants took that constituted a violation of the act); *Williams v. Twin Rivers Unified Sch. Dist.*, No. 2:17-CV-02364-JAM-DB, 2018 WL 4735734, at *2 (E.D. Cal. Sept. 28, 2018) ("A plaintiff bringing an Unruh Act violation claim cannot allege intentional discrimination in a conclusory fashion."). Plaintiff's alternative argument she need not plead intentional discrimination under the Unruh Civil Rights Act if she has established violation of the ADA is also unavailing. ECF No. 251 at 43. The Court already concluded above that Plaintiff's ADA claim was not sufficiently pleaded. For these reasons, the Court also **GRANTS** Defendants' motion to dismiss Claim 9 as to the County and Rady's.

### F.    Violation of California Health and Safety Code §§ 123110 and 123120 (Claim 10)

In Claim 10 of her FAC, Plaintiff asserts a claim against Rady's for violation of California Health and Safety Code §§ 123110 and 123120, alleging Defendants have repeatedly refused to comply with Plaintiff's requests to obtain a complete copy of her medical and psychiatric records. FAC ¶¶ 462–67.

California Health and Safety Code § 123110 provides that "any adult patient of a health care provider, any minor patient authorized by law to consent to medical treatment, and any patient's personal representative shall be entitled to inspect patient records upon presenting to the health care provider a request for those records and upon payment of reasonable costs." Cal. Health & Safety Code § 123110(a). In turn, California Health and Safety Code § 123120 provides that "[a]ny patient or representative aggrieved by a violation of Section 123110 may, in addition to any other remedy provided by law, bring an action against the health care provider to enforce the obligations prescribed by Section 123110." Cal. Health & Safety Code § 123120.

Defendants argue there is no basis for Plaintiff's claim because: (1) the disclosure of certain of Plaintiff's records are protected under California Welfare & Institutions Code § 827; and (2) Rady's has already complied with Plaintiff's request and produced her medical

and mental health records. ECF No. 242-1 at 45. Here, Defendants' arguments go to whether Plaintiff's claim would ultimately be successful—not whether they have been plausibly pleaded. In ruling on a motion to dismiss, however, the Court "considers whether Plaintiff's claim is plausible—not whether viable defenses exist or whether the claim is likely to be successful." *Workman v. CarGuard Admin. Inc.*, No. CV-23-00961-PHX-DLR, 2024 WL 249160, at *3 (D. Ariz. Jan. 23, 2024); *see Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1166 (9th Cir. 2022) (plaintiff "must simply state a plausible claim, rather than one that is likely to succeed."); *In re Animation Workers Antitrust Litig.*, 123 F. Supp. 3d 1175, 1201–02 (N.D. Cal. 2015) (at the motion to dismiss stage, plaintiffs "need only allege sufficient facts to state a plausible claim, not prove the veracity of their allegations."). For these reasons, the Court **DENIES** Defendants' motion to dismiss Claim 10.

## G.    California Constitution Article I, § 1 (Claim 11)

In Claim 11 of her FAC, Plaintiff alleges defendants Valenzuela, Craft, Nienow, Reese, the County, and Rady's violated Plaintiff's rights under the California Constitution by conducting covert video surveillance of her hospital room. FAC ¶¶ 468–476.

### 1.    Generally

"In California, the right to privacy is set forth in Article I, Section I of the California Constitution." *Ramirez v. GEO Grp., Inc.*, No. 18CV2136-LAB (MSB), 2019 WL 950328, at *4 (S.D. Cal. Feb. 26, 2019). "To assert a cause of action under Article I, § 1 of the California Constitution, one must establish three elements: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest." *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1271 (9th Cir. 1998) (internal quotation marks omitted); *see also Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*, 956 F.3d 589, 601 (9th Cir. 2020).

///

///

### 2.    *Rady's, Reese and Nienow*

Defendants first contend defendants Rady's, Rady Defendant Reese, and Regent Defendant Nienow are immunized from liability as to Claim 11 under the California Child Abuse and Neglect Reporting Act ("CANRA"). ECF No. 242-1 at 47–48.

