UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM MEYER, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF SAN DIEGO, et al., <br><br> Defendants. | Case No.: 3:21-cv-0341-RSH (BLM) <br><br> **ORDER DENYING PLAINTIFF'S MOTION TO COMPEL** <br><br> **[ECF No. 264]** |

Currently before the Court is Plaintiff William Meyer's January 10, 2025 Motion to Compel Defendants Valenzuela, Craft, Paugh, and Snyder ("Defendants") to Provide Further Responses to Discovery.[1]  ECF No. 264.  On January 17, 2025, Defendants filed an Opposition ("Oppo."). ECF No. 267. On January 24, 2025, Plaintiff filed his Reply ("Reply").  ECF No. 268.  On January 28, 2025, Plaintiff filed a "Supplemental Declaration," without leave of court.  ECF No. 269.

---

[1] On January 12, 2025, Plaintiff filed a "Notice of Errata re: Exhibits" and submitted Exhibits H-Z and AA-TT that he was not able to file with the original motion due to "technical issues."  See ECF No. 265-5.

1

After reviewing Plaintiff's MTC, the Defendants' Oppo, Plaintiff's Reply and all supporting documents, the Court **DENIES** Plaintiff's Motion for the reasons set forth below.

## RELEVANT BACKGROUND

On December 27, 2021, Plaintiffs William Meyer and Dana Gascay filed their second amended complaint ("SAC") in this action alleging, *inter alia*, that Defendants, social workers employed by the County of San Diego, violated their civil rights by allegedly impermissibly conducting video surveillance of Plaintiffs and their minor child ("M.M.") while she was receiving medical treatment. ECF No. 61 at ¶¶ 94-104. Following District Judge Robert Huie's Order granting in part, and denying in part, Defendants' Motion to Dismiss Plaintiffs' SAC, the only remaining Defendants are Valenzuela, Craft, Paugh, and Snyder. See ECF No. 95. In addition, the Monell claims against the County of San Diego were dismissed and Plaintiffs did not file a noticed motion seeking leave to amend these claims as instructed by District Judge Huie if they wanted to attempt to re-allege a Monell claim. Id.

Beginning in August of 2024, the parties brought their first motion seeking an extension of time to comply with this Court's Chambers Rules regarding discovery disputes. ECF No. 249. It was in this motion that the parties raised the issue of the dispute over Defendants' responses to Plaintiff Meyer's Request for Production of Documents ("RFPs") (Set 3). Id. The Court granted the parties request for an extension of time for the Plaintiff to bring a motion to compel if necessary. ECF No. 250. The parties went on to file three more motions seeking extensions of time to comply with the Court's Chambers Rules which the Court granted. ECF Nos. 255, 257, and 259. The parties filed a fifth request on December 20, 2024. ECF No. 260. The Court found that the parties had failed to establish good cause to grant their request for another extension and issued a briefing schedule for Plaintiff's motion to compel which is currently before the Court. ECF No. 261.

/ / /
/ / /
/ / /
/ / /

**LEGAL STANDARD**

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Typically, the relevance standard is broad in scope and "encompass[es] any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in a case." Doherty v. Comenity Capital Bank & Comenity Bank, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017). Relevance, however, is not without limits. Id. The 2015 amendment to Rule 26(b) removed the phrase "reasonably calculated to lead to the discovery of admissible evidence" because it was often misconstrued to define the scope of discovery. Fed. R. Civ. P. 26(b)(1) advisory committee's notes (2015 amendment). Instead, to fall within the scope of discovery, the information must also be "proportional to the needs of the case," requiring lawyers to "size and shape their discovery requests to the requisites of a case" while "eliminat[ing] unnecessary or wasteful discovery." Fed. Civ. R. P. 26(b)(1); Cancino Castellar v. McAleenan, 2020 WL 1332485, at *4 (S.D. Cal Mar. 23, 2020) (quoting Roberts v. Clark Cty. Sch. Dist., 312 F.R.D. 594, 603 (D. Nev. 2016)).

