

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MADISON MEYER,

                           Plaintiff,

v.

COUNTY OF SAN DIEGO, et al.,

                          Defendants.

Lead Case No.: 21-cv-341-RSH-BLM

**ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF MADISON MEYER'S THIRD AMENDED COMPLAINT**

[ECF No. 285]

     Before the Court is Defendants' motion to dismiss plaintiff Madison Meyer's Third Amended Complaint (ECF No. 283, "TAC") under Federal Rule of Civil Procedure 12(b)(6). ECF No. 285. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the motion presented appropriate for resolution without oral argument. For the reasons below, the Court grants in part and denies in part the motion.

## I.    BACKGROUND

     The instant case arises from the alleged unauthorized video surveillance of plaintiff Madison Meyer and her family at Rady Children's Hospital–San Diego ("Rady's").

///

///

## A.    The Parties

Plaintiff names multiple defendants in this action separated into two groups. The first group comprises the County of San Diego ("County") and its alleged officers, agents, or employees: Kayla Valenzuela, Catherine Craft, Tiffany Paugh, Tami Snyder, Karli Cox, Timothy Harris, Heather Molzen, Angela Duffy, Rodney Byrd, and Pam Hurd (collectively, the "County Defendants").

The second group comprises Rady's and its alleged officers, agents, or employees: Elizabeth Reese, Shalon Nienow, Tia Luber, Andrew Skalsky, Willough Jenkins, Tamara Maginot, Melissa Lambing, Emily Holland, Susan Biffl, Rebecca Harvard, Carissa Menard, Daisy Dorantes, Jessica Robershaw, Eka Patel, and Gail Knight (collectively, the "Rady Defendants").[1]

## B.    Plaintiff's Allegations

Plaintiff's TAC alleges as follows.[2]

### 1.    Plaintiff's Diagnosis and Treatment

In February 2017, Plaintiff was diagnosed with Ehlers-Danlos syndrome, Hypermobile type. TAC ¶ 86. Between 2017 to 2018, Plaintiff was treated by multiple physicians at different hospitals, including at Rady's. *Id.* ¶¶ 87–106.

### 2.    First Hotline Referral and Investigation

On December 13, 2018, the County received a hotline referral from a third party accusing Plaintiff's mother of abusing her. *Id.* ¶¶ 106–107. Defendant Valenzuela was assigned to investigate. *Id.* ¶ 107. During her investigation, Valenzuela interviewed the

---

[1]    The Parties dispute whether certain individuals Plaintiff identifies as Rady's employees are public employees of the Regents of the University of California ("Regents") instead. *Compare* TAC ¶¶ 6–48 *with* 285-1 at 7. As this dispute does not affect the Court's resolution of the instant motion, the Court adopts the grouping set forth in Plaintiff's TAC.

[2]    The facts as alleged in this case were set forth in the Court's prior February 10, 2025 order on Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint. ECF No. 270 at 2–7. For completeness, the Court repeats this background and supplements it with relevant additional allegations set forth in Plaintiff's TAC.

reporting party,[3] Plaintiff, Plaintiff's parents, and one of Plaintiff's physicians. *Id.* ¶¶ 108–111.

On December 20, 2018, Valenzuela allegedly enlisted the assistance of defendant Nienow, a member of Rady's Child Protection Team,[4] to "drum up evidence of abuse." *Id.* ¶¶ 32, 112. On January 8, 2019, based upon a review of limited medical records, Dr. Nienow told Valenzuela that Plaintiff was "malingering and lying about some of her symptoms." *Id.* ¶ 118. At the time, Dr. Nienow had not spoken to Plaintiff, her parents, or any of Plaintiff's treating physicians. *Id.*

A few days later, on January 11, 2019, Dr. Nienow provided Valenzuela with a Paper Consult. *Id.* In the Paper Consult, Dr. Nienow allegedly misstated the contents of Plaintiff's medical records to support a hypothesis Plaintiff was malingering and being enabled by her parents. *Id.* ¶ 119. As one example, the Paper Consult falsely reported Plaintiff's parents had pushed for Plaintiff to undergo invasive procedures and to be given intravenous pain medications against recommendations. *Id.* ¶ 120.

Between January 8 and January 23, 2019, Valenzuela spoke with several of Plaintiff's other physicians, none of whom expressed concerns regarding Plaintiff's parents. *Id.* ¶¶ 122–27. On January 23, 2019, Valenzuela closed her investigation as inconclusive. *Id.* ¶ 131. She notified Plaintiff's parents of the closure on February 15, 2019. *Id.*

///

///

---

[3]    According to Plaintiff, the reporting party's identity is currently redacted from the records Plaintiff possesses. TAC fn.17.

[4]    Rady's Child Protection Team is a "multidisciplinary team of individuals who provide a centralized, coordinated, and comprehensive multidisciplinary response to child abuse allegations and investigations, serving as a liaison between the medical professionals and the County investigators, participating in multidisciplinary team meetings, and making recommendations related to child abuse and/or neglect investigations." TAC ¶ 26.

### 3.  Surveillance of Plaintiff and her Parents

Between January 23 and January 29, 2019, Dr. Nienow and defendant Reese, another member of Rady's Child Protection Team, met multiple times to discuss how to best "develop evidence" Plaintiff was faking her symptoms so that Valenzuela would have evidence to support an application for a juvenile court to remove Plaintiff from her parents' care. *Id.* ¶¶ 30, 132. Dr. Nienow, Reese, and Valenzuela agreed on a plan to covertly record Plaintiff and her parents while at Rady's. *Id.* ¶¶ 132–34. Valenzuela consulted with her supervisor, defendant Craft, who referred the matter to defendant Hurd, who approved. *Id.* ¶¶ 135–37.

On January 29, 2019, Plaintiff was readmitted to Rady's and placed in a room equipped with two cameras. *Id.* ¶¶ 139, 141. From January 29 to March 7, 2019, Plaintiff and her family were covertly recorded. *Id.* ¶¶ 138, 141. No warrant, court order, or consent was obtained authorizing this surveillance. *Id.* ¶ 140. Plaintiff did not discover she had been recorded until May 2019. *Id.* ¶ 141.

### 4.  Second Hotline Referral and Investigation

On January 31, 2019, defendant Reese, guided by Dr. Nienow, called the County's child abuse hotline claiming Plaintiff's parents had Munchausen by proxy,[5] that Plaintiff was falsely claiming she was having seizures and was blind, and that Plaintiff could dislocate her own arms on purpose. *Id.* ¶¶ 146–47.

Valenzuela was assigned to investigate this second referral. *Id.* ¶ 148. Between February 4 and March 7, 2019, Valenzuela, Craft, Dr. Nienow, and Reese communicated multiple times on how to obtain a juvenile court order removing Plaintiff from her parents' care. *Id.* ¶ 162. To this end, on February 12, 2019, Dr. Nienow prepared a Record Review Update that stated, among other things, that Plaintiff's parents were guilty of "medical

---

[5]    "Munchausen by proxy is a form of child abuse in which a parent induces real or apparent symptoms of a disease in a child." *B.S. v. Somerset Cty.*, 704 F.3d 250, 254 n.3 (3d Cir. 2013) (internal quotation marks omitted).

child abuse" and that separation from her parents was essential to preserve Plaintiff's life. *Id.* ¶¶ 167, 174.

On March 6, 2019, Dr. Nienow provided another report to Valenzuela stating, among other things, that to prevent Plaintiff from dying, it was imperative that Plaintiff's parents be removed from Rady's. *Id.* ¶¶ 176–77. The report further stated Plaintiff's parents had pushed for Plaintiff to undergo numerous, invasive, and potentially dangerous procedures. *Id.* ¶ 177. At this point, Dr. Nienow and Reese had allegedly already reviewed the videos taken of Plaintiff and her family and found nothing to support Dr. Nienow's conclusions. *Id.* ¶ 178.