"The California Legislature enacted the Child Abuse and Neglect Reporting Act (CANRA) to help rectify the problem of inadequate child abuse reporting." *Arce v. Childrens Hosp. L.A.*, 211 Cal. App. 4th 1455, 1484 (2012). "The Act requires 'mandated reporter[s]' to make a report of abuse to one of several designated agencies 'whenever the mandated reporter, in his or her professional capacity or within the scope of his or her employment, has knowledge of or observes a child whom the mandated reporter knows or reasonably suspects has been the victim of child abuse or neglect.'" *Id.* (quoting Cal. Penal Code § 11166).

"In order to promote the purpose of the act to protect abused children, [CANRA] provides that mandated reporters of child abuse are absolutely immune from liability." *Robbins v. Hamburger Home for Girls*, 32 Cal. App. 4th 671, 679 (1995). "This absolute immunity extends not only to the making of the initial report, but also to conduct giving rise to the obligation to report, such as the collection of data, or the observation, examination, or treatment of the suspected victim performed in a professional capacity and to subsequent communications between the reporter and the public authorities responsible for investigating or prosecuting child abuse." *Id.* (internal quotation marks and citation omitted). "California courts extend CANRA immunity to hospitals when they are sued under a *respondeat superior* theory." *Harris v. Cnty. of San Diego*, No. 18-CV-924-BTM-AHG, 2019 WL 6683367, at *4 (S.D. Cal. Dec. 5, 2019); *see Storch v. Silverman*, 186 Cal. App. 3d 671, 681–82 (1986) ("Inasmuch as the liability of the hospital, under the doctrine of *respondeat superior*, was necessarily predicated upon the negligent report of child abuse by one of the other defendants, the immunity statute defeats any action against the hospital as well.").

///

Plaintiff does not dispute CANRA immunity would apply to Reese and Nienow, but argues their use of covert video surveillance fell beyond "the scope of CANRA" because they were "acting in an investigatory capacity." ECF No. 251 at 45. This argument was already considered and rejected by the Court in its March 16, 2023 Order. ECF No. 95 at 47–50. The Court rejects this argument for the same reasons here and **GRANTS** Defendants' motion to dismiss Claim 11 as to defendants Reese, Nienow, and Rady's.[17]

### 3. *Valenzuela, Craft, and the County*

Defendants next move to dismiss Claim 11 against the remainder of the Defendants, arguing Article I, Section I of the California Constitution does not support a cause for monetary damages. ECF No. 242-1 at 46. The Court agrees. "California's constitutional provision protecting the right of privacy . . . supports a cause of action for an injunction' but it does not confer on a litigant a private right of action for damages." *Moore v. Rodriguez*, No. 20-CV-01481-BAS-BGS, 2021 WL 2222590, at *20 (S.D. Cal. June 2, 2021); *see Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) ("Article 1, Section 1 of the California Constitution prohibits the government from violating a citizens right to privacy. Citizens can seek to enjoin the government from violating that right but cannot seek damages."). For these reasons, the Court **GRANTS** Defendants' motion to dismiss Claim 11, to the extent Plaintiff is seeking monetary damages.

## IV.    LEAVE TO AMEND

Defendants request that its motion to dismiss be granted without leave to amend. ECF No. 253 at 22. Plaintiff requests that if the Court determines any of his claims are insufficiently pleaded, that Plaintiff be granted leave to amend. ECF No. 251 at 46–47. At this early stage of the proceedings, the Court is not convinced that Plaintiff cannot cure

---

[17]    In light of this holding, the Court declines to reach Defendants' alternative argument that California Government Code Section 820.2 immunizes defendant Nienow from this claim. ECF No. 242-1 at 48–49.

some of the defects identified herein via amendment. *See Knappenberger v. City of Phx.*, 566 F.3d 936, 942 (9th Cir. 2009) ("Leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts.") (internal quotation marks omitted). Nevertheless, the Court also concludes some of the defects identified above cannot be cured. *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) ("[A] district court need not grant leave to amend where the amendment . . . is futile."). For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's request for leave to amend as detailed below.