District courts have broad discretion to determine relevancy for discovery purposes. D.M. v. County of Merced, 2022 WL 229865, at * 2 (E.D. Cal. Jan. 26, 2022) (citing Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002) and Surfvivor Media v. Survivor Prods., 406 F.3d 625, 635 (9th Cir. 2005)). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action"

or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)"). Further, "[w]hen analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Cancino, 2020 WL 1332485, at *4 (citing Fed. R. Civ. P. 26(b)(1)).

Fed. Civ. R. P. 34 provides that a party may serve on another a request for production of documents, electronically stored information, or tangible things within the scope of Fed. Civ. R. P. 26(b). Fed. R. Civ. P. 34(a). Where a party fails to produce documents requested under Rule 34, the party propounding the request for production of documents may move to compel discovery. See Fed. R. Civ. P. 37(a). "The party seeking to compel discovery has the burden of establishing that its requests satisfy the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining, or supporting its objections." Williams v. County of San Diego, 2019 WL 2330227, at *3 (citing Bryant v. Ochoa, 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009)) (internal quotations omitted).

## DISCOVERY NO LONGER AT ISSUE

As an initial matter, Defendants have informed the Court in their Opposition that they are "withdrawing their objections and will voluntarily produce" the following PowerPoint training presentations: (1) "HS SS SWS Confidentiality & Legal Liabilities" November 2015; (2) "County Counsel – Juvenile Dependency Training" September 2016; (3) "HH SS CWS The Law" September 2016; and (4) "Forensic Interviews and Medial Evaluations" 2019. Oppo. at 7. There are eight remaining PowerPoint presentations that are still in dispute Id.

## PLAINTIFFS' POSITION

On July 3 and July 5, 2024, Plaintiff served his RFPs, Set Three, requesting that the Defendants produce all "training material DOCUMENTS, PowerPoint Presentations (in native

form), lecture notes, letters, flyers, handouts, and/or video and/or audio recordings – all in ESI format – you received, viewed, and/or were presented during" twelve separate trainings. See Pullman Decl. at ¶¶ 1, 2, ECF No. 264-1.

Plaintiff argues that the Defendants' objections to the RFPs on the grounds of attorney-client privilege and attorney work product are without merit. MTC at 7-14. Specifically, Plaintiff argues that the primary purpose of the trainings was to teach, not to provide legal advice. Id. at 7 (citing ACLU of N. Cal. v. U.S. Dep't of Just., 880 F.3d 473, 487 (9th Cir. 2018)). Plaintiff also asserts that Defendants have failed to make the proper showing that the purpose of the trainings was to "avoid prospective litigation" and attorney work product only "applies to materials that would not have been generated but for the pendency or imminence of litigation." Id. at 12 (citing Greer v. Cnty of San Diego, 634 F.Supp.3d 911, 918 (S.D. Cal. 2022)).[2]

Defendants also are alleged to have waived their objections by failing to timely object. Id. at 15-16. Plaintiff argues that Defendants' original responses to the RFPs, with one exception, did not contain any specific attorney-client privilege or attorney work product objections. Id. at 16. Defendants are also alleged to have expressly waived these privileges by "voluntarily producing training materials that addressed similar and/or overlapping issues/topics" in other litigation matters. Id. at 17.

Finally, Plaintiff argues the training materials are relevant to show that the constitutional rights at issue were clearly established and therefore, these documents are "relevant to the qualified immunity analysis." Id. at 19.

**DEFENDANTS' POSITION**

Defendants assert that the training materials at issue are protected by attorney-client privilege and attorney work product doctrine. Oppo. at 9 (citing United States v. Richey, 632 F.3d 559 (9th Cir. 2011)). In support of this argument, Defendants have submitted the declaration of Caitlin Rae, Assistant County Counsel for the Office of County Counsel. See Rae

---

[2] On February 10, 2025, the Ninth Circuit Court of Appeals reversed the district court's decision in Greer in a published decision. See Greer, et al. v. County of San Diego, et al., --F.4th --, 2025 WL 441836 (9th Cir. Feb. 10, 2025.)