### 5.    *First Juvenile Court Petition*

On March 7, 2019, Valenzuela filed a dependency petition, protective custody warrant, and detention report with the juvenile court. *Id.* ¶¶ 182–199. The documents allegedly contained several false statements, including that the Plaintiff had been diagnosed with disorders requiring mental health treatment, which her parents refused to acknowledge, and that they were subjecting her to harmful and unnecessary medical procedures. *Id.* The documents also omitted various pieces of exculpatory information. *Id.*

On the same day, the juvenile court issued a warrant and Plaintiff's father was removed from Rady's. *Id.* ¶¶ 200–203. Plaintiff's father was given papers indicating there would be a juvenile court hearing the next morning to determine whether Plaintiff would continue to be kept from her parents' care. *Id.* ¶ 202.

### 6.    *Juvenile Court Detention Hearing*

On March 8, 2019, the juvenile court held a detention hearing and determined a *prima facie* showing had been made that Plaintiff had been abused, that continued parental custody was contrary to Plaintiff's welfare, and that there were no less intrusive means to protect her. *Id.* ¶ 204. Based on these findings, the juvenile court ordered that Plaintiff's care be vested with the County. *Id.* ¶ 205. The detention hearing was then continued to March 11, 2019. *Id.* ¶ 206.

///

Prior to the continued hearing, Valenzuela and Craft prepared a short addendum falsely claiming that Plaintiff's parents were attempting to transfer her to a different hospital to circumvent the juvenile court's order. *Id.* ¶ 209. At the March 11, 2019 hearing, the juvenile court accepted the addendum into evidence and found the continued separation of Plaintiff from her parents was appropriate, but allowed Plaintiff's parents supervised visits once a week with a monitor selected by the County's Health and Human Services Agency ("HHSA"). *Id.* ¶¶ 210, 212. The juvenile court also ordered that a medical plan that Dr. Nienow put forward be implemented. *Id.* ¶ 210. Any deviation from this plan, however, would require further notice to Plaintiff's parents, an opportunity for them to be heard, and further court orders. *Id.*

### 7. *Transfer of Plaintiff's Dependency Case*

On or about March 15, 2019, Valenzuela transferred Plaintiff's dependency case to defendant Paugh. *Id.* ¶¶ 65, 213–14. Paugh and her supervisor, defendant Snyder, then assumed management and both reviewed the Contact Notes/Delivered Services Logs associated with Plaintiff's case. *Id.* ¶¶ 65, 214.[6]

On March 28, 2019, Paugh and Snyder drafted and signed a Jurisdiction/Disposition Report to the juvenile court that was filed a few days later. *Id.* ¶¶ 221, 225. Although Paugh and Snyder were aware of previously undisclosed exculpatory information from their review of the Contact Notes/Delivered Service Logs, they did not include this information in their report. *Id.* ¶ 223. Instead, Paugh and Snyder allegedly "embellished the accusations" against Plaintiff's parents further, including stating that covert video surveillance showed Plaintiff was fabricating her symptoms. *Id.* ¶¶ 65, 224.

On April 2, 2019, the juvenile court held another hearing, accepted the Jurisdiction/Disposition Report into evidence, and separated Plaintiff from her parents for an additional ten months. *Id.* ¶ 226.

---

[6]    Contact Notes/Delivered Services Logs are records related to child welfare services that all County HHSA employees are trained to complete. FAC fn. 30.

### 8.     Additional Medical Procedures

Around April 2019, Plaintiff began having difficulties swallowing and was unable to eat consistently. *Id.* ¶ 238. Between April 2019 and June 2020, Plaintiff was subjected to an invasive swallow test, electrocardiogram, renal function panel, plasma renin test, KUB procedure, serial cast on her left leg, and an increase in her medical behavioral unit treatments. *Id.* ¶¶ 238. These procedures were performed without the knowledge or consent of Plaintiff's parents or a court order authorizing a non-emergency procedure. *Id.*

In addition, multiple representatives of Rady's also allegedly subjected Plaintiff to "intensive unwarranted and non-consensual psychological manipulation" designed to implant false memories of sexual abuse in Plaintiff's mind. *Id.* ¶ 239. These included the use of "suggestive questioning, coercive persuasion, confidence trick[s], deception, psychological manipulation [and] hypnosis." *Id.*

### 9.     Juvenile Court Trial

On February 5, 2020, trial proceedings in the juvenile court concluded. *Id.* ¶ 252. The juvenile court dismissed Valenzuela's petition and released Plaintiff back into the custody of her parents. *Id.* In so doing, the juvenile court noted every medical decision made by Plaintiff's parents was done in consultation with and under the direction and supervision of Plaintiff's treating physicians who, given their own ethical obligations, would have declined to perform any unnecessary or unwarranted procedures. *Id.* The juvenile court allegedly found that many of the allegations against Plaintiff's parents were not true and that the manner in which Plaintiff and her parents had been covertly recorded was an "unbelievable invasion of privacy." *Id.* ¶¶ 253, 255.

After the juvenile court proceedings, Plaintiff remained hospitalized. During this period, employees and agents of the County and Rady's continued to interfere with Plaintiff and her family without legal authority, including by limiting Plaintiff's visitation time with her parents, subjecting Plaintiff to unwarranted medical procedures without parental knowledge or Plaintiff's consent, and restricting Plaintiff's and her parents' access to her medical records. *Id.* ¶¶ 258–261.

### 10.    Suicide Attempt and Second Juvenile Court Petition

In late February 2020, Plaintiff disclosed "externally constructed false memories of sexual abuse" by her father. *Id.* ¶ 264. Plaintiff also reported to defendant Dorantes that an employee at another hospital had groped and verbally assaulted her. *Id.* ¶ 266. No follow-up action was taken on this report. *Id.* Subsequently, on June 16, 2020, Plaintiff attempted to commit suicide. *Id.* ¶ 268.

On June 26, 2020, defendant Molzen filed a second petition with the juvenile court falsely alleging that Plaintiff had extensive mental health needs and anxiety regarding returning to the care of her parents. *Id.* ¶¶ 268–271. During the contested hearing on this second petition, Plaintiff's parents stipulated to the juvenile court's jurisdiction to prevent Plaintiff from being ejected from her short-term residential treatment program. *Id.* ¶¶ 273–74. On May 4, 2021, the juvenile court terminated Plaintiff's reunification with her parents. *Id.* ¶ 275.

### C.    Procedural Background

### 1.    Consolidation of Meyer I and Meyer II

On February 25, 2021, Plaintiff's parents initiated an action on behalf of Plaintiff, then a minor, against the County of San Diego, the HHSA, Rady's, Regents, and individuals associated with these entities. *Meyer et al. v. County of San Diego, et al.*, 21cv341 ("*Meyer I*"). On August 29, 2023, Plaintiff, now a legal adult, initiated a separate action against Defendants in California Superior Court. *Meyer v. County of San Diego*, 24cv438 ("*Meyer II*"), ECF No. 1 at 5–115. On March 6, 2024, Defendants removed Plaintiff's action to this Court based on federal question jurisdiction. *Id.* at 3. On April 24, 2024, the Court granted Defendants' motion to consolidate the *Meyer I* and *Meyer II* cases. *Meyer II*, ECF No. 14 at 6.[7]

---

[7]    Both the *Meyer I* and *Meyer II* cases arise from the same set of facts: the surveillance of Plaintiff and her family during at Rady's and evidence subsequently presented to the juvenile court.

### 2.    Motion to Dismiss Plaintiff's FAC

On June 3, 2024, Plaintiff filed her FAC in the Consolidated Action. *Meyer I*, ECF No. 235.[8] The FAC asserted eleven causes of action, including various federal civil rights claims under 42 U.S.C. § 1983 against the individual Defendants and against the County and Rady's under *Monell*. FAC ¶¶ 277–329, 349–456. The FAC also asserted a claim for disability discrimination under the Americans with Disabilities Act ("ADA") and Rehabilitation Act and state law claims for violation of California's Unruh Civil Rights Act, violation of California Health and Safety Code §§ 123110 and 123120, and violation of Article I, § 1 of the California Constitution. *Id.* ¶¶ 330–48; 457–76.