## V. CONCLUSION

For the above reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion as follows:

### A. Individual § 1983 Claims

1. The Court **GRANTS** Defendants' motion to dismiss Plaintiff's § 1983 claims (Claims 1-5) against defendants Anthony, Ferro, Swaykos, Fleming, Salgado, Palafox, Byrd, Niemann, Lambing, Holland, Bukolt (Harvard), Dorantes, Robershaw, Knight, Cox, Harris, Duffy, Luber, Menard, Biffl, Skalsky, Jenkins, Maginot, and Patel **WITH LEAVE TO AMEND**.

2. The Court **DENIES** Defendants' motion to dismiss Claim 1 against defendants Nienow, Reese, Craft, Valenzuela, and Snyder.

3. The Court **DENIES** Defendants' motion to dismiss Claim 2 against defendants Nienow, Reese, Valenzuela, Paugh, Snyder, Craft and Molzen.

4. The Court **DENIES** Defendants' motion to dismiss Claim 3 against defendants Nienow, Paugh and Snyder, to the extent Plaintiff's claim is based on her allegations defendant Nienow, with defendants Paugh and Snyder's approval, directed that a swallow test be performed on Plaintiff.  The Court **GRANTS** the remainder of Defendants' motion to dismiss Claim 3 **WITH LEAVE TO AMEND**.

5.    The Court **GRANTS** Defendants' motion to dismiss Claim 4 against defendants Nienow, Reese, Valenzuela, Paugh, Snyder, Craft and Molzen **WITH LEAVE TO AMEND**.

6.    The Court **GRANTS** Defendants' motion to dismiss Claim 5 against defendants Valenzuela and the County **WITH LEAVE TO AMEND**.

### B.    *Monell* § 1983 Claims

7.    The Court **DENIES** Defendants' motion to dismiss Claim 7 against the County, to the extent it is based on Plaintiff's allegation the County maintains an unconstitutional custom or policy and fails to train its employees as to subjecting minors to medical examinations without a court order or parental consent. The Court **GRANTS** Defendants' motion to dismiss Claim 7 in all other respects **WITH LEAVE TO AMEND**.

8.    The Court **DENIES** Defendants' motion to dismiss Claim 8 against Rady's, to the extent it is based on Rady Policy No. CPM 4-40. The Court **GRANTS** Defendants' motion to dismiss Claim 8 in all other respects **WITH LEAVE TO AMEND**.

### C.    State Law Claims

9.    The Court **GRANTS** Defendants' motion to dismiss Claim 6 **WITH LEAVE TO AMEND**.

10.    The Court **GRANTS** Defendants' motion to dismiss Claim 9 as to the individual Defendants **WITHOUT LEAVE TO AMEND**. The Court **GRANTS** Defendants' motion to dismiss Claim 9 as to the County and Rady's **WITH LEAVE TO AMEND**.

11.    The Court **DENIES** Defendants' motion to dismiss Claim 10.

12.    The Court **GRANTS** Defendants' motion to dismiss Claim 11 against defendants Rady's, Reese, and Nienow **WITHOUT LEAVE TO AMEND.** The Court **GRANTS** Defendants' motion to dismiss Claim 11 against defendants Valenzuela, Craft, and the County, to the extent Plaintiff is seeking monetary damages on this claim, **WITHOUT LEAVE TO AMEND.**

*///*

13.     If Plaintiff chooses to file a Second Amended Complaint, Plaintiff must do so within **fourteen (14) days** of the date of this Order. Defendants' time to respond to the operative pleading will begin to run on the earlier of the date Plaintiff files a Second Amended Complaint or **fourteen (14) days** from the date of this Order.

**IT IS SO ORDERED.**

Dated: February 10, 2025

_____
Hon. Robert S. Huie
United States District Judge

21-cv-341-RSH-SBC