1  Decl., ECF No. 267-1.  Defendants also argue that they have not waived any objections or "in
2  the alternative relief from any waiver should be granted."  Oppo. at 10.

3  Defendants assert that the training materials that are in question are not within the scope
4  of permissible discovery for two reasons.  Id. at 13.  First, these materials are irrelevant because
5  there is no Monell liability at issue in this matter as the County was dismissed as a defendant in
6  this case.  Id.  Second, many of the training materials the Plaintiff seeks were presented to the
7  individual Defendants after the allegations giving rise to the claims against these Defendants
8  occurred and therefore they cannot be relevant to any qualified immunity analysis.  Id. at 15.

## ANALYSIS

### A.   Relevancy

First, the Court will consider the relevancy of the discovery sought by Plaintiff because relevancy is a primary consideration when deciding a motion to compel discovery.  See Fed. R. Civ. P. 26 (b)(1). The Court has "broad discretion in determining relevancy for discovery purposes." Surfvivor Media, Inc. v. Survivor Productions, 406 F.3d 625, 635 (9th Cir. 2005). Plaintiff argues that the RFPs seek relevant information because the training materials impact whether Defendants are entitled to qualified immunity. MTC at 19.  Specifically, Plaintiff argues that "any training Defendants received regarding a parent's constitutional rights or the constitutional constraints they must follow, is relevant to the qualified immunity analysis" because these trainings would demonstrate "Defendants knew Plaintiff's constitutional rights, but acted with deliberate indifference in the face of those rights." Id. (citations omitted).

In response, Defendants argue that the trainings are not relevant because they occurred after the alleged constitutional violations and because Plaintiff has not established that the specific information contained within the trainings is relevant to the specific constitutional violations alleged by Plaintiff.  Oppo. at 15-17.  Defendants also assert that Plaintiff improperly relies on this Court's finding in Hipschman v. County of San Diego that similar training materials were relevant to the parties' claims and argue that this case is distinguishable from Hipschman because there are no Monell claims in the SAC.  Id. __ F.Supp.3d __, 2024 WL 3647061, at *3 (S.D. Cal. July 31, 2024) ("The Court finds that the training of County social workers, along with

corresponding materials, is relevant to the Plaintiff's Monell claim seeking to hold the County liable under a municipal liability theory.")

The Court agrees with Defendant that the Court's Hipschman ruling is inapplicable to the instant dispute and relevancy cannot be based on Monell. The Court therefore must consider whether the requested training materials are relevant to Defendants' potential affirmative defense of qualified immunity. A qualified immunity defense is only applicable to the three constitutional claims brought under 42 U.S.C. § 1983 and not to the causes of action brought under California state law. See Johnson v. Bay Area Rapid Transit Dist., 724 F.3d 1159, 1171 (9th Cir. 2013) ("[T]he doctrine of qualified immunity does not shield defendants from state law claims."). Accordingly, the Court will consider whether the materials at issue are relevant to the claims brought under the first three causes of action alleged in the SAC.

Qualified immunity protects government officials from liability for civil damages "if the plaintiff's rights were not clearly established at the time of the alleged misconduct." Ballentine v. Tucker, 28 F.4th 54, 64 (9th Cir. 2022) (citation omitted). As such, a plaintiff must show "(1) a violation of a constitutional right," and (2) that the right was "clearly established at the time of [the] defendant's alleged misconduct." Evans v. Skolnik, 997 F.3d 1060, 1064 (9th Cir. 2021) (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)). To determine if a right was clearly established, "[t]he relevant inquiry is whether, at the time of the officers' action, the state of the law gave the officers fair warning that their conduct was unconstitutional." Hope v. Pelzer, 536 U.S. 730, 741 (2002). The right an official is alleged to have violated must be "clearly established" in a particularized sense, such that any reasonable official would understand that their conduct violates that right. Anderson v. Creighton, 483 U.S. 635, 640 (1987). This standard does not consider the subjective knowledge of a government official but rather it is an objective standard to determine whether any reasonable officer in the same circumstances would have understood that their conduct violated a clearly established right. Because the standard evaluates knowledge at the time of the alleged violation, "cases decided after the relevant conduct are 'of no use in the clearly established inquiry.'" Evans, 997 F.3d at 1066 (citing Brosseau, 543 U.S. at 200, n. 4.).