On July 12, 2024 Defendants filed a motion to dismiss Plaintiff's FAC. ECF No. 242. On February 10, 2025, the Court granted in part and denied in part Defendants' motion. ECF No. 270.

### 3.    Motion to Dismiss Plaintiff's TAC

On February 21, 2025, pursuant to the Parties' request, the Court entered a modified briefing schedule setting deadlines for Plaintiff to file a Second Amended Complaint and Defendants to file a motion to dismiss. ECF No. 274 at 2.[9] On March 10, 2025, Plaintiff filed her Second Amended Complaint. ECF No. 276.

---

[8]    Although the cases are consolidated, the claims brought by Plaintiff's parents are still governed by their own complaint. *See Hall v. Hall*, 584 U.S. 59, 70 (2018) ("[C]onsolidation is permitted as a matter of convenience and economy in administration but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.") (internal quotation marks omitted); *Schnall v. Proshares Tr.*, No. 09 CIV. 6935 (JGK), 2010 WL 1962940, at *2 (S.D.N.Y. May 17, 2010) ("Consolidation means that the litigation will be consolidated, not that [plaintiffs] will lose their individual claims.").

[9]    Defendants are cautioned that even in circumstances where the Court has entered a briefing schedule on an anticipated motion, the Parties are expected to comply with the Court's Civil Chambers Rules, including the Court's meet and confer requirements. *See* Civil Chamber Rules III.A. Future motions that fail to meet this requirement will be stricken.

On April 1, 2025, the Court granted the Parties' joint request to allow Plaintiff to file a TAC to substitute one of the Doe defendants with defendant Hurd. ECF No. 282 at 1. On April 3, 2025, Plaintiff filed her TAC. ECF No. 283. The TAC asserts the same causes of action as Plaintiff's FAC, excluding Plaintiff's claim for violation of Article I, § 1 of the California Constitution. *Compare* FAC *with* TAC.

On April 14, 2025, Defendants filed a motion to dismiss Plaintiffs' TAC. ECF No. 285. Plaintiff filed a response and Defendants filed a reply. ECF Nos. 286, 287.

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The plausibility review is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Pleading facts "'merely consistent with' a defendant's liability" falls short of a plausible entitlement to relief. *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks omitted). A court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

///

///

## III.    DISCUSSION

### A.    Individual Section 1983 Claims

#### 1.    Generally

"The Civil Rights Act codified in 42 U.S.C. § 1983 provides a cause of action against state officials who deprive a plaintiff of her federal constitutional rights." *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023). "Section 1983 does not create any substantive rights; rather it is the vehicle whereby plaintiffs can challenge actions by governmental officials." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). "To prove a case under section 1983, the plaintiff must demonstrate that (1) the action occurred 'under color of state law' and (2) the action resulted in the deprivation of a constitutional right or federal statutory right." *Id.* "[T]he statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff." *Kiger v. Johnson*, No. 223CV1263KJMDBP, 2024 WL 345978, at *2 (E.D. Cal. Jan. 30, 2024).

#### 2.    Personal Participation

Defendants move to dismiss Plaintiff's § 1983 claims against defendants Cox, Harris, Duffy, and Hurd, contending Plaintiff has not alleged sufficient facts to demonstrate how these defendants personally participated in the deprivation of her constitutional rights. ECF No. 285-1 at 18–20. Plaintiff responds that she has sufficiently alleged a judicial deception claim against defendants Cox, Harris, and Duffy and an invasion of privacy claim against defendant Hurd. ECF No. 286 at 21–23.

##### a.    Defendant Cox, Harris, and Duffy

In its February 20, 2025 Order, the Court dismissed Plaintiff's § 1983 claims against defendants Cox, Harris, and Duffy, holding Plaintiff had improperly grouped its allegations against these defendants. ECF No. 270 at 14–16. Plaintiff's TAC continues to group defendants Cox, Harris, and Duffy with multiple other named and unnamed defendants who allegedly employed techniques designed to implant Plaintiff with false memories of sexual abuse. *See* TAC ¶ 239.

11

As the Court previously held, "[s]uch general and conclusory allegations against an indistinguishable group of defendants does not demonstrate a causal link between any *individual* defendant's conduct and an alleged constitutional violation, and therefore are insufficient to state a viable Section 1983 claim against any of the defendants." *White v. Los Angeles Cnty.*, No. CV 18-1756 JAK(JC), 2018 WL 6074524, at *4 (C.D. Cal. June 8, 2018) (emphasis in original); *see Williams v. Cnty. of Los Angeles Dep't of Pub. Soc. Servs.*, No. CV 14-7625 JVS (JC), 2016 WL 8730914, at *5 (C.D. Cal. May 2, 2016), *report and recommendation adopted*, No. CV 14-7625 JVS(JC), 2016 WL 8737230 (C.D. Cal. May 20, 2016) ("Conclusory allegations that an indistinguishable group of defendants essentially engaged in identical misconduct . . . are insufficient to show that plaintiff is entitled to relief from any individual defendant").[10, 11]

For these reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's § 1983 claims against defendants Cox, Harris, and Duffy.

### b.    *Defendant Hurd*

Defendants contend Plaintiff's § 1983 claims against defendant Hurd should be dismissed, as Plaintiff did not specifically identify Hurd as a defendant under the headings of any of claims asserted in Plaintiff's TAC. ECF No. 285-1 at 20. Plaintiff responds the TAC sufficiently sets forth a claim against Hurd for violating Plaintiff's right to privacy. ECF No. 286 at 22–23.

"In a § 1983 action, the plaintiff must . . . demonstrate that the defendant's conduct was the actionable cause of the claimed injury." *Chaudhry v. Aragón*, 68 F.4th 1161, 1169

---

[10]    Defendant advances a similar contention with respect to defendant Byrd. ECF No. 285-1 at 18–20 The Court addresses this argument in its analysis of Plaintiff's judicial deception claim below. *See* Section III.A.3.

[11]    It is unclear if Plaintiff's argument that the TAC sufficiently pleads a judicial deception claim against defendants Cox, Harris, and Duffy was made in error. The TAC does not appear to assert a judicial deception claim against these defendants. *See* TAC at 91.

(9th Cir. 2023) (quoting *Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008)). "Such causation 'can be established' either 'by some kind of direct personal participation in the deprivation' or 'by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" *Id.* (quoting *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1044 (9th Cir. 1994)).

Here, Plaintiff has sufficiently alleged how Hurd personally participated in the violation of her constitutional right to privacy. Plaintiff alleges Hurd was a high level HHSA employee who approved of the plan formulated by defendants Nienow and Valenzuela to gather evidence against Plaintiff's parents using covert video surveillance. TAC ¶¶ 136, 138–39. According to the TAC, Hurd's participation and involvement was documented and recorded in Plaintiff's service logs. *Id.* ¶ 137. While the TAC does not identify Hurd under the heading of Claim 1, this omission appears inadvertent. ECF No. 286 at 23; *see Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983 ("[A] party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant.").

For these reasons, the Court **DENIES** Defendants' motion to dismiss Plaintiff's invasion of privacy claim (Claim 1) against defendant Hurd. The Court grants Defendants' motion to the extent Plaintiff is asserting any other claims against Hurd.

### 3.    *Judicial Deception (Claim 2)*

In Claim 2 of her TAC, Plaintiff alleges that defendants Nienow, Reese, Valenzuela, Paugh, Snyder, Craft, Molzen, Holland, Dorantes, Luber, Skalsky, Maginot, Menard, Byrd, Harvard, and Robershaw violated her "clearly established" right to familial association by presenting deceptive evidence to the juvenile court. TAC ¶¶ 291–301.