In the SAC, Plaintiff alleges a Fourth Amendment violation for "unwarranted covert surveillance" of the parents while in the hospital room, First and Fourteenth Amendment violations for "deception in the presentation of evidence/false reporting," and Fourth and Fourteenth Amendment violations for "unwarranted, non-consensual medical procedures/examinations." SAC at 67-84. Of the three causes of action, the training materials at issue are only potentially relevant to the SAC's second cause of action which alleges "deception in the presentation of evidence/false reporting" and involves the alleged presentation of "deceptive evidence against a parent in the juvenile court proceedings." SAC at 78. The first and third causes of action raise claims of surveillance in the hospital room and non-consensual medical procedures. Plaintiff does not explain how or why the training materials at issue are relevant to these two causes of action or how these trainings would impact a qualified immunity argument since the trainings do not address the types of claims raised in the first and third causes of action.

Plaintiff claims that the presentations are relevant because the alleged violations occurred from "April 2019 until now" when "Paugh and Snyder intentionally [hid] material exculpatory evidence from Bill, Dana, and their counsel." Reply at 8 (citing SAC at 66.). While Plaintiff does not clearly articulate his position, this argument can only be applicable to the second cause of action which presents the claim that Defendants presented false evidence and reports in the juvenile court proceedings. The other two causes of action do not involve the alleged hiding of exculpatory evidence.

The second cause of action alleges that in March of 2019, the juvenile court judge ordered the Defendants to "produce all of its evidence" to Plaintiff. SAC at 66. Sometime shortly thereafter, Defendant Paugh is alleged to have personally delivered "what she claimed was the 'entire file.'" Id. at 67. In addition, Defendants Paugh and Snyder are alleged to have filed their last report to the juvenile court a "few days" after March 28, 2019. Id. On April 2, 2019, the juvenile court is alleged to have "accept[ed]" the report into evidence. Id. As a result, the conduct giving rise to the claims asserted in the second cause of action is alleged to have occurred in March and April of 2019. Seven of the eight trainings at issue in this motion occurred

after that time period (July 2019 or later) and are therefore not relevant to the Defendants' potential qualified immunity defense. Evans, 997 F.3d at 1066 (trainings that took place after the alleged constitutional violations are of no help to a "clearly established inquiry").

There is one training that is currently withheld that occurred prior to 2019 and therefore, may be relevant to the qualified immunity defense. See Oppo. at 17. This training is entitled "HS SS SWS SE as Witness – November 2016." Id. Training materials can be relevant, "although not dispositive, to determining whether reasonable officers would have been on notice that their conduct was unreasonable." Vasquez v. County of Kern, 949 F.3d 1153, 1164-65 (9th Cir. 2020) (citing Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1062 (9th Cir. 2003)). The Court will address this training in the following sections.

For the reasons set forth above, the Court finds that Plaintiff has not established that the trainings that occurred after April 2019 are relevant to the qualified immunity analysis. Plaintiff also has not established relevance on any other basis. Accordingly, the Court DENIES Plaintiff's motion to compel the PowerPoint presentations at issue, with the exception of the "HS SS SWS SE as Witness – November 2016" presentation.