#### a.    *Generally*

"Parents and children have a well-elaborated constitutional right to live together without governmental interference. That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency." *Hardwick v. Cnty. of Orange*,

844 F.3d 1112, 1116 (9th Cir. 2017). "[A]s part of the right to familial association, parents and children have a right to be free from judicial deception in child custody proceedings and removal orders." *David v. Kaulukukui*, 38 F.4th 792, 800 (9th Cir. 2022) (internal quotation marks omitted).

To state a plausible claim for judicial deception, a plaintiff must allege: "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1147 (9th Cir. 2021). Judicial deception claims must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to allege "the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false." *Id.* at 1145 (internal quotation marks omitted).

### b.    Analysis

In its February 10, 2025 Order, the Court denied Defendants' motion to dismiss Plaintiff's judicial deception claim against defendants Nienow, Reese, Valenzuela, Paugh, Snyder, Craft, and Molzen and granted Defendants' motion with respect to defendants Holland, Dorantes, Luber, Skalsky, Maginot, Menard, Byrd, Harvard, and Robershaw, holding Plaintiff had not sufficiently alleged how these defendants personally participated in the deprivation of her constitutional rights. ECF No. 270 at 13–16; 23–27. In the instant Motion, Defendants again move to dismiss Plaintiff's judicial deception claim against defendants Holland, Dorantes, Luber, Skalsky, Maginot, Menard, Byrd, Harvard, and Robershaw, contending Plaintiff has still not identified the purportedly false statements these defendants made or how they were material to the juvenile court's decision. ECF No. 285-1 at 11–13.

The Court agrees Plaintiff's allegations fall short of the particularity required. Plaintiff fails to sufficiently set forth what misrepresentations were made by these defendants and when. Plaintiff alleges defendant Robershaw "made several false reports" as to the "behavior of [Plaintiff's parents]" and that defendant Harvard similarly "made

several false reports" that Plaintiff's mom was "refusing treatments." TAC ¶ 296. Plaintiff does not, however, set forth the content of these "false reports" with any specificity or allege when they were made.

Plaintiff similarly alleges that defendant Byrd made a false report in March of 2020 stating that Plaintiff was "visibly anxious" about the prospect of returning home to her parents. *Id.* Again, the TAC lacks any detail as to the context in which these reports were made. Plaintiff does not allege, for instance; to whom these reports were submitted, or whether they were then provided to the juvenile court for its consideration. This lack of specificity does not allow the Court to conclude that Plaintiff has adequately pleaded materiality. *See Michelle K. v. Cnty. of Sonoma,* No. 22-CV-01202-AMO, 2025 WL 1684886, at *3 (N.D. Cal. June 16, 2025) (dismissing judicial deception claim where plaintiff failed to adequately plead "which particular misrepresentations were made . . . or that the juvenile court relied on those misrepresentations."); *Castaneda v. Cnty. of San Bernardino,* No. 5:23-CV-02246-MRA-JDE, 2024 WL 4224000, at *7 (C.D. Cal. Apr. 10, 2024) (dismissing judicial deception claim where plaintiff reported a defendant's reports "only generically, without identifying the context in which these reports were submitted or providing sufficient information from which the Court [could] reasonably infer that the juvenile court relied on misrepresentations in the report in reaching a judicial determination"), *report and recommendation adopted*, No. 5:23-CV-02246-MRA-JDE, 2024 WL 3815424 (C.D. Cal. Aug. 13, 2024).

Finally, Plaintiff claims she reported to defendant Dorantes that an employee at another hospital had groped and verbally assaulted her, but that Dorantes and defendants Luber, Menard, Holland, Skalsky and others failed to investigate. TAC ¶ 266. In the context of her judicial deception claim, however, Plaintiff does not explain how this information would have been relevant to the juvenile court's determination regarding alleged abuse by her *parents. See Castenada,* 2024 WL 4224000, at *7 ("[W]hile Plaintiffs complain that several defendants failed to submit various documents to the court, Plaintiffs have not

shown that the omission of these documents was material to the removal of Plaintiffs' children or their continued detention.").

For these reasons, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's judicial deception claim against defendants Holland, Dorantes, Luber, Skalsky, Maginot, Menard, Byrd, Harvard, and Robershaw.

### 4.    *Nonconsensual Medical Procedures (Claim 3)*

In Claim 3 of her TAC, Plaintiff alleges that defendants Nienow, Paugh, Snyder, Molzen, Patel, Maginot, Jenkins, Skalsky, Biffl, Lambing, Duffy, Cox, and Harris violated her constitutional right to remain free of unwarranted, nonconsensual medical procedures by subjecting her to medical procedures without a court order or the knowledge and consent of her parents. TAC ¶¶ 302–312. Specifically, Plaintiff alleges that she was subject to a "Swallow Study, KUB, Electrocardiogram, Renal Function Panel, Plasma Renin, Serial Casting, and Medical Behavioral Unit treatments." *Id.* ¶ 66.

#### a.    *Generally*

"The right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis ex rel. Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 1999). "Children removed from their parents' custody have a legitimate expectation of privacy in not being subjected to medical examinations without their parents' notice and consent." *Mann v. Cty. of San Diego*, 907 F.3d 1154, 1165 (9th Cir. 2018). State officials are therefore required to "(1) notify the parents of a medical examination of their children; (2) obtain parental consent or a court order in advance of the medical examination; and (3) permit the parent to be present at the examination." *Benavidez*, 993 F.3d at 1150.

#### b.    *Analysis*

In its February 10, 2025 Order, the Court dismissed Plaintiff's Claim 3, except with respect to Plaintiff's allegations that defendant Nienow, with defendants Paugh and Snyder's approval, directed that a swallow test be performed on Plaintiff. ECF No. 270 at 30. As to the other medical procedures identified, the Court held that the FAC failed to

16

allege how any of the Defendants were involved in authorizing or performing these procedures. *Id.* at 29–30. In the instant Motion, Defendants contend Plaintiff has still not cured the deficiencies identified in the Court's prior Order. ECF No. 285-1 at 13–15.

The Court disagrees. Plaintiff has sufficiently clarified her allegations against defendants Nienow, Paugh, Snyder, Skalsky, Biffl, and Lambing. The TAC alleges that: (1) Nienow, Skalsky and Jenkins directed an invasive swallow test; (2) Nienow directed an electrocardiogram and an increase in Plaintiff's medical behavioral unit treatments; (3) Nienow and Biffl directed a renal function panel and plasma renin test; (4) Nienow and Skalsky directed a KUB; and (5) Nienow, Biffl and Lambing directed a serial cast of Plaintiff's left leg. TAC ¶ 238. The TAC further alleges that these procedures were approved by defendants Paugh and Snyder. *Id.* Finally, the TAC also specifies the time frame in which these procedures were approved and performed. *Id.* Taken together, these allegations are sufficient to state a claim for violation of the right to familial association against defendants Nienow, Paugh, Snyder, Skalsky, Jenkins, Biffl, and Lambing. *See* ECF Nos. 95 at 30–31; 270 at 29–30.

Defendants respond that Plaintiff's mother executed a general consent to treatment such that they were not required to obtain parental consent for any of the procedures above. ECF No. 286 at 24. This is not, however, the version of the facts pleaded in Plaintiff's TAC and the Court's task at this stage of the proceedings is "not to resolve any factual dispute[s]." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013); *Snow v. Earthworks Nw., Inc.*, No. C07-1729-JCC, 2008 WL 11506781, at *2 (W.D. Wash. Jan. 24, 2008) ("[B]y essentially asking the Court to adopt their version of the facts, Defendants misapprehend their burden as the moving party on a motion to dismiss under Rule 12(b)(6). The Court must take the facts alleged by Plaintiff as true, to decide whether Plaintiff could be entitled to the relief requested.").