B.  Waiver

Plaintiff contends the Defendants waived the attorney-client privilege and work product protection on the following grounds: (1) the County of San Diego previously disclosed iterations of the withheld materials to third parties; (2) the Defendants waived the privilege objections by implication; (3) the privilege log was insufficient to show who received the training materials; and (4) their objections were untimely. Mot. at 10-14.

1. Express Waiver

First, Plaintiff argues that the Court should find that these individual Defendants waived these privileges because the "County repeatedly demonstrated a disregard for the privilege" and the County produced these trainings in previous litigation. MTC at 16—17. Plaintiff provides no authority for finding that the individual Defendants waived their privilege objections because the County, who is not part of this action, potentially provided these materials, or similar materials, in other litigation that did not involve the individual Defendants. Id. Accordingly, the Court

rejects this argument.

### 2. Waiver by Implication

Second, Plaintiff argues that the individual Defendants waived the attorney-client privilege by implication. The Ninth Circuit has established that the attorney-client privilege cannot be used both as a "sword and a shield." Bittacker v. Woodford, 331 F.3d 715, 719 (9th Cir. 2003). In Bittacker, the Ninth Circuit held that a party may not abuse the attorney-client privilege by asserting claims that the opposing party cannot adequately dispute without access to the privileged materials. Id. Plaintiff argues that "[u]nder the fairness principle, Defendant[s] have waived the attorney-client privilege – if any – to the withheld training materials." MTC at 18. Plaintiff does not cite to the relevant Ninth Circuit authority establishing the "fairness principle."

"Where a party raises a claim which in fairness requires disclosure of the protected communication, the attorney-client privilege may be waived." United States v. Amlani, 169 F.3d 1189, 1195 (9th Cir. 1999) (citation omitted). Under Ninth Circuit law, finding an implied waiver requires that: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. 3D Systems, Inc. v. Wynne, 2024 WL 940318, *5 (S.D. Cal. Feb. 21, 2024) (citing Hearn v. Wray, 68 F.R.D. 574, 581 (E.D. Wash. 1975)). Initially, the Court finds that Plaintiff has not established the first element as he provides no legal authority for the proposition that the Defendants' answer asserting an affirmative defense of qualified immunity constitutes the required affirmative act. The Court also finds that Plaintiff has not satisfied the third element as he has not established that the training material is "vital to his defense," that is, it is vital to defeat a claim by Defendants that they are entitled to qualified immunity.

As set forth above, the qualified immunity defense is based on an objective standard that focuses on what a reasonable officer should have known at the time of the alleged violations. Plaintiff can adequately raise an argument that the Defendants are not entitled to qualified

1  immunity without the requested PowerPoint presentations because he need only show that a
2  reasonable officer would have understood that Defendants' conduct violated "clearly established
3  statutory or constitutional rights of which a reasonable person would have known." Kinsela v.
4  Hughes, 584 U.S. 100, 104 (2018) (citation omitted.)  While training materials may be relevant,
5  they are "not dispositive to determine whether reasonable officers would have been on notice
6  that their conduct was unreasonable" for qualified immunity purposes.  Vasquez v. County of
7  Kern, 949 F.3d 1153, 1165 (9th Cir. 2020).

        Accordingly, the Court rejects this argument.

### 3. Privilege Log

Third, Plaintiff claims that the privilege log submitted by the Defendants is insufficient to assert the privilege because it fails to "identify 'all individuals listed as receiving a copy of the document and their relationship to the County' and 'any other individuals to whom the document was disseminated and their relationship to the County.'" MTC at 18 (citing Greer v. Cnty of San Diego, 634 F.Supp.3d 911, 921 (S.D. Cal. 2022). Plaintiff's argument once again impliedly incorporate the involvement of the County in this discovery response. The County is not part of this action and Plaintiff did not propound this discovery on the County. See ECF Nos. 103-105. Here, the individual Defendants are alleged to have received this training which was prepared by County Counsel, see Rae Declaration, and Plaintiff provides no basis from which this Court could find that the individual Defendants would know other individuals to whom the County potentially disseminated this information and their relationship to the County.