Drawing all inferences in Plaintiff's favor, the Court **DENIES** Defendants' motion to dismiss Claim 3 with respect to Plaintiff's allegations against defendants Nienow, Paugh, Snyder, Skalsky, Jenkins, Biffl, and Lambing as set forth above. The Court

21-cv-341-RSH-SBC

**GRANTS** Defendants' motion to dismiss Claim 3, to the extent Plaintiff's claim is asserted against any other Defendant or is based on any other allegation.[12]

> 5. *Failure to Provide Adequate Supervision, Safety, Security, and Healthcare (Claim 4)*

In Claim 4 of her TAC, Plaintiff alleges defendants Nienow, Reese, Valenzuela, Paugh, Snyder, Craft, Molzen, Patel, Maginot, Jenkins, Skalsky, Biffl, Lambing, Duffy, Cox, and Harris violated her right to receive adequate care while she was a dependent of the County. TAC ¶¶ 313–19.

> a. *Generally*

"Generally, the Fourteenth Amendment's Due Process Clause . . . does not confer any affirmative right to governmental aid and typically does not impose a duty on the state to protect individuals from third parties." *Henry A. v. Willden*, 678 F.3d 991, 998 (9th Cir. 2012) (internal quotation marks omitted). An exception to this general rule is "the 'special relationship' exception—when a custodial relationship exists between the plaintiff and the State such that the State assumes some responsibility for the plaintiff's safety and well-being." *Id*. Under this exception, "[o]nce the state assumes wardship of a child, the state owes the child, as part of that person's protected liberty interest, reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the child." *Lipscomb v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992); *see Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 843 (9th Cir. 2010) ("[T]he law does not impose the duty of guarding their own safety on wards of the state. Rather, that duty is the quintessential responsibility of the social workers assigned to safeguard the well-being of this helpless and vulnerable population.").

///

---

[12]    In particular, Plaintiff has not provided any explanation as to how its allegations against Defendants Molzen, Patel, Maginot, Duffy, Cox, and Harris are sufficiently pleaded with respect to this claim. *See* ECF No. 286 at 23–24.

The "proper standard for determining whether a [plaintiff's] due process rights have been violated" in this context is "deliberate indifference." *Wilden*, 678 F.3d at 1000. This standard "requires a showing of an objectively substantial risk of harm and a showing that the officials were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that either the official actually drew that inference or that a reasonable official would have been compelled to draw that inference." *Tamas*, 630 F.3d at 845.

### b.    Analysis

In its February 10, 2025 Order, the Court granted Defendants' motion to dismiss Claim 4, holding the allegations in Plaintiff's FAC were conclusory and Plaintiff had not identified the acts each specific Defendant allegedly took in violation of Plaintiff's right to adequate care. ECF No. 270 at 30–31. In the instant Motion, Defendants contend Plaintiff has still not sufficiently alleged that she was placed in the care or custody of any of these Defendants or how the care she received was inadequate. ECF No. 285-1 at 15–18.

The Court agrees. Here, Plaintiff's due process claim is predicated on five alleged failings. First, Plaintiff alleges defendant Nienow violated her right to minimally adequate care when she misstated the contents of her medical records in a Paper Consult. TAC ¶¶ 118–121, 316. Plaintiff next alleges defendants Nienow, Valenzuela, and Craft violated her right to care when they agreed to delay Valenzuela's investigation to provide Nienow with additional time to uncover evidence of Plaintiff's alleged abuse. *Id.* ¶¶ 156–158, 316. Both events occurred, however, prior to Plaintiff being placed in the County's custody and care. *See Murguia v. Langdon*, 61 F.4th 1096, 1109 (9th Cir. 2023) (holding the special relationship exception does not apply where defendants did not have custody of minor children); *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 972 (9th Cir. 2011) ("The special-relationship exception does not apply when a state fails to protect a person who is not in custody."). They cannot, therefore, form the basis of a claim under the special relationship exception.

///

21-cv-341-RSH-SBC

Plaintiff alleges thirdly that defendants Nienow, Valenzuela and Craft violated her right to minimally adequate care by allowing her to remain at Rady's despite it being "well known" it was against her interests. TAC ¶¶ 204–207, 316. Plaintiff does not explain, however, how staying at Rady's was against her interest or how this was "well known" to Nienow, Valenzuela, and Craft. For example, Plaintiff does not specify which of her medical needs allegedly went unmet during her stay. *See Somers v. Loc. San Diego Cnty. Jail*, No. 24-CV-2304 JLS (BLM), 2025 WL 254924, at *4 (S.D. Cal. Jan. 21, 2025) (dismissing deliberate indifference to medical needs claim where complaint lacked any factual allegations as to what medical needs were not met).

Plaintiff next alleges that defendants Nienow, Skalsky, Jenkins, Paugh, Snyder, Biffl and Lambing violated her right to minimally adequate care by subjecting her to an invasive swallow test, electrocardiogram, renal function panel, plasma renin test, KUB procedure, serial cast on her left leg, and an increase in her medical behavioral unit treatments. TAC ¶¶ 237–240, 316. However, defendants Nienow, Skalsky, Jenkins, Biffl and Lambing are not alleged to be County employees and Plaintiff has not explained how she was in their custody. Plaintiff also fails to sufficiently allege that there was an "objective risk of harm" defendants Nienow, Skalsky, Jenkins, Biffl and Lambing were "subjectively aware of" that would result from the performance of these procedures. At most, the TAC alleges these were non-emergency procedures performed without a court order or her parents' consent. TAC ¶¶ 237–240.

Finally, Plaintiff points to allegations defendants Maginot, Patel, Jenkins, Molzen, Duffy, Cox and Harris subjected Plaintiff to psychological manipulation designed to implant false memories of sexual abuse in her mind. *Id.* ¶¶ 239, 316. Again, defendants Maginot, Patel, and Jenkins, are not alleged to be County employees and Plaintiff has not explained how she was in their custody. *Id.* In addition, Plaintiff's general allegation an indistinguishable group of defendants subjected her to improper psychological manipulation is insufficient to state a claim. *See* ECF No. 270 at 15. For these reasons, the Court **GRANTS** Defendants' motion to dismiss Claim 4.

**B.    *Monell* Claims**

> *1.    Generally*

Municipal entities "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipal entity can be held liable only if a "policy or custom" of the municipality "inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694. "In order to establish liability for governmental entities under *Monell*, a plaintiff must prove '(1) that the plaintiff possessed a constitutional right of which she was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

A plaintiff may recover under *Monell* under one of three theories. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016). First, "a local government may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury.'" *Id*. at 1249 (quoting *Monell*, 436 U.S. at 708). Second, "under certain circumstances, a local government may be held liable under § 1983 for acts of 'omission,' when such omissions amount to the local government's own official policy." *Id*. Third, "a local government may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Id*. at 1250 (internal quotations omitted).

In the motion to dismiss context, the Ninth Circuit has made clear that claims of *Monell* liability must comply with the basic principles set forth in *Twombly* and *Iqbal*. *AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012); *see e.g., Alter v. Cty. of San Diego*, 635 F. Supp. 3d 1048, 1055 (S.D. Cal. 2022). A complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to

give fair notice and to enable the opposing party to defend itself effectively." *AE*, 666 F.3d at 637. Additionally, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

### 2. Monell Claim Against the County (Claim 7)

In Claim 7 of her TAC, Plaintiff pleads a claim for municipal liability against the County under *Monell*. TAC ¶¶ 349–408. Specifically, Plaintiff alleges the County is liable under *Monell* for maintaining an unofficial custom or policy and for failing to train its employees with respect to: (1) subjecting minors to nonconsensual medical examinations; (2) conducting covert video surveillance on minors and their parents without legal authority; and (3) including false and misleading statements and omitting known exculpatory evidence in documents submitted to the juvenile court. *Id.*[13]

### a. Covert Video Surveillance

In its February 10, 2025 Order, the Court dismissed Plaintiff's *Monell* claim to the extent it was predicated on Plaintiff's contention the County maintains an unofficial custom or policy and fails to train its employees as to the propriety of subjecting minors and their parents to covert video surveillance. ECF No. 270 at 34–37. Specifically, the Court held that apart from her own experiences, Plaintiff had not sufficiently alleged how any other person was subjected to similar conduct. *Id.*