Accordingly, the Court finds that the privilege log submitted by Defendants is not deficient.

### 4. Timeliness

Finally, Plaintiff argues that Defendants' objections based on attorney-client privilege and attorney work product are waived because they were not timely raised. MTC at 15-16. Plaintiff briefly raises the issue of timeliness of the relevancy objection but the argument contained in his motion only addresses timeliness of the assertion of attorney-client privilege. Id. Defendants argue that to the extent that any of their objections were untimely, the Court should find that

1  good cause exists to excuse a failure to timely object. Oppo. at 13 (citing In re Outlaw
2  Laboratories, LP Litig., 2020 WL 1674552, at *8 (S.D. Cal. Apr. 6 2020).

3  Generally, "a failure to object to discovery requests within the time required constitutes
4  a waiver of any objection." Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473
5  (9th Cir. 1992). However, Rule 33, which is applicable to interrogatories, permits courts to
6  excuse a party's failure to timely assert objections "for good cause." Fed. R. Civ. P. 33(b)(4).
7  Although Rule 34 does not contain an analogous express "good cause" exception, courts
8  "generally agree that there is no reason to treat waiver under Rule 34 any different than Rule
9  33." Ocean Garden Prod. Inc. v. Blessings Inc., 2020 WL 4284383, at *1 (D. Ariz. July 27, 2020)
10 (quoting Liguori v. Hansen, 2012 WL 760747, at *12 (D. Nev. Mar. 6, 2012)). Accordingly, courts
11 "retain discretion to relieve a late or non-responding party from the potentially harsh
12 consequences associated with waiver." Liguori, 2012 WL 760747, at *11.

13 Defendants assert that they spent several months in the meet and confer process, as
14 evidenced in the declaration of Plaintiff's counsel, attempting to "narrow and refine the nature
15 of the dispute at issue." Oppo. at 13. In fact, the parties were able to resolve some of their
16 differences as shown by the Defendants withdrawing their objections and agreeing to produce
17 some of the material in dispute. Id. at 7. It also appears that individuals Defendants' initial
18 responses to this discovery indicated that they did not possess the responsive documents and
19 that it was through the meet and confer process that they were able to obtain some of these
20 documents from the County. See Exs. AA-DD. Therefore, it is reasonable that their objections
21 would change following this meet and confer process and obtaining the material that they did
22 not initially possess.

23 For these reasons, the Court finds that good cause exists to excuse Defendants' untimely
24 objections to Plaintiff's discovery requests and therefore, the Court finds that Defendants'
25 attorney-client and relevancy objections are not waived.

26     C.    <u>Attorney-Client Privilege</u>

27 The Court turns to the final PowerPoint presentation that the Defendants argue is
28 protected from disclosure by attorney-client privilege and the attorney work product doctrine.

1  This presentation is titled "HS SS SWS SW As Witness – November 2016." Oppo. at 7. The
2  attorney-client privilege protects confidential communications between attorneys and clients,
3  which are made for the purpose of giving legal advice. The party asserting the attorney-client
4  privilege has the burden of establishing the relationship and privileged nature of the
5  communication. United States v. Ruehle, 583 F.3d 600, 607 (9th Cir. 2009) (citing United States
6  v. Munoz, 233 F.3d 1117, 1128 (9th Cir. 2000)). The attorney-client privilege exists where: (1)
7  legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such,
8  (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6)
9  are at his instance permanently protected (7) from disclosure by himself or by the legal adviser,
10 (8) unless the protection be waived. See United States v. Richey, 632 F.3d 559, 566 (9th Cir.
11 2011) (internal citations and quotation marks omitted).