Plaintiff has not cured this defect. Instead, Plaintiff again alleges in a conclusory fashion that other unspecified members of the public who suffered "similar" treatment came forward after an article about this case was published in the San Diego Union Tribune. TAC ¶ 356. Plaintiff provides no further details regarding these individuals or the

---

[13]    The Court previously held Plaintiff had set forth a plausible *Monell* claim against the County based on Plaintiff's allegation the County maintains an unconstitutional custom or policy and fails to train its employees as to subjecting minors to medical examinations without a court order or parental consent. ECF No. 270 at 50.

nature of their alleged experiences. Such conclusory allegations are insufficient to set forth a plausible *Monell* claim. *See, e.g., Mitchell v. Cnty. of Contra Costa*, No. 21-CV-05014-DMR, 2022 WL 526161, at *5 (N.D. Cal. Feb. 22, 2022) (dismissing *Monell* claim where "[t]he complaint does not allege that any other person was subjected to similar unconstitutional conduct"); *Hensley v. City of Upland, CA*, No. CV 20-2462-CBM-(ASX), 2021 WL 1585212, at *4 (C.D. Cal. Mar. 1, 2021) (dismissing *Monell* claim because the complaint did not identify "any specific incidents . . . other than the incident involving Plaintiff"); *Nixon v. Buck*, No. CV1904610CJCSHSX, 2019 WL 12377857, at *4 (C.D. Cal. Nov. 13, 2019) (dismissing *Monell* claim where allegations of an unconstitutional policy was "premised entirely on Plaintiff's own experience"); *Young v. City of Menifee*, No. EDCV171630JGBSPX, 2019 WL 4238880, at *6 (C.D. Cal. Aug. 2, 2019) (dismissing *Monell* claim when plaintiff failed to "identify any specific instances," other than his own experience, "where [defendant] engaged in such [unconstitutional] conduct").

### b. Judicial Deception

In its February 10, 2025 Order, the Court also dismissed Plaintiff's *Monell* claim to the extent it was predicated on Plaintiff's allegation the County maintains an unofficial policy or custom and fails to train its employees as to the propriety of including false and misleading statements and omitting known exculpatory information in documents filed to the juvenile court. ECF No. 270 at 35–37. Specifically, the Court held that while Plaintiff had cited several lawsuits against the County and its employees, Plaintiff had not sufficiently alleged how any of those cases were similar to the instant one. *Id.*

In the instant Motion, Defendants argue Plaintiff has failed to cure this deficiency in her TAC. ECF No. 285-1 at 23–24. The Court disagrees. Here, the TAC adequately details multiple lawsuits in which County employees are alleged to have submitted false statements to a juvenile court leading to a child's removal from the care of their parents or adoptive parents. *See* TAC ¶ 383. At this stage of the proceedings, Plaintiff's allegations are sufficient to survive Defendants' motion to dismiss. *See Hipschman v. Cnty. of San Diego,* No. 22-CV-00903-AJB-BLM, 2023 WL 5734907, at *10 (S.D. Cal. Sept. 5, 2023)

(holding *Monell* claim for judicial deception was sufficiently pleaded where plaintiffs pointed "not only to the underlying factual allegations of their case, but to those in other cases against the County alleging similar facts and violations over the years."); *see also Perryman v. City of Pittsburg*, 545 F. Supp. 3d 796, 800–01 (N.D. Cal. 2021) (denying motion to dismiss *Monell* claim where complaint cited ten lawsuits and included parenthetical information for each case detailing conduct similar to that complained of by plaintiff); *Villa v. Cnty. of San Diego*, No. 20-CV-537- CAB-NLS, 2020 WL 5535384, at *3 (S.D. Cal. Sept. 15, 2020) (denying motion to dismiss *Monell* claim where plaintiff referenced a number of lawsuits framing "the existence of a specific custom or practice that was the moving force behind Plaintiff's alleged injuries").

Defendants' contention Plaintiff must cite to decisions resulting in a finding of wrongdoing to support her *Monell* claim is unpersuasive. "Prior incidents involving lawsuits alone, even those which do not result in a finding or admission of wrongdoing, can be sufficient for *Monell* liability purposes in the face of a motion to dismiss." *Bagos v. Vallejo*, No. 2:20-CV-00185-KJM-AC, 2020 WL 6043949, at *5 (E.D. Cal. Oct. 13, 2020); Although the prior incidents cited are not identical, the Court finds they are sufficiently similar at this stage to survive a motion to dismiss. *See Hipschman*, 2023 WL 5734907, at *10 ("It is a rare plaintiff who will have access to the precise contours of a policy or custom prior to having engaged in discovery, and requiring a plaintiff to plead its existence in detail is likely to be no more than an exercise in educated guesswork.").

### c.    Conclusion

For these reasons, the Court **DENIES** Defendants' motion to dismiss Plaintiff's *Monell* claim against the County, to extent it is based on Plaintiff's allegation the County maintains an unconstitutional custom or policy and fails to train its employees on submitting false and misleading statements and omitting known exculpatory information in documents filed to the juvenile court. The Court **GRANTS** Defendants' motion to dismiss Plaintiff's *Monell* claim against the County to the extent it is based on an

unconstitutional custom or policy or failure to train with respect to covert video surveillance.[14]

### 3. Monell Claim Against Rady's (Claim 8)

In Claim 8 of her TAC, Plaintiff pleads a claim for municipal liability against Rady's under *Monell*. TAC ¶¶ 409–456. Specifically, Plaintiff alleges that Rady's is liable under *Monell*: (1) for its express policy allowing for the covert video surveillance of minors without legal authority (Policy No. CPM 4-40); (2) for maintaining an unofficial custom or policy and for failing to train its employees as to the propriety of subjecting minors to nonconsensual medical procedures and submitting false or incomplete information to the juvenile court; and (3) a ratification theory based on Dr. Nienow's alleged role as Rady's "official policymaker" with respect to its Child Protection Team. *Id.*[15]

### a. Nonconsensual Medical Procedures/Judicial Deception

In its February 10, 2025 Order, the Court dismissed Plaintiff's *Monell* claim to the extent it was predicated on Plaintiff's allegation Rady's maintains an unofficial policy and fails to train its employees as to the propriety of subjecting minors to nonconsensual medical procedures and submitting false or incomplete information to the juvenile court. ECF No. 270 at 39–40. The Court held Plaintiff's argument Rady's customs were longstanding and widespread were insufficiently supported by only one other lawsuit. *Id.*

In the instant Motion, Defendants contend Plaintiff has still not cured this defect. ECF No. 285-1 at 21–22. The Court agrees. Plaintiff again relies on the *Martinez v. Nienow*, No. 3:23-CV-02338-RBM-AHG, 2024 WL 5188048 (S.D. Cal. Dec. 20, 2024) case and newly cites a California Superior Court case—*Brock v. County of San Diego*, Case No. 24CU012932C—in arguing Rady's customs are longstanding and widespread. TAC ¶¶

---

[14]    The Court notes Plaintiff appears to have dropped her *Monell* claim against the County based on a ratification theory. *See* ECF No. 278 at 120, 131.

[15]    The Court previously held Plaintiff had set forth a plausible *Monell* claim against Rady's to the extent it was based on Rady Policy No. CPM 4-40. ECF No. 270 at 50.

21-cv-341-RSH-SBC

420–21;

Plaintiff's reliance on these two cases, without more, is insufficient to plausibly establish the existence of a longstanding, widespread policy. *See Meehan v. Cty. of L.A.*, 856 F.2d 102, 107 (9th Cir. 1988) (directed verdict in favor of defendant county was proper as proof of two unconstitutional assaults "standing alone" did not support a finding of liability under *Monell*); *Lien v. City of San Diego*, No. 21-CV-224-MMA (WVG), 2021 WL 2072385, at *5 (S.D. Cal. May 24, 2021) (two prior incidents insufficient to state a plausible claim for a longstanding custom); *Barber v. Cnty. of Orange*, No. SACV2100031CJCJDEX, 2021 WL 2981015, at *2 (C.D. Cal. Apr. 29, 2021) ("Three incidents over a five-year period are too isolated and sporadic to support a long-standing policy in violation of *Monell*.").