12       Plaintiff argues that this Court should find the presentation is not privileged based on its
13 previous ruling in Hipschman v. County of San Diego, in which this Court found that the County
14 of San Diego had failed to meet their burden to show that the training materials in dispute were
15 protected by attorney-client privilege because the "declaration of counsel for the County [was]
16 insufficient to establish the applicability of the attorney-client privilege as it is a conclusory
17 statement without any specific details or references to any of the PowerPoint presentations and
18 training materials." Id., 2024 WL 3647061, at *6 (S.D. Cal. July 31, 2024) ("Hipschman I").
19 The Court's first ruling on the training materials in Hipschman is not instructive in this dispute.
20 Instead, it is the following ruling in Hipschman issued on the plaintiff's second motion to compel
21 training documents that is more applicable to this dispute. See Hipschman v. County of San
22 Diego, 2024 WL 5081631 (S.D. Cal. Dec. 11, 2024) ("Hipschman II"). In Hipschman II, in
23 response to the second motion filed by the plaintiffs, the County provided a declaration from
24 Caitlin Rae, Assistant County Counsel, which this Court found, unlike the first declaration filed
25 by County Counsel, established "that the training materials currently at issue were prepared and
26 presented by attorneys providing legal advice to social workers to avoid prospective litigation."
27 Id. at *5.
28 / / /

As was the case in Hipschman II, the individual Defendants in this matter have also supplied the Declaration of Caitlin Rae, Assistant County Counsel,[3] which establishes that the training materials currently at issue were prepared and presented by attorneys providing legal advice to social workers to avoid prospective litigation. Decl. of Caitlin Rae in Supp. of Oppo. to Mtn. to Compel, ECF No. 267-1 ("Rae Decl.").

In this declaration, Ms. Rae explains that in 2015 the County "created a position of 'embedded' attorney within the Office of County Counsel to bolster its support and training of County social workers." Rae Decl. at ¶ 2. Ms. Rae personally served in the role of "embedded attorney" from November of 2015 to 2019. Id. at ¶ 3. She also served as "Chief Deputy overseeing the entire Juvenile Dependency division of the Office of County Counsel from 2019 to 2022." Id. She explained that the primary purpose of the embedded attorney was to provide legal advice to social workers "with the purpose of minimizing legal exposure, decrease civil suits and reduce civil liability." Id. The duties of the embedded attorney required them to "develop, prepare and present trainings to County social workers to avoid prospective litigation." Id. at ¶ 4. The trainings were considered to be "confidential attorney-client privileged communications and attorney work product" and were maintained by the Office of County Counsel. Id. They were not shared with parties outside the County Counsel's office or individuals other than the social workers who attended the trainings. Id. Ms. Rae attests that the PowerPoint presentation at issue, "HS SS CWS SW As Witness November 2016" was prepared by a County Counsel attorney and presented by County Counsel to County social workers "with respect to testifying and case presentation in juvenile dependency proceedings and trial, and if necessary, for depositions in related civil litigation." Id. at ¶ 5(a).

///

---

[3] Plaintiff has filed objections to several paragraphs of Ms. Rae's Declaration in which she declares that she is "not aware of any of the above-mentioned documents being produced or disclosed in prior litigation or this pending litigation." Pl.'s Obj. to Rae Decl., ECF NO. 268-1. However, the Court has already determined that the issue of the County potentially disclosing this information in other litigation is not relevant to the motion before this Court seeking documents from individual Defendants. Accordingly, Plaintiff's objections are overruled.

As a result, the individual Defendants have provided sworn testimony establishing that the document currently being withheld was prepared by attorneys whose duties include developing, preparing, and presenting "trainings to County social workers to avoid prospective litigation" and whose "primary purpose is to "advise County social workers with the purpose of minimizing legal exposure, decrease civil suits and reduce civil liability based on trends in litigation and emerging case law." Id. at ¶¶ 2, 3.