Although Plaintiff newly cites to the *Brock* decision in her TAC, she does not explain how *Brock* has any relevance to her *Monell* claim against Rady's. The TAC does not set forth what the specific misconduct that was alleged in *Brock* was or explain how this conduct is relevant to Plaintiff's *Monell* claim in this case. *See* TAC ¶ 421.

Plaintiff also argues that she has incorporated all the allegations set forth in *Martinez* by attaching the *Martinez* complaint to her TAC. TAC, Ex. 5; ECF No. 286 at 15. Based on this purported incorporation, Plaintiff urges the Court to reach the same conclusion as the court did in *Martinez* and hold that she has adequately pleaded a plausible *Monell* claim. Plaintiff cites no legal authority permitting the wholesale incorporation of allegations from an unrelated case into the operative pleading in this matter and the Court declines to adopt such an approach. *See* 5A Wright & Miller, Federal Practice and Procedure § 1326 (4th ed. 2018) ("[A]llegations in pleadings in another action, even if between the same parties, cannot be incorporated by reference."); *Blackwell v. Jones Day L. Firm*, No. 20-11493, 2021 WL 764124, at *3 (E.D. Mich. Feb. 26, 2021) ("A party cannot incorporate by reference allegations from a pleading filed in another case . . . without re-stating the allegations at issue."); *Getzen v. Yavapai Cnty.*, No. CV 20-08053-PCT-SRB (DMF), 2021 U.S. Dist. LEXIS 13917, at *4 (D. Ariz. Jan. 25, 2021) ("Plaintiff may not incorporate by

reference claims or allegations from another case.").

### b. Ratification

The Court also grants Defendants' motion to dismiss Plaintiff's *Monell* claim against Rady's to the extent it is based on a ratification theory. In its February 10, 2025 Order, the Court rejected Plaintiff's ratification theory based on Dr. Nienow being the director of Rady's Child Protection Team as a reiteration of an argument made by Plaintiff's parents the Court already rejected. ECF Nos. 95 at 42– 43; 270 at 40–41.

Here, Plaintiff newly alleges Dr. Nienow was responsible for drafting Rady's written policies and argues this constitutes a new basis for her ratification theory. *See* TAC ¶ 415; ECF No. 286 at 19–20. Plaintiff has not explained, however, how this allegation addresses the deficiencies set forth in the Court's March 16, 2023 and February 10, 2025 Orders. ECF No. 95 at 42–43; 270 at 40–41. Specifically, Plaintiff has still not explained how Dr. Nienow qualifies as a "final policymaker" as a matter of state law. *See Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066 (9th Cir. 2013) ("Whether an official is a policymaker for *Monell* purposes is a question governed by state law."); *Pazmino v. City of Vacaville*, No. 2:22-CV-00273-JAM-DB, 2023 WL 2976302, at *3 (E.D. Cal. Apr. 17, 2023) ("The success of Plaintiff's ratification claim therefore requires him to pinpoint a California legal authority recognizing [defendant] as the final policymaker regarding the [police department]'s chokehold policies."); *Avenmarg v. Humboldt Cnty.*, No. 19-cv-05891-RMI, 2020 U.S. Dist. LEXIS 138889, at *24 (N.D. Cal. Aug. 4, 2020) (dismissing ratification claim that defendant was final policymaker for ethical conflicts in County Counsel's office where plaintiff failed "to identify any state law or county code stating who [was] authorized to set employment policy at the county level").

### c. Conclusion

For these reasons, the Court grants Defendants' motion to dismiss Plaintiff's remaining theories of *Monell* liability against Rady's.

///

///

**C.    ADA/Rehabilitation Act (Claim 6)**

In Claim 6 of her TAC, Plaintiff pleads a claim for: (1) violation of the ADA against the County and Rady's; and (2) violation of the Rehabilitation Act against the County and all "County-affiliated" defendants. TAC ¶¶ 330–349.

### 1.    Generally

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). ADA and Rehabilitation Act claims are commonly analyzed together "because the statutes provide identical remedies, procedures and rights." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018) (internal quotation marks omitted); *see Witt v. Bristol Farms*, No. 21-CV-00411-BAS-AGS, 2021 WL 5203297, at *3 (S.D. Cal. Nov. 9, 2021) (addressing ADA and Rehabilitation Act claims together). "To establish a claim under the ADA or Rehabilitation Act, [a plaintiff] must show: (1) [she] is a qualified individual with a disability; (2) [she] was denied a reasonable accommodation that [she] needs in order to enjoy meaningful access to the benefits of public services; and (3) the program providing the benefit receives federal financial assistance (for the Rehabilitation Act claim) or is a public entity (for the ADA claim)." *Csutoras v. Paradise High Sch.*, 12 F.4th 960, 968–69 (9th Cir. 2021) (internal quotation marks omitted).

### 2.    Analysis

In its February 20, 2025 Order, the Court granted Defendants' motion to dismiss this claim, holding Plaintiff's allegations were too conclusory to state a plausible claim under either the ADA or Rehabilitation Act. ECF No. 270 at 41–43. In the instant Motion,

Defendants move to dismiss this claim again, holding Plaintiff's allegations continue to be too conclusory to set forth a plausible claim. ECF No. 285-1 at 25–27.

The Court agrees. Here, in support of her claim, Plaintiff newly alleges Defendants failed to reasonably accommodate her disabilities in several respects, including by: (1) denying her the benefit of parental participation in her medical care; (2) denying her privacy in her hospital room; (3) refusing to transfer her to a facility capable of providing necessary care for Ehlers-Danlos Syndrome and her related disabilities; (4) denying her an evaluation for a wheelchair; (5) denying a coordinated discharge to allow for an appropriate assessment of Plaintiff's home; (6) denying her parents the resources typically provided to the parents of disabled children; (7) denying her the use of her phone, tablet and personal computer; and (9) denying her request to have her parents trained on how to address mental health, transition, and functional needs of a disabled person at home. TAC ¶¶ 340, 344. These conclusory allegations are insufficient to state a claim.

First, Plaintiff's claim is based almost exclusively on legal conclusions unsupported by any pleaded facts. For example, Plaintiff contends the County and Rady's refused to transfer her to a facility capable of providing her the care necessary for her Ehlers-Danlos syndrome. TAC ¶¶ 340, 344. The TAC does not allege any *facts*, however, suggesting that Plaintiff was seeking to transfer to a facility other than Rady's or that the County or Rady's refused this request. As another example, Plaintiff alleges the County and Rady's denied her the use of her phone, tablet and personal computer. *Id*. ¶¶ 340, 344. However, again, Plaintiff does not allege any facts as to how her phone, tablet, and personal computer were taken away or how Rady's and the County refused to provide them to her. *See* TAC. The Court is not bound to accept as true a party's legal conclusions. *See Iqbal*, 556 U.S. at 678.

Second, Plaintiff's allegations fail to specifically identify the accommodations purportedly at issue or explain how Plaintiff was excluded. For example, the TAC alleges the County and Rady's denied Plaintiff's parents the resources typically provided to parents of disabled children, but does not identify what those resources were. *Id.* ¶¶ 340, 344. Such conclusory allegations are insufficient to state a claim under either the ADA or

Rehabilitation Act. *See Trujillo v. Cnty. of Los Angeles*, No. CV145431PSGMRWX, 2014 WL 12910367, at *5–6 (C.D. Cal. Oct. 2, 2014) (granting motion to dismiss ADA and Rehabilitation Act claim where plaintiff did not identify "a particular service, program, or activity for which Plaintiff was qualified but excluded from due to his disability").