In the moving papers, as well as the Reply, Plaintiff argues that the County's own Rule 30(b)(6) witness testified in the Hipschman matter that the "trainings do not discuss specific cases, ongoing litigation, or matters that could lead to litigation involving the County or its employees." Reply at 12 (citing Pullman Decl., Ex. F. ECF No. 264-9, 10:21 - 12:12; 24:6-14; 23:20-25; 26:11-21.) Exhibit "F" to Mr. Pullman's declaration consists of excerpts from a deposition transcript of Tara Motley, an employee of the County of San Diego whose title is "Protective Services Program Manager for the Child and Family Well-Being Department." ECF No. 264-9. However, Plaintiff's argument that this deposition testimony contradicts the declaration of Ms. Rae and shows that the trainings do not involve discussions or information that are protected by the attorney-client privilege or work product doctrine is not supported by the testimony itself. Instead, this testimony shows that Ms. Motley was specifically asked questions about the "Social Worker Initial Training" or "SWIT" and the presentations titled "Legal Liabilities." Id. These trainings are not the training that remains at issue here. The Defendants have already agreed to produce the trainings discussed by Ms. Motley. See Oppo. at 17. There is no testimony by the County identified by Plaintiff that the remaining withheld training materials support their assertion that these trainings are "general and merely [] teach case workers their duties." MTC at 10.

The Court has considered Ms. Rae's declaration and finds that it adequately sets forth facts establishing the elements of the attorney-client privilege and therefore the remaining PowerPoint presentation is protected by the privilege.

///
///

### D. Attorney Work Product

Plaintiff also argues that the attorney work product doctrine does not apply to the training materials because "work product only applies to material that would not have been generated but for the pendency or imminence of litigation." MTC at 12 (citing Greer[4], 634 F.Supp.3d at 918.)

The work product doctrine is not a privilege but a qualified immunity that "protects from discovery in litigation 'mental impressions, conclusions, opinions, or legal theories of a party's attorney' that were 'prepared in anticipation of litigation or for trial.' " ACLU of N. Cal. v. U.S. Dep't of Justice, 880 F.3d 473, 483 (9th Cir. 2018) (quoting Fed. R. Civ. P. 26(b)(3)). "Shielding from discovery materials prepared 'with an eye toward the anticipated litigation' protects the integrity of adversarial proceedings by allowing attorneys to prepare their thoughts and impressions about a case freely and without reservation." Id. at 484. "To qualify for work-product protection, documents must: (1) be 'prepared in anticipation of litigation or trial' and (2) be prepared 'by or for another party or by or for that other party's representative.' " Richey, 632 F.3d at 567 (citation omitted).

Here, Ms. Rae attests that the materials currently being withheld were prepared by attorneys who created the materials and presented these trainings for the purpose of "avoid[ing] prospective litigation." Rae Decl. at ¶ 4. Ms. Rae also notes that Plaintiffs have asked for these materials in their "native form" but if they were to provide these materials in that form, it would "reveal the context of the legal advice and strategies provided to social workers by attorneys." Id. at ¶ 6. As an example, according to Ms. Rae, the "notes" section of the PowerPoint documents "contain the mental impressions of the embedded attorneys who created the presentations." Id. In addition, the documents "include interpretation of the law and legal strategies used to defend from current and future civil and dependency litigation." Id.

///

---

[4] In reversing the district court's finding that there was no attorney-client privilege, the Ninth Circuit determined that it "need not and do not consider the work product doctrine." Greer, No. 23-55607 at fn. 1.

The Court finds that Defendants have sufficiently met their burden to establish that the training materials at issue, including the materials in their "native form," are protected by the attorney work product privilege.

F. <u>In Camera Review</u>

Finally, Plaintiff argues that this Court should conduct an <u>in camera</u> review of the documents withheld by Defendants. MTC at 20. For the reasons set forth above, the Court is able to resolve the motion based on briefing and finds no need to review the documents withheld by Defendants. Accordingly, the Court declines to review the documents <u>in camera</u>.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion to compel, ECF No. 264, is **DENIED**.

Dated: 3/11/2025

Hon. Barbara L. Major
United States Magistrate Judge