Plaintiff's TAC also does not set forth a plausible claim she was denied any accommodations *because* of her disability. For example, Plaintiff alleges she was denied the benefit of having her parents participate in her care and also denied the benefit of privacy in her hospital room. TAC ¶¶ 340, 344. Based on the allegations set forth in the TAC, however, Plaintiff was allegedly denied these accommodations because of suspicions her parents had Munchausen by proxy, and not because of her disability.

Finally, Plaintiff's allegations are largely based on her contentions the County and Rady's provided her with inadequate medical care—such as the alleged denial of a wheelchair—rather than being refused care because of her disability. Such claims are not cognizable under either the ADA or Rehabilitation Act. *See Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."); *Jacobson v. Contra Costa Cnty.*, No. C 19-01716 WHA, 2019 WL 3555208, at *3 (N.D. Cal. Aug. 5, 2019) (granting motion to dismiss ADA and Rehabilitation Act claim where plaintiff pleaded only that he received inadequate medical care and the effects of such inadequate care).

For these reasons, the Court **GRANTS** Defendants' motion to dismiss Claim 6.

**D.    Unruh Civil Rights Act (Claim 9)**

In Claim 9 of her TAC, Plaintiff alleges an Unruh Civil Rights Act claim against Rady's. TAC ¶¶ 457–62.

*1.    Generally*

"The Unruh Act . . . is a public accommodations statute that focuses on discriminatory behavior by business establishments." *Stamps v. Superior Ct.*, 136 Cal. App. 4th 1441, 1452 (2006). It applies only to "'business establishments' that are 'generally open to the public' and mandates that those establishments 'serve all persons

without arbitrary discrimination.'" *Smith v. BP Lubricants USA Inc.*, 64 Cal. App. 5th 138, 149 (2021) (internal quotation marks and citations omitted). "To state a claim for discrimination under the Unruh Act, a plaintiff must allege: (1) that he was denied full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) that his protected characteristic was a motivating factor for this denial; (3) that defendant's denial was the result of its intentional discrimination against plaintiff; and (4) that the defendant's wrongful conduct caused him to suffer injury." *Doe 1 v. United Airlines, Inc.*, No. CV2005554RSWLAGRX, 2021 WL 4595766, at *3 (C.D. Cal. Apr. 22, 2021); *see also Bridges v. Kohl's Stores, Inc.*, No. 23-CV-00685-DAD-JDP, 2024 WL 4647621, at *3 (E.D. Cal. Oct. 31, 2024).

### 2. *Analysis*

In its February 20, 2025 Order, the Court granted Defendants' motion to dismiss Plaintiff's Unruh Civil Rights claim against the County and Rady's, holding Plaintiff had not set forth sufficient facts to establish that the County or Rady's acted with discriminatory intent. ECF No. 270 at 44–45. In the instant Motion, Defendants contend Plaintiff has not remedied this deficiency. ECF No. 285-1 at 27–28. The Court agrees.

Here, Plaintiff alleges Rady's violated the Unruh Civil Rights Act for the same reasons it violated the ADA and Rehabilitation Act. *Compare* TAC ¶¶ 340, 344 *with* 458. Accordingly, the Court's analysis of Plaintiff's ADA and Rehabilitation Act claim is equally applicable to her Unruh Civil Rights Act claim. *See Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007) ("In the disability context, California's Unruh Civil Rights Act operates virtually identically to the ADA.").

Notably, Plaintiff has still not sufficiently alleged that she was denied specific accommodations because of her disability. Instead, the TAC alleges in conclusory terms that upon "information and belief," a "substantial motivating reason" for Defendants' conduct was "their perception" of Plaintiff's medical and mental conditions and "genetic information." TAC ¶ 460. Such allegations are insufficient to state a plausible claim for violation of the Unruh Civil Rights Act. *See Williams v. Twin Rivers Unified Sch. Dist.*,

21-cv-341-RSH-SBC

No. 2:17-CV-02364-JAM-DB, 2018 WL 4735734, at *2 (E.D. Cal. Sept. 28, 2018) ("A plaintiff bringing an Unruh Act violation claim cannot allege intentional discrimination in a conclusory fashion."); *Duronslet v. Cnty. of Los Angeles*, 266 F. Supp. 3d 1213, 1217 (C.D. Cal. 2017) ("[A] plaintiff cannot plead discriminatory intent merely by making a conclusory allegation to that effect."); *Friscia v. Flagstar Bank, FSB*, No. C 12-05178 WHA, 2013 WL 1191240, at *4 (N.D. Cal. Mar. 21, 2013) (holding plaintiff's allegation that a "motivating reason" for defendant's conduct was "its knowledge or perception" of plaintiff's disability  was "no more than a conclusory allegation of a required element.").

For these reasons, the Court **GRANTS** Defendants' motion to dismiss Claim 9.

## IV.    LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a)(2), the court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, the "liberality in granting leave to amend is subject to several limitations." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (internal quotation marks omitted). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

Here, the Court already provided Plaintiff an opportunity to amend her pleading. As Plaintiff has not been able to cure the deficiencies previously identified in the Court's prior Order, the Court finds further amendment would be futile. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (holding plaintiff's failure to correct deficiencies in its second amended complaint was a "strong indication" that plaintiff had "no additional facts to plead") (internal quotation marks omitted).[16]

---

[16] Although Plaintiff provides some examples of how she could amend her judicial deception claim, Plaintiff does not provide any explain as to why these allegations were not included in her TAC. ECF No. 286 at 29–30. "[B]oth judicial resources and fairness to defendants preclude unlimited opportunities to amend the pleadings." *Anthony v. Harmon*, No. CIV 2:09-2272 WBSKJM, 2009 WL 4282027, at *2 (E.D. Cal. Nov. 25, 2009).

## V.    CONCLUSION

For the above reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion as follows:

### A.    Individual § 1983 Claims

1.    The Court **GRANTS** Defendants' motion to dismiss Claim 2 against defendants Holland, Dorantes, Luber, Skalsky, Maginot, Menard, Byrd, Harvard, and Robershaw **WITHOUT LEAVE TO AMEND.**

2.    The Court **DENIES** Defendants' motion to dismiss Claim 3 against defendants Nienow, Paugh, Snyder, Skalsky, Jenkins, Biffl, and Lambing with respect to Plaintiff's allegations she was subjected to an invasive swallow test, electrocardiogram, renal function panel, plasma renin test, KUB procedure, serial cast on her left leg, and an increase in her medical behavioral unit treatments. The Court **GRANTS** Defendants' motion to dismiss Claim 3, to the extent Plaintiff's claim is asserted against any other Defendant or is based on any other allegation **WITHOUT LEAVE TO AMEND.**

3.    The Court **GRANTS** Defendants' motion to dismiss Claim 4 **WITHOUT LEAVE TO AMEND**.

### B.    *Monell* § 1983 Claims

4.    The Court **DENIES** Defendants' motion to dismiss Claim 7 against the County, to extent it is based on Plaintiff's allegation the County maintains an unconstitutional custom or policy and fails to train its employees on submitting false and misleading statements and omitting known exculpatory information in documents filed to the juvenile court. The Court **GRANTS** Defendants' motion to dismiss Claim 7 against the County to the extent it is based on an unconstitutional custom or policy or failure to train with respect to covert video surveillance **WITHOUT LEAVE TO AMEND**.

5.    The Court **GRANTS** Defendants' motion to dismiss Plaintiff's remaining theories of *Monell* liability (Claim 8) against Rady's **WITHOUT LEAVE TO AMEND**.

### C.    Other Claims

6.    The Court **GRANTS** Defendants' motion to dismiss Claim 6 **WITHOUT**

1    **LEAVE TO AMEND**.

2         7.    The Court **GRANTS** Defendants' motion to dismiss Claim 9 **WITHOUT**

3    **LEAVE TO AMEND**.

4         **IT IS SO ORDERED.**

5    Dated: July 21, 2025

6    _____

7    Hon. Robert S. Huie
     United States District Judge

34